

HANDEL &
CARLINI, LLP
ATTORNEYS AT LAW
WWW.HANDELCARLINI.COM

P 845.454.2221
F 845.297.2250

MAIN OFFICE
(RESPOND HERE)
1984 NEW HACKENSACK ROAD
POUGHKEEPSIE, NY 12603

WAPPINGERS OFFICE
62 EAST MAIN STREET
WAPPINGERS FALLS, NY 12590

POUGHKEEPSIE OFFICE
POUGHKEEPSIE JOURNAL BUILDING
85 CIVIC CENTER PLAZA
SUITE 201A
POUGHKEEPSIE, NY 12601

NEWBURGH OFFICE
372 FULLERTON AVENUE
NEWBURGH, NY 12550

April 18, 2022

**VIA CM/ECF**

Hon. P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

**RE:** **Nunes v. NBCUniversal Media, LLC**
**Case 1:22-cv-1633 (PKC)**

Dear Judge Castel:

We represent Plaintiff, Devin G. Nunes ("Plaintiff"), in this matter. Pursuant to § 3(A)(iii-iv) of the Court's Individual Practices, this letter responds to Defendant NBCUniversal Media, LLC's ("Defendant") pre-motion letter seeking leave to file a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The next conference before the Court is set for April 28, 2022 at 11:00 a.m. [*ECF No. 25*].

Plaintiff objects to Defendant's pre-motion request.

First, Defendant has waived the right to assert by motion the defense of failure to state a claim upon which relief can be granted. Rule 12(g)(2) expressly states that "[e]xcept as provided in Rule 12(h)(2) or (3),[1] a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Rule 12(h)(2) provides that failure to state a claim upon which relief can be granted "may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial."

---

[1] Rule 12(h)(3) states as follows: "(3) *Lack of Subject-Matter Jurisdiction.* If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Rule 12(h)(3) is not applicable in light of the jurisdictional facts alleged in Plaintiff's amended complaint. [*Am. Compl.*, ¶ 8].

1

On October 28, 2021 [*ECF No. 5*], Defendant filed a motion to dismiss pursuant to Rule 12(b). Defendant did not raise the defense of failure to state a claim upon which relief can be granted, which was available to Defendant but omitted from its motion.

Under the circumstances, Defendant waived its right to file a motion under Rule 12(b)(6). *See, e.g., In re Customs and Tax Administration of the Kingdom of Denmark (SKAT) Tax Refund Litigation*, 2020 WL 70938, at * 2 fn. 12 (S.D.N.Y. 2020) ("ED&F Man states in a footnote to its memorandum that 'it does not waive and explicitly reserves its right to assert defenses to and make a motion to dismiss the Third-Party Complaint or any other claims against [it] for failure to state a claim pursuant to [Rule] 12(c).' Whatever effect, if any, this statement may have, it does not alter the fact that ED&F Man has foregone its opportunity to argue under Rule 12(b)(6) that Goldstein has failed to state a claim for relief on any of its twelve counts. *See* FED. R. CIV. P. 12(g)(2)); *see Garcia v. City of Los Angeles*, 2020 WL 6586300, at * 6 (C.D. Cal. 2020) (the Court denied the defendant's motion "to the extent it raises defenses not raised in its prior 12(b)(6) motion, without prejudice to the City raising those issues again in a manner authorized by Rule 12(h)(2).").

Second, even if Defendant has not waived the defense of failure to state a claim, its proposed motion should be denied because:

    1.    The Statements at issue [*Am. Compl.*, ¶ 2], including (a) that Plaintiff "accepted[2] a package" from "Russian agent" "Andriy Derkach", (b) that Plaintiff "refused" to share the contents of the package with the "intelligence community",[3] (c)

---

[2] A package came to the House Intelligence Committee. Plaintiff did not "accept" the package from Derkach. Plaintiff did not sign for the package or handle it. Rather, the truth is that Plaintiff immediately turned the package over to the FBI and advised the Attorney General of the existence of the package, Plaintiff's concerns, and requested a meeting to discuss the matter. [*Am. Compl.*, ¶ 12].

[3] The Intelligence Community ("IC") is made up of "18 elements that each focus on a different aspect of our common mission", including Air Force Intelligence, Army Intelligence and Security Command, Central Intelligence Agency, Defense Intelligence Agency, Department of Energy Office of Intelligence and Counterintelligence, Depart of Homeland Security Office of Intelligence and Analysis, Department of State Bureau of Intelligence and Research, Department of Treasury Office of Intelligence & Analysis, Drug Enforcement Administration Intelligence Program, Federal Bureau of Investigation ("FBI"), Marine Corps Intelligence, National Geospatial-Intelligence Agency, National Reconnaissance Office, National Security Agency, Office of Naval Intelligence, Office of the Director of National Intelligence, U.S. Coast Guard Intelligence, and U.S. Space Force. The IC is subject to oversight by several groups, including the House Permanent Select Committee on Intelligence (the "House Intelligence Committee"), "who ensure we conduct our activities within the law and in the best interests of the country." [https://www.intelligence.gov/how-the-ic-works]. **Contrary to Defendant's suggestion, the "intelligence community" does not mean "members of the House Intelligence Committee".**

that Plaintiff "refused" to turn over the package to the FBI, and (d) that Plaintiff should be removed as Ranking Member of the House Intelligence Committee, are not protected by the fair report privilege.

