

21st Floor
1251 Avenue of the Americas
New York, NY  10020-1104

**Elizabeth A. McNamara**
212-489-8230 tel
212-489-8340 fax

lizmcnamara@dwt.com

May 18, 2022

**VIA ECF**
Honorable P. Kevin Castel
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 11D
New York, New York 10007

   Re: <u>Nunes v. NBCUniversal Media, LLC</u>, Case No. 22-cv-1633 (PKC)

Dear Judge Castel:

  We are counsel to Defendant NBCUniversal Media, LLC ("NBCU") in this action. Pursuant to this Court's Minute Entry dated April 28, 2022, and Rule 3(A) of Your Honor's Individual Rules of Civil Practice, we write to set forth the bases for NBCU's anticipated Motion to Dismiss Plaintiff Devin Nunes's Second Amended Complaint. Further, the parties have conferred and propose the following briefing schedule for this motion:  NBCU's motion to dismiss due on May 27, 2022, Plaintiff's opposition due on June 17, 2022, and NBCU's reply due on July 1, 2022.

## Factual Background

  Plaintiff Devin Nunes is a former U.S. Congressman and Ranking Member of the House Permanent Select Committee on Intelligence (the "House Intelligence Committee"), who resigned from Congress in December 2021.  This libel lawsuit arises out of three statements that aired in a March 2021 segment of *The Rachel Maddow Show* on MSNBC (the "Segment"), about a federal intelligence investigation into Russian efforts to interfere in the 2020 U.S. elections, and one statement in a Tweet promoting the Segment (the "Statements").

  As confirmed by the allegations in the Second Amended Complaint ("SAC" or "Complaint"), Nunes received a package in December 2019 addressed to him, from an individual named Andriy Derkach.  SAC ¶ 13.  On July 13, 2020, top Democratic congressional lawmakers sent a letter formally alerting the FBI to potential foreign interference in the upcoming U.S. election.  The letter contained a classified addendum, and on July 23, 2020, Politico reported that the classified addendum confirmed that Derkach sent Nunes a package with foreign disinformation designed to damage then-former vice president Joe Biden.  The July 23 Politico article also reported that Nunes "declined repeated requests for comment," and that "[o]ne person familiar with the matter said the information was not turned over to the FBI.  The FBI declined to comment."

DWT.COM

Anchorage | Bellevue | Los Angeles | New York
Portland | San Francisco | Seattle | Washington, D.C.

Hon. P. Kevin Castel
May 18, 2022
Page 2

      On July 29, 2020, the House Intelligence Committee held a closed-door meeting (the "Intelligence Committee Meeting"). According to an unclassified transcript of the Intelligence Committee Meeting,[1] committee members discussed the July 13 letter to the FBI, and Nunes opposed releasing the addendum to other House members. *See* Intelligence Comm. Tr. at 13-19. One committee member asked Nunes if he had received materials from Derkach and whether he would share them with the rest of the committee; Nunes repeatedly refused to respond. *Id*. at 19-20.

      Several news outlets contemporaneously reported on this exchange from the Intelligence Committee Meeting, including Breitbart and Politico. SAC ¶ 16. Breitbart included a quote from Rep. Rick Crawford (R-AZ) purporting to describe the "standard practice" for handling foreign packages: "you follow the protocol, which is you turn that over to the FBI. That's what happened." The Breitbart article, however, did not indicate that Rep. Crawford was speaking on behalf of Nunes, nor did it include a specific factual basis for Rep. Crawford's belief that Nunes had turned the package over the FBI. The article also re-reported that "One person familiar with the matter said the information [received by Nunes] was not turned over to the FBI. The FBI declined to comment." Politico reported that Rep. Crawford's quote "suggested that Nunes turned [the package] over to authorities," but also reported that Nunes "declined requests to respond to inquiries about whether" he had received the Derkach package and whether "he or his aides delivered it to the FBI for vetting." It also hyperlinked to the earlier July 23 Politico article.

      On January 7, 2021, the National Intelligence Counsel, in coordination with several intelligence agencies, issued a classified report on foreign actors' efforts to interfere with the 2020 U.S. federal elections. A declassified version of that report was released on March 10, 2021 (the "DNI Report"). Among other findings, the DNI Report identified Andriy Derkach as someone who had "ties to Russian officials as well as Russia's intelligence services," and was among those who "sought to use prominent US persons and media conduits to launder their narratives to US officials and audiences" and "met with and provided materials to Trump administration-linked US persons … ."

