UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

DEVIN NUNES,

                        Plaintiff,

       -against-

NBCUNIVERSAL MEDIA, LLC,

                       Defendant.

------------------------------------------------------------x

               22-cv-1633 (PKC)

               <u>OPINION AND ORDER</u>

CASTEL, U.S.D.J.

          Plaintiff Devin Nunes, a former Member of the House of Representatives, alleges that he was defamed by defendant NBCUniversal Media, LLC.  According to Nunes, statements made on the March 18, 2021 broadcast of *The Rachel Maddow Show* on MSNBC portrayed him in a false and defamatory light.  The statements purported to describe Nunes's conduct regarding a package addressed to him from Andriy Derkach, a Ukrainian legislator with ties to Russian officials and intelligence services.

          Nunes brings a single state law claim of defamation against defendant NBCUniversal Media, LLC in regard to three statements, each of which he asserts falsely accused him of serious wrongdoing and injured him in his profession and employment.  (2nd Am. Compl't ¶¶ 2-4.)  NBCU moves to dismiss the Second Amended Complaint (the "Complaint") under Rule 12(b)(6), Fed. R. Civ. P., urging that the statements are verifiably true, absolutely privileged under New York law as a fair and true report, protected opinion, and not were not made with actual malice.

As will be explained, NBCU's motion will be granted in part and denied in part. Nunes has plausibly alleged a claim of defamation in regard to a factual assertion contained in one of the three statements. As for the other two statements, one is substantially true and does not plausibly have a defamatory meaning, and the second is privileged as non-actionable opinion.

BACKGROUND

The Court summarizes the Second Amended Complaint's factual allegations, and, for the purposes of the motion, accepts them as true, drawing all reasonable factual interferences in favor of Nunes as the non-movant. In re Hain Celestial Grp., Inc. Sec. Litig., 20 F.4th 131, 133 (2d Cir. 2021).

On December 11, 2019, a package was delivered to the House Permanent Select Committee on Intelligence ("Intelligence Committee" or the "Committee"), of which Nunes was Ranking Member. (2nd Am. Compl't ¶ 13.) It was addressed to Nunes from Andriy Derkach and was handled solely by Nunes' staff and delivered, unopened, to the offices of the FBI. (Id.) That same day, Nunes sent a letter to Attorney General William P. Barr advising him of the receipt of the package. (Id.)

On July 29, 2020, the Intelligence Committee held an open business meeting. (Id. at n.5.) During this meeting, Representative Sean Maloney asked Nunes two questions. (Id.) First, Maloney asked if Nunes had received materials from Derkach. (Id.) Second, Maloney asked if, in the event that Nunes had received materials, whether he was prepared to share them with the Committee. (Id.) When asked if he wished to respond to the questions, Nunes declined. (Id.)

On March 10, 2021, the National Intelligence Council declassified a report titled "Foreign Threats to the 2020 US Federal Elections" (the "DNI Report").  (Id. ¶ 3.)  The report stated that Derkach and his associates sought to use prominent Americans to "launder their narratives to US officials and audiences."  (Id.)  The report also stated that Derkach provided materials to individuals linked to the Trump administration and attempted to contact several senior U.S. officials.  (Id.)

In the March 18, 2021 broadcast of *The Rachel Maddow Show*, host Rachel Maddow discussed the declassified DNI Report as part of a longer segment about Derkach, Russian disinformation and election interference.[1]  (Id.)  Maddow referred to the report and discussed the package addressed to Nunes, as well as the interaction between Nunes and Maloney at the Intelligence Committee meeting.  (Id.)  Maddow said that Nunes had accepted a package from Derkach and refused to answer questions about the package.  (Id. ¶ 2.)  Maddow also said that Nunes refused to hand the package to the FBI.  (Id.)

The Complaint identifies three statements from the segment that purportedly show Nunes in a false and defamatory light.[2]  (Id.)  The Court will discuss each of these statements in detail, but Nunes alleges that the statements made by Maddow falsely accused him of criminal conduct, breaching the House Representatives Code of Conduct and violating House Intelligence Committee protocol.  (Id. ¶ 4.)  Nunes asserts that, in truth, the designated staff member in his office turned over the unopened package from Derkach to the FBI on the same day, as required

---

[1] NBCU submitted video of the segment in connection with its motion and the segment is publicly available at https://www.youtube.com/watch?v=kQZqqkNiAsA.  The Complaint cites to this url, and the video is integral to the Complaint.  It is therefore properly considered without converting the motion into a motion for summary judgment.  See, e.g., Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC, 864 F.3d 236, 247 (2d Cir. 2017).

