MATTHEW BERRY
GENERAL COUNSEL

TODD B. TATELMAN
DEPUTY GENERAL COUNSEL

BROOKS M. HANNER
ASSOCIATE GENERAL COUNSEL

**U.S. HOUSE OF REPRESENTATIVES
OFFICE OF GENERAL COUNSEL**
5140 O'NEILL HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6532
(202) 225-9700
FAX: (202) 226-1360

SALLY CLOUSE
ASSOCIATE GENERAL COUNSEL

BRADLEY CRAIGMYLE
ASSOCIATE GENERAL COUNSEL

RACHEL A. JANKOWSKI
ASSISTANT GENERAL COUNSEL

ANDY T. WANG
ASSISTANT GENERAL COUNSEL

February 13, 2024

**VIA ECF**

The Honorable Sarah Netburn
United States Magistrate Judge
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

      **Re: *Devin G. Nunes v. NBCUniversal Media, LLC*, 1:22-cv-01633-PKC-SN**

Dear Judge Netburn:

      The House Permanent Select Committee on Intelligence (HPSCI or Committee) respectfully submits this letter brief in response to the Court's direction (ECF 88) to explain the legal basis for Speech or Debate Clause objections made to certain questions asked during the January 11, 2024, deposition of former HPSCI staff member Jacob Langer. *See* Deposition of Jacob Langer, Jan. 11, 2024 (attached as Ex. A) (Langer Dep.).

      By way of background, HPSCI is a permanent select committee of the U.S. House of Representatives and is specifically delegated legislative and oversight authority over the U.S Intelligence Community—which includes the intelligence and intelligence-related activities of all departments and agencies of the federal government.[1]  From 2015 until January 2023, Mr. Langer served as a member of HPSCI's staff, holding various positions including, during the relevant period here, Communications Director. *See* Langer Dep. 29:8-20.

## Argument

      Information related to HPSCI business, proceedings, and internal legislative and oversight deliberations and communications are absolutely protected from disclosure by the Speech or Debate Clause of the U.S. Constitution.[2]  The Speech or Debate Clause categorically protects Members and their aides from being compelled to provide testimony about activities that fall "within the sphere of legitimate legislative activity." *Eastland v. U.S. Servicemen's Fund*,

---

[1] *See* Rule X.3(m) & X.11(b)(1), Rules of the U.S. House of Representatives, 118th Cong. (2023), *available at* https://perma.cc/3UX4-2YG5.

[2] *See* U.S. Const. art. I, § 6, cl. 1 ("[F]or any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place.").

The Honorable Judge Netburn
February 13, 2024
Page 2

421 U.S. 491, 503 (1975).[3]  This includes any activities that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings."  *Gravel*, 408 U.S. at 625; *accord Eastland*, 421 U.S. at 504.

"The purpose of the [Speech or Debate] Clause is to insure that the legislative function the Constitution allocates to Congress may be performed *independently*. ...  [T]he 'central role' of the Clause is to 'prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary… .'"  *Eastland*, 421 U.S. at 502 (emphasis added) (quoting *Gravel*, 408 U.S. at 617).[4]  Because "the guarantees of th[e Speech or Debate] Clause are vitally important to our system of government," they "are entitled to be treated by the courts with the sensitivity that such important values require."  *Helstoski v. Meanor*, 442 U.S. 500, 506 (1979).  Accordingly, the Supreme Court has repeatedly, and "[w]ithout exception, … read the Speech or Debate Clause broadly to effectuate its purposes."  *Eastland*, 421 U.S. at 501.[5]

This broad reading includes extending the protections of the Clause "not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself."  *Gravel*, 408 U.S. at 618.  This is so because "it is literally impossible, in view of the complexities of the modern legislative process, with Congress almost constantly in session and matters of legislative concern constantly proliferating, for Members of Congress to perform their legislative tasks without the help of aides and assistants."  *Id*. at 616.[6]

