
P: 703-888-1943 • F: 703-888-1930
717 King Street, Suite 200 • Alexandria, VA 22314

Jason Greaves
PARTNER
D: 571-467-0003
E: jason@binnall.com

February 13, 2024

**VIA ECF**
Hon. Sarah Netburn
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

RE: *Devin G. Nunes v. NBCUniversal Media, LLC*, 1:22-cv-01633-PKC-SN

Magistrate Judge Netburn,

Pursuant to your Memo Endorsement of the parties suggested briefing schedule, Mr. Nunes files this letter outlining his position on the Speech or Debate Clause privilege asserted by the United States House of Representatives Deputy General Counsel Todd Tatelman during the deposition of Jacob "Jack" Langer. As both a former Congressman and former Chairman of the House Permanent Select Committee on Intelligence ("HPSCI"), Mr. Nunes understands the importance of the Speech or Debate Clause and its application to protect the business of Congress, the business of HPSCI, and ensure that Members of Congress can complete their duties effectively.

The Speech or Debate Clause privilege finds its source in Article I, Section 6, Clause 1 of the Constitution, and includes in relevant part: "for any Speech or Debate in either House, they shall not be questioned in any other Place." U.S. Const. art. 1, §6, cl. 1. The Supreme Court has determined that this clause provides two important protections for Members of Congress: (1) freedom from arrest (in civil cases only) when attending or traveling to attend a session of the House, and (2) Members of Congress may not be questioned in any other place for any speech or debate in either House. *Gravel v. U.S.*, 408 U.S. 606, 614-615 (1972).

The clause protects "Members against prosecutions that directly impinge upon or threaten the legislative process." *Gravel*, 408 U.S. at 616. Due to the nature of Congress and the inability of Members of Congress to complete their duties without the assistance of aides, the Supreme Court has extended protections of Members to their aides as well. *Id.* (citing *United States v. Doe*, 455 F.2d at 761, 937-938; *see also United States v. Johnson*, 383 U. S. 169 (1966); *Barr v. Matteo*, 360 U.S. 564 (1959)).

The Supreme Court has been careful to interpret the clause "broadly to effectuate its purposes," *United States v. Johnson*, 383 U.S. 180 (1966), and expanded its protections to

include anything "generally done in a session of the House by one of its members in relation to the business before it." *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880); *Johnson*, 383 U.S. at 179.

Despite expanding the protections of the Speech or Debate Clause to congressional aides and making it clear that the clause should not have a "cramped construction," the Court limited this broad protection to situations where it is necessary to "free[] the legislator from executive and judicial oversight that *realistically threatens* to control his conduct as a legislator." *Gravel*, 408 U.S. at 618 (emphasis added). The Supreme Court further tempered the boundaries of the privilege by referring to the writing of Thomas Jefferson: "implicit in the narrow scope of the privilege of freedom from arrest is . . . the judgment that legislators ought not to stand above the law they create but ought generally to be bound by it as are ordinary persons. *Id.* at 615 (citing T. Jefferson, Manual of Parliamentary Practice, S.Doc. No. 92-1, p. 437 (1971)).

The Court further assured that "[l]egislative acts are not all-encompassing." *Gravel*, 408 U.S. at 625 (explaining that just because Members of Congress "generally perform certain acts in their official capacity . . . does not necessarily make all such acts legislative.") For example, "Members of Congress are constantly in touch with the Executive Branch . . . and with administrative agencies[—]they may cajole, and exhort with respect to the administration of a federal statute[—]but such conduct, though generally done, is not protected legislative activity." *Id.* While such interactions with the executive branch may be viewed as "official" or "legitimate," they are not always "legislative." *Brewster* and *Johnson*, for example, show that communicating with an executive branch agency on behalf of a constituent is not always a protected legislative act. Interactions with the executive branch intended to "influence" executive policy for non-legislative reasons are similarly not legislative acts. *United States v. Brewster*, 408 U.S. 501, 526 (1972) ("When a bribe is taken, it does not matter whether the promise for which the bribe was given was for the performance of a legislative act as here or, as in Johnson, for use of a Congressman's influence with the Executive Branch."). This suggests that communications and interactions with the Executive Branch, even if pertaining to an agency's administration and execution of a federal statute, is unprotected as there is no connection to the legislative work of Congress.

The Court has also previously excluded so-called administrative work from the scope of immunity protections. When considering the immunity of a judge, the Supreme Court distinguished between the adjudicative functions of a judge, which would be protected, and the administrative functions of the court, which would not be protected. *See Forrester v. White*, 484 U.S. 219, 225-229 (1988). In this same vein, the D.C. Circuit when addressing the common law legislative immunity enjoyed by members of the D.C. City Council, the court relied on *Forrester* to determine that some actions that are administrative are outside of the protection of immunity under this functional analysis. *See Gross v. Winter*, 876 F.2d 165, 170–72 (D.C. Cir. 1989).

Here, Mr. Nunes sued based on defamatory comments made by Rachel Maddow on *The Rachel Maddow Show* airing on NBCUniversal. *See* Dkt. No. 57 at 2 ("Nunes has plausibly alleged a claim of defamation in regard to a factual assertion contained in one of the three statements."). This Court narrowed the claims to a single factual assertion. *Id.* The remaining factual allegation concerns Ms. Maddow's statement: "He has refused to hand [the Derkach package] over to the FBI which is what you should do if you get something from somebody who is sanctioned by the U.S. as a Russian agent." Dkt. No. 57 at 15 (citing Dkt. No. 40 at ¶ 2). Indeed, this Court found that "[a] reasonable viewer could plausibly understand the speaker to assert that Nunes 'refused' to turn over the Derkach package to the FBI." Dkt. No. 57 at 15. Therefore, this case is now limited to the remaining allegations of this case—whether the package from Mr. Derkach was turned over to the FBI.

Based upon the foregoing, Mr. Nunes respectfully suggests that the Court should allow testimony about the turning over of this package to the FBI because this conduct falls into the narrow exceptions for administrative work and dealing with the executive branch. As outlined above, Members of Congress interactions with the Executive Branch are sometimes not considered to be part of their legislative responsibilities. In addition, following the protocols of HPSCI regarding turning this package over to the FBI would also be administrative. Therefore, Mr. Nunes suggests this Court apply the Speech or Debate Clause to any information that is purely about HPSCI or its internal operations, but allow testimony about whether the package at issue was turned over to the FBI, an Executive Branch agency. To the extent that there are questions that seek information that relates to the business meeting of HPSCI or internal deliberations about HPSCI's work, functions, or duties, then the answers to those questions, seeking purely legislative information, should be considered to be within the protection of the Speech or Debate Clause privilege.

Sincerely,

Jason Greaves