**_Nowhere_** in the DNI Report[4] or in the transcript of the Intelligence Committee Meeting do Defendant's false and defamatory Statements appear.[5] Defendant's Statements, therefore, are not and cannot possibly be a "substantially accurate" report of an official proceeding. Further, it is well-established that § 74 "does not afford protection if the specific statements at issue, considered in their context, suggest more serious conduct than that actually suggested in the official proceeding." *Lan Sang v. Ming Hai*, 951 F.Supp.2d 504, 521 (S.D.N.Y. 2013) (internal quotation marks omitted and alteration adopted) (citing *Calvin Klein Trademark Trust v. Wachner*, 129 F.Supp.2d 248, 253 (S.D.N.Y. 2001) (quoting *Daniel Goldreyer, Ltd. v. Van de Wetering*, 217 A.D.2d 434, 630 N.Y.S.2d 18, 22 (1st Dept. 1995))); *Biro v. Conde Nast*, 883 F.Supp.2d 441, 477 (S.D.N.Y. 2012) (same).

The privilege afforded by Civil Rights Law § 74 is an affirmative defense. *Greenberg v. Spitzer*, 155 A.D.3d 27, 62 N.Y.S.3d 372, 384 (2nd Dept. 2017). Defendant fails to prove that it applies.

2. Defendant's Statements are materially false. *[Am. Comp., ¶ 12]*. The Statements that Plaintiff "refused" to "show the contents of the package to other members of the intelligence community" and "refused to hand it over to the FBI" are categorically false. The false Statements impute serious wrongdoing, for which Defendant implies that Plaintiff should be removed as Ranking Member. *[Am. Compl., ¶ 16]*.

As to the element of falsity in a defamation case, "[t]he common law of libel takes but one approach ... regardless of the form of the communication. It overlooks minor inaccuracies and concentrates upon substantial truth." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-517 (1991). "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified." *Id.* Therefore, "[a] statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* at 517 (quoting R. Sack, *Libel, Slander, and Related Problems* 138 (1980)).

---

[4] The DNI Report, p. 3, states that Derkach and associates "sought to use prominent US persons to launder their narratives to US officials and audiences. These Russian proxies met with and provided materials to Trump administration-linked US persons to advocate for formal investigations ... and attempted to make contact with several senior US officials".

[5] For instance, in the transcript of the Intelligence Committee Meeting, Plaintiff was asked two (2) questions: whether Plaintiff "received materials ... from Derkach" and, if so, whether Plaintiff "is prepared to share them with the rest of the committee". Plaintiff chose not to respond. *[Unclassified Transcript, pp. 19-20]*.

Comparing Defendant's false Statements (*e.g.*, refusal to turn over the package to the FBI) to the truth (Plaintiff immediately turned over the package to the FBI and alerted the Attorney General), it is obvious that Defendant's Statements are materially false. *Compare Nunes v. W.P. Company*, 2021 WL 3550896, at * 4 (D. D.C. 2021) ("A reasonable juror could conclude that there is a material difference between stating that Nunes had made a claim supported by evidence (that the Obama administration had undertaken intelligence activities related to individuals involved in the Trump campaign) and stating that Nunes had made a baseless claim (that the Obama administration had wiretapped Trump Tower). A reasonable juror could therefore conclude that the article was materially false because it stated that Nunes had made such a baseless claim (when he had not)."); *see also Bustos v. A&E Networks*, 646 F.3d 762, 767 (10th Cir. 2011) (Gorsuch, J.) ("Comparing the challenged defamatory statement (membership in the Aryan Brotherhood) to the truth (conspiring with and aiding and abetting the Aryan Brotherhood), we cannot see how any juror could find the difference to be a material one—that is, likely to cause a reasonable member of the general public to think significantly less favorably of Mr. Bustos").

3. Rhetorical questions, where a defamatory meaning is conveyed or implied, are actionable. *See, e.g., Kelly v. Iowa State Educ. Ass'n*, 372 N.W.2d 288, 295 (Iowa App. 1985) ("'[t]he form of the language used is not controlling, and ***there may be defamation by means of a question***, an indirect insinuation, an expression of belief or opinion, or sarcasm or irony. The imputation may be carried quite indirectly'") (quoting W. Prosser, *Law of Torts* 746-747 (4th ed. 1971) (emphasis added)); *Schoedler v. Motometer Gauge & Equip. Corp.*, 134 Ohio St. 78, 15 N.E.2d 958, 961 (1938) ("[a] mere insinuation is as actionable as a positive assertion, if the meaning is plain, and it has been held repeatedly that the putting of the words in the form of a question will in no w[ay] reduce the liability of the defendant.") (internal citations and quotation marks omitted)