      Shortly after the DNI Report was released, on March 18, 2021, *The Rachel Maddow Show* reported the Segment, which discussed the various DNI Report findings, including the identification of Derkach. The Segment then turned to the revelations from the previous summer that Nunes had received a package from Derkach, and had refused to turn the package over to "the intelligence community," including the members of the House Intelligence Committee and the FBI. Specifically, the three statements in the Segment at issue in the instant lawsuit are:

> (1) "Andriy Derkach is sanctioned by the U.S. government as a Russian agent. He is singled out by name by the Director of National Intelligence as someone under Vladimir Putin's direct purview who helped run this organization targeting our

---

[1] *See* Transcript of July 29, 2020 Business Meeting, U.S. House of Representatives, Permanent Select Committee on Intelligence, *available at* https://docs.house.gov/meetings/IG/IG00/20200729/109721/HMKP-116-IG00-Transcript-20200729.pdf ("Intelligence Comm. Tr.").

Hon. P. Kevin Castel
May 18, 2022
Page 3

election last year. Congressman Nunes accepted a package from him. What was in it?"

(2) "Congressman Nunes has refused to answer questions about what he received from Andriy Derkach. He has refused to show the contents of the package to other members of the intelligence community. He has refused to hand it over to the FBI which is what you should do if you get something from somebody who is sanctioned by the U.S. as a Russian agent."

(3) "Still, the Republicans have kept Mr. Nunes on as the top Republican on the intelligence committee. How does that stand? How does that stay a thing?"

In addition, Nunes' Complaint identifies a Tweet promoting the Segment, which stated: "How do Republicans keep Devin Nunes on as the ranking member of the Intelligence Committee given his unexplained interactions with Andriy Derkach?" (together, the "Statements.")

On August 3, 2021, Nunes filed this lawsuit against NBCU in the Eastern District of Texas alleging one count of defamation based on the above statements. Dkt. No. 1. NBCU moved to dismiss the case for lack of personal jurisdiction and improper venue on October 28, 2021, Dkt. No. 5, and the case was transferred to this Court in February 2022. Dkt. No. 22. On March 28, 2022, Nunes filed his First Amended Complaint. Dkt. No. 28. On April 28, 2022, this Court held an Initial Pretrial Conference and entered a Minute Order staying discovery, ordering Nunes to file another amended complaint, and if NBCU elected to move to dismiss, to file the instant updated pre-motion letter by this date. Nunes filed the operative Second Amended Complaint on May 12, 2022. Dkt. No. 40.

The Complaint includes a previously-undisclosed 2019 letter to then-Attorney General William Barr in which Nunes alleges that he had "strong reason to believe that the sending of th[e Derkach] package [wa]s part of a foreign disinformation campaign that included participation by Americans." *Id*. Nunes' Complaint further alleges, as his first public statement on the topic, that a member of his staff delivered the package to the Justice Department in December 2019. *Id*. Prior to this lawsuit, Nunes refused to address any questions related to his receipt of or actions concerning the Derkach package. And despite repeated opportunities to amend his Complaint, Nunes makes no allegations that he or his staff shared the package with any other members of the intelligence community, including his colleagues on the House Intelligence Committee.

### The Federal Rules Allow NBCU's Rule 12(b)(6) Motion

As a threshold matter, NBCU is entitled to bring a motion to dismiss for failure to state a claim, notwithstanding its earlier motion to dismiss for lack of personal jurisdiction and improper venue filed in the Eastern District of Texas. The "waiver" provision of Federal Rules of Civil Procedure 12(h) has an express carve-out for the Rule 12(b)(6) defense. *See* Fed. R. Civ. P. 12(h)(2) (such a defense "may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial."). *See also*, *e.g.*, *Scott v. WorldStarHipHop, Inc.*, No. 10 CIV. 9538 PKC RLE, 2012 WL 5835232, at *1 (S.D.N.Y. Nov. 14, 2012) (Castel, J.) (allowing a Rule 12(b)(6) defense in an Answer that was filed after a motion to dismiss had been

denied, and finding that Rule 12(h) waiver only applies to defenses "'listed in Rule 12(b)(2)-(5)'" (citing Fed. R. Civ. P. 12(g)-(h)) .[2]