[2] The Complaint alleges that three statements are defamatory.  There is a fourth statement, a tweet, that is also alleged to be defamatory, but that tweet is cited by Nunes as an example of NBCU repeating and republishing one of the three allegedly defamatory statements.  The Court thus confines its analysis to the three statements.

by protocol.  (Id. ¶ 13.)  Further, he asserts that he and members of the Committee's Republican

staff "briefed the FBI about their concerns about the package."  (Id.)

Nunes alleges that the statements made in the broadcast caused him to be exposed

to public ridicule, scorn, contempt, and censure and injured him in his employment as a member

of Congress and the ranking member of the Committee.  (Id. ¶ 4.)  He also asserts that the

statements were made with actual malice because the speaker knew that the statements were

false or had reckless disregard for whether they were false.  (Id. ¶ 25.)

RULE 12(b)(6) STANDARD

To survive a motion to dismiss under Rule 12(b)6), "a complaint must contain

sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, 556 U.S. 662, 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

570 (2007)).  A court assessing the sufficiency of a complaint must disregard legal labels or

conclusions, which are not entitled to the presumption of the truth.  Iqbal, 556 U.S. at 678.

Instead, the court must examine only the well-pleaded factual allegations, if any, "and then

determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.  "Dismissal is

appropriate when 'it is clear from the face of the complaint, and matters of which the court may

take judicial notice, that the plaintiff's claims are barred as a matter of law.'"  Parkcentral Global

Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting Conopco,

Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

"A motion brought under Rule 12(b)(6) challenges only the 'legal feasibility' of a

complaint."  Goel v. Bunge, Ltd., 820 F.3d 554, 558 (2d Cir. 2016).  The test of a claim's

substantive merits is "reserved for the summary judgment procedure, governed by Rule 56,

where both parties may 'conduct appropriate discovery and submit the additional supporting

material contemplated by' that rule."  Global Network Commc'ns, Inc. v. City of New York, 458

F.3d 150, 155 (2d Cir. 2006) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 154 (2d

Cir. 2002)).  In adjudicating a motion to dismiss, a court takes no account of the complaint's

"basis in evidence" and "may review only a narrow universe of materials."  Goel, 820 F.3d at

559.  Generally, courts do not look beyond facts stated on the face of the complaint, documents

incorporated in the complaint, matters of which judicial notice may be taken and documents that

are "integral" to the complaint.  Id.

DISCUSSION

I.          The Law of Defamation in New York.

           A.          The Allegedly Defamatory Statements.

           The Complaint alleges that three statements from a segment of the March 18,

2021 episode of *The Rachel Maddow Show* are false and defamatory.  (2d Am. Compl't ¶ 2.)

The statements are as follows:

           Statement One:  "Andriy Derkach is sanctioned by the U.S. government as a

Russian agent.  He is singled out by name by the Director of National Intelligence as someone

under Vladimir Putin's direct purview who helped run this organization targeting our election

last year.  Congressman Nunes accepted a package from him.  What was in it?"

           Statement Two:  "Congressman Nunes has refused to answer questions about

what he received from Andriy Derkach.  He has refused to show the contents of the package to

other members of the intelligence community.  He has refused to hand it over to the FBI which is

what you should do if you get something from somebody who is sanctioned by the U.S. as a

Russian agent."

Statement Three:  "Still, the Republicans have kept Mr. Nunes on as the top Republican on the intelligence committee.  How does that stand?  How does that stay a thing?"

NBCU urges that the complaint fails to state a claim for defamation and that Nunes' claim can therefore be dismissed as a matter of law.  The parties do not dispute that New York law governs Nunes's claims.[3]

B.     Whether a Statement is Capable of Defamatory
       Meaning Is an Issue of Law for the Court.

"Allegations of defamation present, in the first instance, an issue of law for judicial determination."  Dillon v. City of New York, 261 A.D.2d 34, 39 (1st Dep't 1999). Courts assess a defamation claim "by looking at the full context of the communication in which the statement appears . . . ."  Chau v. Lewis, 771 F.3d 118, 129 (2d Cir. 2014); accord Gross v. New York Times Co., 82 N.Y.2d 146, 153 (1993).  Defamation is defined as "the making of a false statement which tends to 'expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society.'"  Foster v. Churchill, 87 N.Y.2d 744, 751 (1996) (quoting Rinaldi v. Holt, Rinehart & Winston, 42 NY.2d 369, 379 (1977)).  "The elements are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se."  Dillon, 261 A.D.2d at 38.