When applicable, the Speech or Debate Clause provides Members and staff with, among other protections, a non-disclosure privilege that bars seizure of legislative materials from Members and their aides and prevents them from being compelled to testify as to legislative matters or to produce legislative records.  *See Brown & Williamson*, 62 F.3d at 421 ("A party is no more entitled to compel congressional testimony—or production of documents—than it is to sue congressmen."); *SEC v. Comm. on Ways and Means*, 161 F. Supp. 3d 199, 242 (S.D.N.Y. 2015) ("The issuance of … subpoenas, and a judicial practice of enforcing them, also presents a

---

[3] *See also, e.g.*, *Eastland*, 421 U.S. at 501 ("The question to be resolved is whether the actions of the [Legislative Branch officials] fall within the sphere of legitimate legislative activity.  If they do, the petitioners 'shall not be questioned in any other Place' about those activities since the prohibitions of the Speech or Debate Clause are absolute." (quoting U.S. Const. art. I, § 6, cl. 1; other quotation marks and citations omitted)); *Doe v. McMillan*, 412 U.S. 306, 311-12 (1973); *Gravel v. United States*, 408 U.S. 606, 613-22 (1972) (same in context of subpoena to aide); *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 415-23 (D.C. Cir. 1995) (quashing subpoena); *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 859-63 (D.C. Cir. 1988) (quashing subpoena).

[4] *See also United States v. Helstoski*, 442 U.S. 477, 491 (1979) ("This Court has reiterated the central importance of the Clause for preventing intrusion by [the] Executive and Judiciary into the legislative sphere.")

[5] *See also McMillan*, 412 U.S. at 311; *Gravel*, 408 U.S. at 617-18; *United States v. Johnson*, 383 U.S. 169, 179 (1966); *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880); *United States v. Myers*, 635 F.2d 932, 937 (2d Cir. 1980).

[6] *See also, e.g.*, *Eastland*, 421 U.S. at 507 (affirming dismissal of claims against Senate subcommittee, individual Senators, and subcommittee's Chief Counsel: "[The Court] draw[s] no distinction between the Members and the Chief Counsel. … '[T]he day-to-day work of such aides is so critical to the Members' performance that they must be treated as (the Members') alter egos.'" (quoting *Gravel*, 408 U.S. at 616-17)); *MINPECO*, 844 F.2d at 862 (Speech or Debate Clause protected staff activities undertaken in connection with subcommittee investigation).

The Honorable Judge Netburn
February 13, 2024
Page 3

significant risk of intimidation, and upsets the checks and balances the Framers envisioned and put in place.").[7]

 Courts have broadly construed the concept of legislative activity to include far more than words spoken in debate. The "cases have plainly not taken a literalistic approach in applying the privilege … Committee reports, resolutions, and the act of voting are equally covered… ." *Gravel*, 408 U.S. at 617. Both the Supreme Court and multiple circuit courts have emphasized that collecting information in furtherance of legislative responsibilities is activity within the legislative sphere because "[a] legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change." *Eastland*, 421 U.S. at 504 (quoting *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927)).[8]

 Information gathering in furtherance of legislative activities is absolutely protected whenever the subject of the inquiry is "one 'on which legislation could be had.'" *Eastland*, 421 U.S. at 504 n.15 (quoting *McGrain*, 273 U.S. at 177). This is true regardless of whether legislation is produced. *See id.* at 509 ("Nor is the legitimacy of a congressional inquiry to be defined by what it produces. The very nature of the investigative function–like any research–is that it takes the searchers up some 'blind alleys' and into nonproductive enterprises. To be a valid legislative inquiry there need be no predictable end result."). Courts, including this one, have consistently recognized that "legislative information gathering, whether formal or informal, is protected under the Speech or Debate Clause." *SEC v. Ways and Means*, 161 F. Supp. 3d at 242; *see also United States v. Biaggi*, 853 F.2d 89, 103 (2d Cir. 1988) (concluding that informal "legislative factfinding activity conducted by [Congressman] Biaggi during his Florida trips was protected [under the Speech or Debate Clause].").[9]

 In this instance, HPSCI's Speech or Debate Clause objections at the Langer deposition were confined to two distinct subject areas, each involving a traditional application of the protections provided by the Clause.