Here, the rhetorical questions [*Am. Compl.*, ¶ 2] were intended to impugn Plaintiff's integrity and ethics, and they plainly convey or imply that Plaintiff's actions, including his "refusal" to turn over the package to the FBI, were so serious that Plaintiff should have been removed from his position as Ranking Member of the House Intelligence Committee.[6] *See Boulger v. Woods*, 917 F.3d 471, 480 (6th Cir. 2019) ("it is easy to see how commentators and journalists could use questions 'as tools to raise doubts … about a person's activities or character'") (citation and quotation omitted); *Backes v. Misko*, 486 S.W.3d 7, 26 (Tex.App.-Dallas 2015) (plaintiff provided "clear and specific evidence that many people read and understood [defendant's] "question" as a transparent accusation against her").

---

[6] Defendant does not challenge – and therefore concedes – that the false Statements published about Plaintiff are susceptible to a defamatory connotation. *Compare Solstein v. Mirra*, 488 F.Supp.3d 86, 97-98 (S.D.N.Y. 2020) (rhetorical question, inquiring, 'Are you sure they are 'his' children[,] or is he running an underage crack whore brothel?', was susceptible of a defamatory connotation).

4

4. Typically, actual malice is shown by an "accumulation" of evidence and inferences. *Celle v. Filipino Reporter Enterprises, Inc.*, 209 F.3d 163, 183 (2nd Cir. 2000) (in order to infer actual malice, the facts alleged "should provide evidence of 'negligence, motive and intent such that *an accumulation of the evidence and appropriate inferences* supports the existence of actual malice.'") (quoting *Bose Corp. v. Consumers Union of the United States*, 692 F.2d 189, 196 (1st Cir. 1982) (emphasis added in original)); *Goldwater v. Ginzburg*, 414 F.2d 324, 342 (2nd Cir. 1969) ("There is no doubt that evidence of negligence, of motive and of intent may be adduced for the purpose of establishing, by cumulation and by appropriate inferences, the fact of a defendant's recklessness or of his knowledge of falsity.").

A defendant who fabricates the story knows her statements are false, and is, therefore, guilty of actual malice. *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) ("Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant [or] is the product of [her] imagination"); *ExpertConnect, LLC v. Fowler*, 2020 WL 3961004, at 3 (S.D.N.Y. 2020) (plaintiff alleged that the defendants "'engaged in a concerted effort to deliberately disparage the business reputations of Fowler, Parmar, and Strafluence with false statements' that they had committed a serious crime and were under investigation. These statements were made 'with full knowledge of their falsity' because '[t]here has never been any criminal action commenced against Fowler or Parmar, no investigation of any sort and, to be sure, no allegations of criminal conduct.'"); *Watson v. NY Doe 1*, 2020 WL 635843, at * 7 (S.D.N.Y. 2020) ("This is a case where the alleged false statements were allegedly based on the direct knowledge of the alleged defamer that the plaintiff alleges is false. A fair inference from the Complaint is that NY Doe 2 knew that the plaintiff did not rape her but falsely made that accusation. Those circumstances are sufficient to infer actual or constitutional malice on the part of NY Doe 2 because she is alleged to have firsthand knowledge of whether the plaintiff did or did not rape her."); *Romeo and Juliette Laser Hair Removal, Inc. v. Assara I, LLC*, 2016 WL 81525, at * 9 (S.D.N.Y. 2016) ("Because the defendants created fictitious experiences to undermine Romeo & Juliette's business, the plaintiff has shown that the statements were made with actual malice" – summary granted in favor of plaintiff on its claim of defamation); *see also Novagold Resources, Inc. v. J Capital Research USA LLC*, 2022 WL 900604, at * 9 (E.D.N.Y. 2022) (plaintiff sufficiently alleged actual malice where the complaint stated that "the claims made in the [defendant's] Report are readily contradicted by public documents").

Plaintiff plausibly alleges actual malice. In paragraph 23(a) of his complaint, Plaintiff alleges that during the broadcast on March 18, 2021, MSNBC provided no source for the defamatory Statements about Plaintiff "because, in truth, Maddow fabricated the Statements, including the story that Plaintiff 'refused' to turn over the package to the FBI. The Statements were a product of Maddow's imagination. She made them up out of whole cloth in order to impute intentional wrongdoing to Plaintiff. Although Maddow made it appear as if she had direct knowledge of facts, she did not have one shred of evidence to support the Statements." Plaintiff further alleges that Maddow knew from prior reporting that her Statements were false or that there was serious doubt as to the veracity of the Statements. [*Am. Compl.*, ¶¶ *13, 14, 15, 23(b)*].

There is no basis for a motion to dismiss under Rule 12(b)(6).

**In the event NBCUniversal obtains leave to file a motion to dismiss, Plaintiff will seek leave to file an amended complaint pursuant to Rule 15(a)(2).**

Yours very truly,

**HANDEL & CARLINI, LLP**

By: _____
    Anthony C. Carlini, Jr., Esq.

cc:    Steven S. Biss, Esq.