Where the Rule 12(b)(6) defense is omitted from an earlier motion to dismiss, courts in this jurisdiction and elsewhere frequently permit parties to raise this defense in subsequent motions to dismiss, so long as the subsequent motion is "not interposed for delay." *See Thorn v. N.Y. City Dep't of Social Servs.*, 523 F. Supp. 1193, 1196 n. 1 (S.D.N.Y 1981) (allowing defendants to bring a motion to dismiss under Rule 12(b)(6), even though they previously made a motion under Rule 12(b)(3) objecting to venue and did not raise the Rule 12(b)(6) defense); *Sharma v. Skaarup Ship Mgmt. Corp.*, 699 F. Supp. 440, 444 (S.D.N.Y. 1988), *aff'd*, 916 F.2d 820 (2d Cir. 1990) (allowing similar successive motion to dismiss where it was not "frivolous" or brought to delay).[3] Accordingly, where, as here, the subsequent motion to dismiss "will expedite the disposition of the case on the merits," it is appropriate to hear the motion. *Thorn*, 523 F. Supp. at 1196 n. 1.[4]

## Legal Grounds for Dismissal

NBCU has four grounds for dismissal of the Complaint: (1) New York's absolute fair report privilege[5]; (2) substantial truth; (3) the rhetorical questions and subjective statements are not provably false factual assertions, *i.e.*, protected opinion; and (4) failure to plead actual malice.

***First***, New York has codified an absolute fair report privilege, providing that "[a] civil action may not be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative or other official proceeding[.]" N.Y. Civ. Rights L. § 74 ("Section 74"). The absolute privilege bars the claims here because the Segment reported on an official report—namely, the DNI Report—and an official proceeding—namely, the Intelligence Committee Meeting. New York courts "adopt a liberal interpretation of the fair and true report standard of [Section] 74 so as to provide broad protection to news accounts of government proceedings. *Kinsey v. N.Y. Times Co.*, 2020 WL 1435141 (S.D.N.Y. Mar. 3, 2020), *aff'd,* 991 F.3d 171, 178 (2d Cir. 2021) (internal citation and quotation marks omitted). The privilege applies where the news report fairly reports on the official proceeding. A report is fair

---

[2] *See also Birkenbach v. Nat'l Gypsum Co.*, No. 13-14607, 2014 WL 2931795, at *4 (E.D. Mich. June 30, 2014) ("Federal Rule of Civil Procedure 12(h)(2) preserves the failure to state a claim defense from waiver. Rule 12(h)(2) provides that a Rule 12(b)(6) defense may be asserted as late as during trial.").

[3] *See also*, *e.g.*, *Mylan Lab'ys, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1059 (D. Md. 1991) (allowing a Rule 12(b)(6) motion to dismiss even though defendants had previously filed motions raising defenses of lack of personal jurisdiction, improper venue, insufficiency of process, and insufficiency of service).

[4] At a minimum, even if this Court were not to permit NBCU's contemplated motion here, NBCU would request that this Court construe its motion as a motion for judgment on the pleadings under Rule 12(c), rather than hold that the motion is barred altogether. *See Red Fort Cap., Inc v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456, 466 (S.D.N.Y. 2019) (Castel, J.) (allowing motion but construing it as a Rule 12(c) motion; "to the extent that defendant's motion is brought pursuant to Rule 12(b)(6), it shall be construed as a motion for judgment on the pleadings under Rule 12(c), and is not barred by Rule 12(g).") (internal quotations, alterations, and citation omitted).

[5] As a threshold matter, New York law applies here, when the statements were made by New York journalists and published in New York. *See*, *e.g.*, *Kinsey v. New York Times Co.*, 991 F.3d 171, 177–78 (2d Cir. 2021). But the result would be the same under California law, where Nunes is a resident.

Hon. P. Kevin Castel
May 18, 2022
Page 5

where it is a substantially correct report of the proceeding; *i.e.*, where the "gist" is accurate, even if the language used is literally inaccurate. "[M]inor errors [that] do not change a reader's perception of the statement" do not remove the protections of the absolute fair report privilege. *Lawrence v. Hearst Commc'ns, Inc.*, 2022 WL 894716, at *2 (2d Cir. Mar. 28, 2022).

Here, the challenged Statements are protected by New York's fair report privilege. The Statements that Derkach was singled out in the DNI Report, that Derkach sent a package to Nunes, and that Nunes refused to turn the package over to members of the "intelligence community" are undisputedly fair and accurate reports of the DNI Report and Committee hearing. The *only* factual Statement that is not *literally* true according to the factual allegations in the Complaint is the Statement that Nunes "refused to hand [the Derkach package] over to the FBI" (the "FBI Statement"). Because Nunes does not and cannot deny that he refused to hand the package over to members of the House Intelligence Committee—who are undoubtedly members of the "intelligence community"—the Statement that he refused to hand the package over to the FBI (also a member of the "intelligence community") would not have a different effect on the mind of the reasonable viewer than the literal truth as pled.[6] Because the "sting" of the FBI Statement is no greater than the "sting" of the undisputedly true Statements, the privilege applies.