"A statement is defamatory on its face when it suggests improper performance of one's professional duties or unprofessional conduct."  Frechtman v. Gutterman, 115 A.D.3d 102, 104 (1st Dep't 2014).  "In order to be libelous per se, the challenged statements 'must be more

---

[3] The parties' agreement that a particular jurisdiction's law governs a claim is generally a sufficient basis for that jurisdiction's law to apply.  See, e.g., Photopaint Techs., LLC v. Smartlens Corp., 335 F.3d 152, 160 n.8 (2d Cir. 2003).

than a general reflection upon the plaintiff's character or qualities', and must suggest improper performance of his duties or unprofessional conduct." Chiavarelli v. Williams, 256 A.D.2d 111, 112 (1st Dep't 1998) (brackets omitted; quoting Golub v. Enquirer/Star Group, 89 N.Y.2d 1074, 1076 (1997)).

A public official may not recover damages for defamation related to his official conduct unless he proves "that the statement was made with 'actual malice' – that is, with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times Co. v. Sullivan, 376 U.S. 254, 280 (1964). To prevail, a public figure must establish that "the statements [he] complains of were (1) of and concerning [the plaintiff], (2) likely to be understood as defamatory by the ordinary person, (3) false, and (4) published with actual malice." Church of Scientology Int'l v. Behar, 238 F.3d 168, 173 (2d Cir. 2001).

C.     The "Substantial Truth" Defense to Defamation

NBCU urges that Nunes' claim should be dismissed because the statements are substantially true. "Because the falsity of the statement is an element of the defamation claim, the statement's truth or substantial truth is an absolute defense." Stepanov v. Dow Jones & Co., Inc., 120 A.D.3d 28, 34 (1st Dep't 2014). "A statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." Franklin v. Daily Holdings, Inc., 135 A.D.3d 87, 94 (1st Dep't 2015) (quotation marks omitted). "Courts typically compare the complained of language with the alleged truth to determine whether the truth would have a different effect on the mind of the average reader. Id. "When the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done." Cafferty v. Southern Tier Pub. Co., 226 N.Y. 87, 93 (1919).

Whether a statement is substantially true is an issue of law properly decided on a motion to

dismiss, provided that the Court limits its consideration to materials appropriately considered on

such a motion.  Tannerite Sports, LLC v. NBCUniversal News Group, 864 F.3d 236, 247 (2d

Cir. 2017).

           D.    New York's "Fair Report Privilege" Defense
                Against a Claim of Defamation.

         NBCU also urges that the claim should dismissed because the statements are a

"fair and true" report of an official proceeding of the Intelligence Committee and are therefore

privileged.  N.Y. Civ. Rights Law §74.  The statute governing New York's fair report privilege

states: "A civil action cannot be maintained against any person, firm, or corporation for the

publication of a fair and true report of any judicial proceeding, legislative proceeding, or other

official proceeding, or for any heading of the report which is a fair and true headnote of the

statement published."  Id.  "Whether or not the fair reporting privilege applies requires a

determination of whether or not the report is 'substantially accurate.'"  Bilinski v. Keith Haring

Foundation, Inc., 96 F. Supp. 3d 35, 48-49 (S.D.N.Y. 2015) (Cote, J.).

        "A report is 'substantially accurate' if, despite minor inaccuracies, it does not

produce a different effect on the reader than would a report containing the precise truth."

Karedes v. Ackerley Group, Inc., 423 F.3d 107, 119 (2d Cir. 2005).  "A fair and true report

admits . . . some liberality."  Holy Spirit Ass'n for Unification of World Christianity v. New

York Times Co., 49 N.Y.2d 63, 67 (1979).  The exact words of every proceeding are not

required if the substance of the proceeding is "substantially stated."  Id.  When determining

whether a report is protected by the privilege, "the language used therein should not be dissected

and analyzed with a lexicographer's precision."  Id. at 68 (affirming summary judgment when

there was no showing that the defendant misquoted any material contained in intelligence

reports).  Further, minor inaccuracies are "not serious enough to remove a party's reportage from

the protection of Civil Rights Law §74."  Misek-Falkoff v. Am. Lawyer Media, Inc., 300 A.D.2d

215, 216 (1st Dep't 2002).  However, "[a]pplication of the fair reporting privilege is

inappropriate at the motion to dismiss stage if a reasonable jury could conclude the report

suggested more serious conduct than that actually suggest[ed] in the . . . proceeding."  Bilinski,