 *First*, the Committee objected to questions related to HPSCI's receipt, handling, review, and processing of the so-called "Derkach Package."[10] This included objections to questions

---

[7] *See also, e.g.*, *Dennis v. Sparks*, 449 U.S. 24, 30 (1980) (dicta); *United States v. Rayburn House Off. Bldg., Room 2113, Wash., D.C. 20515*, 497 F.3d 654, 660-61 (D.C. Cir. 2007); *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 530 (9th Cir. 1983).

[8] *See also, e.g.*, *Brown & Williamson*, 62 F.3d at 416 ("The privilege [] permits Congress to conduct investigations and obtain information without interference from the courts… ."); *Miller*, 709 F.2d at 530. ("[o]btaining information pertinent to potential legislation or investigation is one of the 'things generally done in a session of the House,' concerning matters within the 'legitimate legislative sphere.'") (citation omitted).

[9] *See also, e.g.*, *Brown & Williamson,* 62 F.3d at 411-12, 423 (documents voluntarily delivered to committee by private citizen protected by Clause); *McSurely v. McClellan*, 553 F.2d 1277, 1286 (D.C. Cir. 1976) (en banc) ("We have no doubt that information gathering, whether by issuance of subpoenas or field work by a Senator or his staff, is essential to informed deliberation over proposed legislation.").

[10] *See, e.g.*, Langer Dep. at pp. 119:7-12, 147:16-18, 149:4-11, 152:11-22, 153:2-10; 154:17-22, 155:1-6, 156:13-22, 159:1-7 & 14-19, 160:4-17, 163:13-17, 164:20-22, 166:8-10, 169:18-22, 192:2-8, 203:16-21, 237:9-17, and 264:15-21.

The Honorable Judge Netburn
February 13, 2024
Page 4

related to any communications between and among Mr. Langer and other HPSCI Members and staff regarding the "Derkach Package,"[11] as well as questions regarding the decision making, drafting, and sending of a December 11, 2019 letter from HPSCI Ranking Member Nunes to the Federal Bureau of Investigation (FBI) about the "Derkach Package."

According to Plaintiff's Second Amended Complaint, the "Derkach Package" "came to the House Intelligence Committee" from a third party in December 2019. ECF 40 at ¶ 13. Andrii Derkach, a Ukrainian national and long-suspected Russian agent, was among those believed to be linked to Russian election interference efforts.[12] And during the 116th Congress (Jan. 3, 2019 - Jan. 3, 2021), HPSCI was actively engaged in several investigative matters related to potential foreign interference in domestic elections and was actively considering legislation related to that issue.[13]

Consequently, all matters related to the "Derkach Package" implicate the Speech or Debate Clause because it was received at HPSCI, considered to be related to on-going Committee investigations, and handled exclusively by HPSCI staff. All actions taken by HPSCI Members or staff related to the "Derkach Package" constitute well-established, protected legislative acts, specifically those involving information gathering. As this Court has previously recognized, "[t]he 'controlling principle' for determining whether informal information gathering falls within the Clause's protections is whether 'the information is acquired in connection with or in aid of an activity that qualifies as "legislative" in nature,' not what the source of the information is." *SEC v. Ways and Means*, 161 F. Supp. 3d at 237 (quoting *Jewish War Veterans of the U.S.A., Inc. v. Gates*, 506 F. Supp. 2d 30, 57 (D.D.C. 2007)).

Likewise, questions regarding how the Derkach Package was reviewed (or not reviewed) and discussed by HPSCI, as well as any questions about instructions from the Members to the staff and/or advice provided by staff, also trigger the Clause's protections. Internal Committee deliberations about information gathering are squarely covered by the privilege. This is consistent with the Supreme Court's admonition that "to confine the protection … to words spoken in debate would be an unacceptably narrow view," and instead to read the Clause "broadly to effectuate its purposes." *See, e.g.*, *Gravel*, 408 U.S. at 617, 624; *Eastland*, 421 U.S. at 501. Accordingly, HPSCI is absolutely immune from having former staff questioned about

---

[11] The Committee did not object to questions or answers about the "Derkach Package" that related to information Mr. Langer may have obtained from sources other than his work for HPSCI, such as his work for Representative Nunes' personal congressional office. *See, e.g.*, Langer Dep. at p. 160:13-15 ("To the extent [Mr. Langer's] knowledge is independent of [his] work with the committee … he would be permitted to answer.").