*Second*, and relatedly, even if the privilege does not apply, the Statements are protected by the substantial truth doctrine, which holds that a statement is not libelous so long as the "gist" or "sting" of the statement is substantially true. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991). The vast majority of the Statements here—*e.g.*, that Nunes "refused to show the contents of the package to other members of the intelligence community"—are undisputed by the Complaint. The sole Statement disputed by the allegations in the Complaint—the FBI Statement—is substantially true for the reasons set forth above.

*Third*, certain Statements are rhetorical questions or comments on what one "*should* do if you get something from somebody who is sanctioned by the U.S. as a Russian agent" or "how does it stand?" that Nunes remained on the Committee. These are "the sort of rhetorical hyperbole and unfalsifiable opinion protected by the First Amendment." *Adelson v. Harris*, 774 F.3d 803, 807 (2d Cir. 2014).

*Finally*, under controlling constitutional principles and New York law, as a public official, Nunes must plead facts sufficient to demonstrate that each Statement was published with actual malice, *i.e.*, "with knowledge of its falsity or with reckless disregard of whether it was false." N.Y. Civ. Rights Law § 76-a(2). The Complaint recites a litany of allegations in an effort to cobble

---

[6] Nunes alleges that the official definition of "intelligence community" listed on a government website excludes the House Intelligence Committee, which Nunes pleads is charged with oversight of the agencies that he claims make up the "intelligence community." SAC ¶ 3, n.1. The fair report privilege looks to what a reasonable viewer would understand, not this type of legalistic and hyper-technical parsing of language. This is precisely what the Court of Appeals has instructed should be ignored. *Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*, 49 N.Y.2d 63, 68 (1979) ("When determining whether an article constitutes a 'fair and true' report, the language used therein should not be dissected and analyzed with a lexicographer's precision.").

Hon. P. Kevin Castel
May 18, 2022
Page 6

together a claim of actual malice, but each of them individually and collectively falls short of the heightened pleading burden.

For example, the allegations that Maddow/NBCU provided no source for the FBI Statement (SAC ¶ 25(a)); did not interview unnamed "important witnesses" including Rep. Crawford (SAC ¶ 25(c)); and did not try to contact Nunes for comment (SAC ¶ 23(g)), fall short because courts consistently reject the notion that failure to investigate all areas of inquiry or reach out for comment (particularly given Nunes' steadfast refusal to comment) can sustain a showing of actual malice. *E.g.*, *BYD Co. v. VICE Media LLC*, 2021 WL 1225918, at *10 (S.D.N.Y. Mar. 31, 2021). Similarly, the allegations that Maddow/NBCU harbor institutional hostility toward Nunes (SAC ¶ 25(f)) and were part of a "Democratic Party operation" with a "pre-determined agenda" to distract from a different news story concerning an unrelated congressional representative (SAC ¶ 25(e)) not only crosses into the realm of rank conspiracy theory, but is also legally deficient because courts refuse to find actual malice based on speculations of institutional hostility and deceit—something Nunes is aware of from his prior libel lawsuits against media entities. *See*, *e.g.*, *Nunes v WP Co. LLC*, 513 F. Supp. 3d 1, 8 (D.D.C. 2020). Finally, Nunes alleges that Maddow/NBCU somehow knew the package had been given to the FBI based on the hearsay Rep. Crawford quote in a Breitbart article (SAC ¶¶ 16, 25(b)), and that only a "reckless person" would claim that a "Medal of Freedom recipient" such as Nunes withheld a foreign package from members of the intelligence community (SAC ¶ 25(d)). However, such conclusory "bald assertions" are "no more than 'labels and conclusions' referencing the relevant legal standard," and are insufficient to establish actual malice. *See Nunes v. WP Co. LLC*, 2021 WL 3550896, at *5 (D.D.C. Aug. 11, 2021).

For these reasons, and others, we respectfully request that the Court set a briefing schedule for NBCU's anticipated motion to dismiss Plaintiff's meritless Complaint.

    Respectfully,

    Davis Wright Tremaine LLP

    */s/ Elizabeth A. McNamara*

    Elizabeth A. McNamara

CC:     Counsel of Record (via ECF)