96 F. Supp. 3d at 49 (quotation marks omitted).

        E.      Statements of Pure Opinion Are Privileged
               Against a Claim of Defamation.

      NBCU further urges that the claim should be dismissed because Nunes challenges

statements of pure opinion and the statements, therefore, are privileged against claims of

defamation.  (Def. Mem. at 20-21.)  "Expressions of opinion, as opposed to assertions of fact, are

deemed privileged and, no matter how offensive, cannot be the subject of an action for

defamation."  Mann v. Abel, 10 N.Y.3d 271, 276 (2008).  "A pure opinion may take one of two

forms.  It may be 'a statement of opinion which is accompanied by a recitation of the facts upon

which it is based,' or it may be 'an opinion not accompanied by such a factual recitation' so long

as 'it does not imply that it is based upon undisclosed facts.'"  Davis v. Boeheim, 24 N.Y.3d 262,

269 (2014) (quoting Steinhilber v. Alphonse, 68 N.Y.2d 283, 289 (1986)).  Statements of

"imaginative expression" or "rhetorical hyperbole" are "entitled to constitutional protection as

opinion."  Daniel Goldreyer, Ltd. v. Van de Wetering, 217 A.D.2d 434, 435 (1st Dep't 1995).

      However, when a "statement of opinion implies that it is based upon facts which

justify the opinion but are unknown to those reading or hearing it, it is a 'mixed opinion' and is

actionable."  Steinhilber, 68 N.Y.2d at 289.  The difference between a pure opinion and an

actionable mixed opinion is "the implication that the speaker knows certain facts, unknown to

the audience, which support the speaker's opinion and are detrimental to the person being

discussed." Davis, 24 N.Y.3d at 269 (brackets omitted).

"Distinguishing between fact and opinion is a question of law for the courts, to be

decided based on 'what the average person hearing or reading the communication would take it

to mean.'" Id. at 269 (quoting Steinhilber, 68 N.Y.2d at 290).  New York courts weigh three

factors to decide whether the disputed statement is fact-based or non-actionable opinion:

> (1) whether the specific language in issue has a precise meaning
> which is readily understood; (2) whether the statements are capable
> of being proven true or false; and (3) whether either the full
> communication in which the statement appears or the broader social
> context and surrounding circumstances are such as to signal . . .
> readers or listeners that what is being read or heard is likely to be
> opinion, not fact.

Frechtman, 115 A.D.3d at 105 (quotation marks omitted).

 In weighing these factors, courts are required to consider "the content of the

whole communication, its tone and apparent purpose . . . ." Id. at 106.  Courts must look to the

overall context, rather than focusing on the statements in isolation.  Id.  "[E]ven apparent

statements of fact may assume the character of statements of opinion, and thus be privileged,

when made in public debate . . . ." Steinhilber, 68 N.Y.2d at 294.  "The essential task is to

decide whether the words complained of, considered in the context of the entire communication

and of the circumstances in which they were spoken or written, may be reasonably understood as

implying the assertion of undisclosed facts justifying the opinion." Id. at 290.

II.        Whether the Complaint Plausibly Alleges a Defamatory Meaning to Statements.

           A.        The Statement that Nunes "Accepted" a Package Is Substantially True.

           The Complaint alleges that Statement One falsely accuses Nunes of accepting a

package from Andriy Derkach.  The complained-of statement was as follows:  "Andriy Derkach

is sanctioned by the U.S. government as a Russian agent.  He is singled out by name by the Director of National Intelligence as someone under Vladimir Putin's direct purview who helped run this organization targeting our election last year.  Congressman Nunes accepted a package from him.  What was in it?"  NBCU urges that the statement is both substantially true and protected by the fair report privilege.  (Def. Memo at 15.)

According to the Complaint, Nunes argues that he never personally accepted a package from Derkach, but instead that the package only came to the House Intelligence Committee addressed to Nunes.  (2d Am. Compl't ¶ 13.)  The Complaint alleges that on the day the package arrived, a designated staff member in Nunes's office delivered the package to the FBI.  (Id.)  It also states that the same day, Nunes personally wrote a letter to the Attorney General, advising him of the package.  (Id.)

As noted, whether a statement is protected by the fair report privilege is dependent on whether the statement is a substantially accurate report of the proceeding upon which it was based.  Bilinski, 96 F. Supp. 3d at 48-49.  The exact words of the proceeding need not be stated in the report, but the report must not produce a different effect on the mind of a reader than would a report containing the precise truth.  Karedes, 423 F.3d at 119.