[12] *See, e.g.*, Press Release U.S. Dep't of Treasury, "Treasury Sanctions Russia-Linked Election Interference Actors," Sept. 10, 2020, *available at* https://perma.cc/F4TJ-H2ME (designating Andrii Derkach for efforts "from at least late 2019 through mid-2020" to influence 2020 presidential election).

[13] *See, e.g.*, H.R. 8495, 116th Cong. (2020) (requiring report on Russian government attempts to interfere in domestic elections); H.R. 8463, 116th Cong. (2020) (proposing imposition of sanctions on senior political figures in Russia contributing to Russian election interference efforts); H. Res. 759, 116th Cong. (2019) (condemning Russia for its interference in 2016 U.S. presidential election and ongoing disinformation campaign).

The Honorable Judge Netburn
February 13, 2024
Page 5

those acts.[14]

*Second*, the Committee objected to questions related to HPSCI's July 2020 business meeting.[15] Supreme Court precedent is clear: "conduct at legislative committee hearings … is within the sphere of legitimate legislative activity." *Gravel*, 408 U.S. at 624 (quotation marks omitted). Thus, questions regarding HPSCI's business meeting are undeniably privileged. Defendant's observation that a transcript of the meeting is publicly available and has been made part of the litigation record, *see* Langer Dep. at p. 214:18-19, is of no moment and does not in any way diminish or vitiate the Speech or Debate Clause. The existence of public records memorializing legislative acts does not curtail the protections afforded by the Clause. Indeed, most paradigmatic legislative acts by Members of Congress occur in public; legislative text, amendments, recorded votes, floor speeches, Committee reports, and statements made at Committee hearings and other meetings are all publicly available and easily accessible. The determining factor for application of the Speech or Debate Clause is not whether an act is public or private, but rather whether it constitutes a "legislative act."[16] Here, because the July 2020 HPSCI business meeting was undoubtedly a legislative act absolutely protected by the Clause, former HPSCI staff cannot be compelled to answer questions about it.

## Conclusion

For all the reasons explained above, the Committee's Speech or Debate Clause objections should be sustained, and former HPSCI staff, such as Mr. Langer, should not be required to answer deposition questions related to its legislative or oversight activities.

Respectfully submitted,

Matthew B. Berry (VA Bar No. 42600)
  *General Counsel*
/s/ Todd B. Tatelman
Todd B. Tatelman (VA Bar No. 66008)
  *Deputy General Counsel*

OFFICE OF GENERAL COUNSEL          *Counsel for the Permanent Select Committee*
U.S. HOUSE OF REPRESENTATIVES      *on Intelligence of the U.S. House of Representatives*
5140 O'Neill House Office Building
Washington, DC 20515
Telephone: (202) 225-9700
Todd.Tatelman@mail.house.gov

---

[14] *See Brown & Williamson,* 62 F.3d at 423 ("B & W's claim at bottom, is to a right to engage in a broad scale discovery of documents in a congressional file that comes from third parties. The Speech or Debate Clause bars that claim.").

[15] *See, e.g.*, Langer Dep. at pp. 214:13-21, 215:5-16, and 217:13-15.

[16] *McCarthy v. Pelosi*, 5 F.4th 34, 39 (D.C. Cir. 2021) ("Of particular salience, the Clause applies not just to speech and debate in the literal sense, but to all 'legislative acts.'" (quoting *McMillan*, 412 U.S. at 311-12)).

**CERTIFICATE OF SERVICE**

I certify that on February 13, 2024, I caused the foregoing document to be filed via this Court's CM/ECF system, which I understand caused service on all registered parties.

Respectfully submitted,

Matthew B. Berry (VA Bar No. 42600)
   *General Counsel*
*/s/ Todd B. Tatelman*
Todd B. Tatelman (VA Bar No. 66008)
   *Deputy General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, DC 20515
Telephone: (202) 225-9700
Todd.Tatelman@mail.house.gov

*Counsel for the Permanent Select Committee on Intelligence of the U.S. House of Representatives*