Nunes asserts that he did not "accept" a package from Derkach.  (2d Am. Compl't ¶ 13.)  In the open session of the House Intelligence Committee, Representative Maloney discussed public reports that "minority members" had received materials from Derkach and asked Nunes if he had received materials.  (Chase Decl. Ex. D.)  Nunes did not answer the question.  (Chase Dec. Ex. D at 19; 2d Am. Compl't n.5.)  The statement that Nunes "accepted" a package from Derkach could plausibly produce a different effect in the mind of the reader than

the actual proceeding itself, and therefore does not fall under the fair report privilege.  See Karedes, 423 F.3d at 119.

However, a statement is absolutely privileged against a defamation claim when the statement is substantially true.  See Stepanov, 120 A.D.3d at 34.  In determining whether a statement is substantially true, the court will compare the complained-of language to the truth itself.  Franklin, 135 A.D.3d at 94.  In the Complaint, Nunes confirms that the package was both addressed to him and received by his staff members.  (2d Am. Compl't ¶ 13.)  His staff member delivered the package to the FBI.  (Id.)  And Nunes personally wrote to the Attorney General to advise him of the receipt of the package.  (Id.)  The statement that Nunes "accepted" a package from Derkach compared with the actual truth as stated in Nunes's complaint would not have a different effect on the mind of a viewer.  Therefore, Statement One is privileged against a defamation claim because, based on the Complaint's own allegations, it is substantially true.

Because the Complaint does not plausibly allege a defamatory meaning as to Nunes "accepting" a package from Derkach, the Complaint will be dismissed to the extent that it asserts defamation based on Statement One.

      B.    The Complaint Plausibly Alleges a Defamatory Meaning to Maddow's Statement that Nunes "Refused" to Deliver the Package to the FBI.

MSNBCU urges that Statement Two is also protected by New York's fair and true report privilege because it is a fair and true report of the House Intelligence Committee Hearing transcript.  (Def. Memo 15-19.)  Defendant argues that even if certain statements are not literally true, they are only minor factual inaccuracies that are nevertheless protected by the fair report privilege.  (Id. at 18.)

Statement Two includes three assertions, and in moving to dismiss, NBCU urges that each is individually non-actionable.  Statement Two states as follows:  "Congressman Nunes

12

has refused to answer questions about what he received from Andriy Derkach. He has refused to show the contents of the package to other members of the intelligence community. He has refused to hand it over to the FBI which is what you should do if you get something from somebody who is sanctioned by the U.S. as a Russian agent." (2d Am. Compl't ¶ 2.)

The first asserted fact, that Nunes "has refused to answer questions about what he received from Andriy Derkach," is not actionable as defamation because it is substantially true. As described in the Complaint itself, during the House Intelligence Committee meeting of July 29, 2020, Nunes "stated that he did not wish to respond" to Maloney's questions both because a response "risked disclosing classified information" and because the questions were a "completely out-of-order, coordinated stunt." (2d Am. Compl't ¶ 13 n.5.) A comparison between the complained-of language and the truth as described in Nunes's complaint would not have a different effect in the mind of a reasonable viewer. To the extent that Nunes asserts defamation based on the statement that he "has refused to answer questions about what he received from Andriy Derkach," the claim will be dismissed.

The second and third sentences assert, respectively, that Nunes "refused to show the contents of the package to other members of the intelligence community" and "refused" to "hand over" the package to the FBI. NBCU urges that the second sentence's description of Nunes's refusal to the "intelligence community" is a fair report of the Committee proceeding because Nunes did not disclose the contents of the Derkach package when questioned by Maloney. (Def. Mem. at 15-16.) NBCU argues that in the mind of a reasonable viewer, the term "intelligence community" would include the Intelligence Committee, and the difference between "intelligence community" and "Intelligence Committee" would not change the statement's effect on a reasonable viewer. (Id. at 16.)

The Complaint asserts that "intelligence community" is not a general label, but a specific term used within the federal government to denote branches of federal law enforcement, divisions of the armed forces, and certain departments of the executive branch, but that excludes the House Intelligence Committee, which oversees the "intelligence community" in a supervisory capacity.  (2d Am. Compl't ¶ 3 n.1; see also Pl. Mem. at 8-9 & n. 6.)  The Court takes judicial notice that the website intelligence.gov identifies "the 18 organizations that make up the [intelligence community] and what they do," and distinguishes them from "oversight bodies," such as the National Security Council and the Intelligence Committee.[4]  The intelligence community includes the FBI, which intelligence.gov describes as "the principal investigative arm of the U.S. Department of Justice and a full member of the U.S. Intelligence Community."[5]  The FBI holds itself out as "the lead agency for exposing, preventing, and investigating intelligence activities in the U.S."[6]

NBCU characterizes Nunes's distinction between the "intelligence community" and the Intelligence Committee as "hyper-technical" and an attempt to "split[ ] hairs."  (Id. at 16.)  NBCU also asserts that a "minor" factual inaccuracy should not remove the segment from the fair report privilege because the report accurately captured the "gist" of the Committee meeting, which was that Nunes withheld the package from "other intelligence community members."  (Def. Mem. at 18-19.)  It therefore argues that because the statement accurately reports on the official committee proceeding, it has absolute privilege under section 74.  (Id. at 15-16.)

---

[4] https://www.intelligence.gov/how-the-ic-works
[5] https://www.intelligence.gov/how-the-ic-works/our-organizations/422-fbi
[6] https://www.fbi.gov/investigate/counterintelligence

The Court concludes that a reasonable viewer encountering the statement would not understand the technical distinction between the government entities that formally comprise the intelligence committee and the Intelligence Committee that is tasked with supervising those entities. The speaker also asserted that Nunes "refused to show the contents of the package to other members of the intelligence community." (2d Am Compl't ¶ 2; emphasis added.) A reasonable viewer would understand the speaker to be asserting that Nunes himself is personally a "member" of the intelligence community and that the "other members" included his Congressional colleagues. This description is consistent with the events of the Intelligence Committee proceeding. And while the Intelligence Committee is not technically part of the intelligence community, it performs a formal oversight role, and minor inaccuracies are "not serious enough to remove a party's reportage from the protection of Civil Rights Law §74." Misek-Falkoff, 300 A.D.2d at 216.

The third sentence of Statement Two does not fall within the fair report privilege and the Complaint has plausibly alleged that it is not substantially true. That sentence asserted: "He has refused to hand it [e.g., the Derkach package] over to the FBI which is what you should do if you get something from somebody who is sanctioned by the U.S. as a Russian agent." (2d Am. Compl't ¶ 2.) The application of the fair report privilege is inappropriate at the motion to dismiss stage "if a reasonable jury could conclude the report suggested more serious conduct than actually suggested at the proceeding." Bilinski, 96 F. Supp. 3d at 49. The report must be substantially accurate as to the official proceeding upon which it is based. Bouchard, 136 A.D.3d at 1234.

A reasonable viewer could plausibly understand the speaker to assert that Nunes "refused" turn over the Derkach package to the FBI. A reasonable viewer could conclude that

15

such conduct is significantly more serious than what was suggested in the Committee proceeding.  Bilinski, 96 F. Supp. 3d at 49.  A refusal to turn over the package to the law-enforcement body tasked with investigating and enforcing the intelligence laws is factually distinct from declining to publicly answer questions raised in a public legislative proceeding, and could plausibly be understood by a reasonable viewer to suggest unlawful conduct on the part of Nunes.  Because the assertion involving Nunes's interactions with the FBI does not speak to the events of the Intelligence Committee meeting and "suggested more serious conduct than actually suggested at the proceeding," it does not fall within the fair report privilege.  See id.; Bouchard, 136 A.D.3d at 1234.

NBCU also relies on the then-newly declassified DNI Report stating that Derkach and his associates sought to use prominent Americans to "launder their narratives to US officials and audiences" and that Derkach both provided materials to individuals linked to the Trump administration and attempted to contact senior U.S. officials.  Had Statement Two merely reported on the DNI Report and noted that Nunes did not answer questions about receipt of package from Derkach, it is doubtful that it would have been actionable.  But the Statement also focuses on Nunes' refusal to turn the material over to the FBI.  The Statement in this respect was false, not just technically but also in substance and meaning, and capable of injuring Nunes in his profession.

NBCU's motion to dismiss will therefore be granted as to the first and second sentences of Statement Two but denied as to the third sentence.

### C.  The Complaint Does Not Plausibly Allege a Defamatory Meaning to Rhetorical Questions.

The Complaint alleges that the Third Statement was defamatory and accused the plaintiff of wrongdoing.  Statement Three is as follows: "Still, the Republicans have kept Mr.

Nunes on as the top Republican on the intelligence committee.  How does that stand?  How does that stay a thing?"

The Complaint alleges that because Nunes did not violate any rule with regard to the Derkach package, there was no basis to question his position as Ranking Member of the House Intelligence Committee and, therefore, the statements are defamatory.  (2d Am. Compl't ¶ 13.)  Nunes argues that the rhetorical questions were defamatory as they were accusations of wrongdoing intended to raise questions about his activities.  (Reply at 22-23.)

NBCU asserts that the questions and statements are non-actionable opinion.  (Def. Mem. at 20-21.)  As noted, statements of pure opinion are non-actionable, and the distinction between statements of fact and opinion is an issue of law for the Court to be decided based on "what the average person hearing or reading the communication would take it to mean."  Davis, 24 N.Y.3d at 269.  In distinguishing between fact and opinion, the court considers the overall context of the communication.  Frechtman, 115 A.D.3d at 106.

Statement Three cannot be classified as actionable statements of fact or actionable mixed opinion.  When weighing the factors, the specific language does not have a precise meaning, is not capable of being proved or disproved, and when considering the context, the average viewer would not reasonably believe the statements to be based on undisclosed facts. See id. at 105.  Considering the immediate context of the questions, of political commentary on a political program, such statements and rhetorical questions would not be viewed by a reasonable person as expressing or implying facts about the plaintiff.  The Court therefore concludes that Statement Three is privileged as pure opinion and not actionable.

III.        The Complaint Plausibly Alleges Actual Malice as to the Statement
            that Nunes Refused to Deliver the Derkach Package to the FBI.

NBCU separately urges that the statement that Nunes refused to hand the Derkach

package over to the FBI is non-actionable because the Complaint fails to allege actual malice.

NBCU's argument about actual malice relies on factual inferences that go beyond the pleadings

and the segment.  The motion to dismiss for failure to allege actual malice will therefore be

denied.

A public figure alleging defamation must "prove that an allegedly libelous

statement was made with actual malice, that is, made with knowledge that it was false or with

reckless disregard of whether it was false or not."  Palin v. New York Times Co., 940 F.3d 804,

809 (2d Cir. 2019) (quotation marks omitted).  To survive a motion to dismiss, "malice must be

alleged plausibly in accordance with Rule 8."  Biro v. Conde Nast, 807 F.3d 541, 545 (2d Cir.

2015).  "When actual malice in making a defamatory statement is at issue, the critical question is

the state of mind of those responsible for the publication."  Palin, 940 F.3d at 810.

"The hurdles to plausibly pleading actual malice, though significant given the

First Amendment interests at stake, are by no means insurmountable."  Biro, 807 F.3d at 545.

"[W]hether actual malice can plausibly be inferred will depend on the facts and circumstances of

each case" and "a court typically will infer actual malice from objective facts . . . ."  Id.

(quotation marks omitted).  "[A] public-figure plaintiff must plead 'plausible grounds' to infer

actual malice by alleging 'enough fact[s] to raise a reasonable expectation that discovery will

reveal evidence of' actual malice.'"  Id. at 546 (quoting Twombly, 550 U.S. at 556).  A failure to

investigate is not alone sufficient to establish actual malice, but "reliance on anonymous or

unreliable sources without further investigation may support an inference of actual malice."  Id.;

see also Palin, 904 F.3d at 815 (plaintiff must allege "more than a mistake due to a research

failure.").  The actual malice analysis also may weigh whether the speaker knew and ignored

"the journalistic consensus" about a disputed statement, any revisions made during the editorial

process and whether the speaker "had a personal connection . . . that animated his [or her]

hostility . . . ."  Palin, 940 F.3d at 814-15.

   The Complaint asserts that NBCU and Maddow had knowledge that the Derkach

package had in truth been given to the FBI, based on a July 29, 2020 article published on the

Breitbart website.  (2d Am. Compl't ¶ 16 & Chase Dec. Ex. F.)  The Breitbart article quotes Rick

Crawford, a Republican member of Congress, as stating in part:

> Here's the thing: it's standard practice that if you get a package from
> unknown source in a foreign country, it's probably a good idea to
> call the FBI and let them handle it and not handle those packages
> and don't open them and go, 'Hey I wonder what this is? I guess it's
> Christmas came early this year.' No, you follow the protocol, which
> is you turn that over to the FBI.  That's what happened.

(Id.; emphasis added.)

   After quoting this passage, the Complaint states: "MSNBC and Maddow had no

source that had told them prior to publication of the Statements that Plaintiff had 'refused' to turn

over the Derkach package to the FBI."  (2d Am. Compl't ¶ 16.)  It states that Maddow "provided

no source for the defamatory Statements about Plaintiff because, in truth, Maddow fabricated the

Statements, including the story that Plaintiff 'refused' to turn over the package to the FBI."  (Id.

¶ 25(a).)  It further asserts that other reports reviewed by Maddow and her producers "confirmed

the package had been turned over to the FBI" but that they "purposefully evaded the truth" and

"chose not to interview important witnesses . . . ."  (Id. ¶¶ 25(b), (c).)[7]

---

[7] The Complaint proposes other theories of actual malice, including the speaker's "pre-determined agenda," "hatred" of Nunes, and the assertion that it is "inherently improbable" that a person of Nunes's stature would refuse to deliver the Derkach package to the FBI.  (Id. ¶¶ 25(d)-(g).)

NBCU points to a July 23, 2020 article published in Politico with the headline, "Democrats: Packets sent to Trump allies are part of foreign plot to damage Biden."[8]  (Chase Dec. Ex. E.)  The article described "concerns" of "[t]op congressional Democrats" that packets were "mailed to prominent allies of President Donald Trump," including Nunes and then-White House chief of staff Mick Mulvaney.  (Id.)  The article included the following passage:

> The packets, described to POLITICO by two people who have seen the classified portion of the Democrats' letter, were sent late last year to Rep. Devin Nunes (R-Calif.), Sens. Lindsey Graham (R-S.C.) and Chuck Grassley (R-Iowa), and then-White House chief of staff Mick Mulvaney.

> The packets were sent amid a Democratic push to impeach Trump over his effort to pressure Ukraine's president to investigate Biden and his son Hunter the sources said.  Graham and Grassley denied having received the material, and Mulvaney and Nunes declined repeated requests for comment.  One person familiar with the matter said the information was not turned over to the FBI.  The FBI declined to comment.

(Id.; emphasis added.)

This Politico article is not cited or referenced in the Complaint, nor is it cited or referenced in the segment.  Because the article goes beyond the pleadings and the materials integral thereto, it is not properly considered on a motion to dismiss.  Goel, 820 F.3d at 559.  On this bare record, the Court declines to convert the motion to one for summary judgment.

The broadcast segment included a screenshot of a July 31, 2020 headline from a CNN website, which states, "Devine Nunes declines to say whether he received foreign information meant to damage Biden," and screenshots of an excerpt from that article, which states: "The information in question pertained to packets reportedly sent to GOP members of Congress, including Nunes, by Ukranian [sic] lawmaker Andrii Derkach . . .  Nunes . . . declined

---

[8] Available at https://www.politico.com/news/2020/07/23/democrats-letters-to-trump-allies-are-foreign-plot-to-damage-biden-380217

to say at a close-door meeting this week whether he had received foreign information[.]"
(ellipsis in original)[9]  The full CNN article, which has been submitted by NBCU, does not
address the issue of whether Nunes gave the Derkach package to the FBI.  (Chase Dec. Ex. H.)[10]

   Drawing every reasonable inference in favor of the plaintiff as the non-movant,
the facts alleged in the Complaint plausibly allege actual malice as to the assertion that Nunes
"has refused to hand it [e.g., the Derkach package] over to the FBI . . . ."  The speaker did not
attribute the statement to any source, including the Politico article submitted by NBCU on this
motion.  The CNN article shown and cited onscreen did not speak to the issue of whether Nunes
refused to give the Derkach package to the FBI.  At the Rule 12(b)(6) stage, the Court cannot
draw the factual inference that the speaker or others responsible for the segment had knowledge
of the Politico article and based the statement on its contents.  While it is plausible that the
statement was made with knowledge of that article, the Complaint also describes why the
statement plausibly could have been made with knowledge of falsity or reckless disregard as to
the same.  A court does not weigh competing, plausible theories of actual malice on a motion to
dismiss.  See Palin, 950 F.3d at 815 ("[I]t is not the district court's province to dismiss a
plausible complaint because it is not as plausible as the defendant's theory.").

   NBCU's motion to dismiss the defamation claim as to the final sentence of
Statement Two will therefore be denied.

---

[9] See https://www.youtube.com/watch?v=kQZqqkNiAsA, at 3:50
[10] In contrast to the Politico article, which is not referenced in the Complaint or in the broadcast, the headline of the
CNN article and the excerpt of its text were displayed onscreen during the broadcast.  Because the CNN article does
not address whether Nunes delivered the package to the FBI, the contents of the article do not affect the Court's
analysis of whether the Complaint plausibly alleges actual malice.  Accordingly, the Court need not ultimately
determine whether the article's full text is properly considered on a Rule 12(b)(6) motion.

CONCLUSION

NBCU' motion to dismiss is GRANTED as to Statements One and Three and the

first two sentences of Statement Two, and DENIED as to the third sentence of Statement Two.

The Clerk shall terminate the motion and the related letter-motion.  (Doc. 44, 47.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
        November 28, 2022