

21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Elizabeth A. McNamara**
212.489.8230 tel
212.489.340 fax

lizmcnamara@dwt.com

February 20, 2024

**VIA ECF**

Hon. Sarah Netburn
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    *Devin G. Nunes v. NBCUniversal Media, LLC*, l:22-cv-01633-PKC-SN
             <u>Defendant's Letter Brief Regarding the Speech or Debate Clause Privilege</u>

Dear Magistrate Judge Netburn:

      Defendant NBCUniversal Media, LLC ("NBCU") respectfully submits this letter brief in response to the House Permanent Select Committee on Intelligence's ("HPSCI") letter brief addressing its assertion of Speech or Debate Clause Privilege (the "Privilege") objections during the January 11, 2024 deposition of Jacob Langer (Dkt. 96) (the "HPSCI Letter Brief") and Plaintiff's letter brief regarding the same (Dkt. 97) ("Plaintiff's Letter Brief").[1]

      HPSCI's sweeping Privilege objections effectively close the door on NBCU's ability to obtain discovery on the single allegedly defamatory statement at issue in this libel action—that "[Nunes] has refused to hand [the Derkach package] over to the FBI"—and thus has rendered it difficult for NBCU to test the veracity of Plaintiff's allegations, particularly as it pertains to the issues of substantial truth and actual malice. Accordingly, the Court should overrule HPSCI's overbroad and improper Privilege objections, Order HPSCI to produce further responsive documents, and Order the relevant witnesses to answer questions probative of these issues.

---

[1] HPSCI also invoked the Privilege during NBCU's deposition of Plaintiff, as well as the deposition of HPSCI staffer, George Pappas. During these depositions, HPSCI invoked the Privilege in the same manner as during the Langer deposition. Additionally, HPSCI invoked the Privilege in response to NBCU's August 15, 2023 subpoena seeking documents from HPSCI.

DWT.COM

Hon. Sarah Netburn
February 20, 2024
Page 2

### A. Relevant Facts Pertaining to This Dispute

This libel case pertains to a single statement made during the March 18, 2021 telecast of *The Rachel Maddow Show* ("TRMS"): "[Devin Nunes] has refused to hand [the Derkach package] over to the FBI" (the "Statement"). Plaintiff alleges that he received the Derkach package on December 11, 2019 and turned it over the FBI on the same date. SAC ¶ 13. Plaintiff also alleges that NBCU knew he turned it over to the FBI at the time of the telecast because Breitbart published an article on July 29, 2020 that included quotes from an interview with Representative Eric A. "Rick" Crawford, in which he obliquely suggested Nunes turned the package over. SAC ¶ 16. NBCU, in addition to defending the veracity of its reporting, maintains that it published the Statement in full confidence of its accuracy, relying on a July 23, 2020 Politico article that explicitly said that "one person familiar with the matter said the information was not turned over to the FBI," Nunes' repeated refusal to publicly comment on the disposition of the Derkach package, and other contemporaneous events supporting the credibility of Politico's reporting.

Nunes' sole evidence to support its argument that NBCU should have known the Statement was false is Crawford's quote that appeared in the Breitbart article. *See* SAC ¶ 16. Those responsible for TRMS were not even aware of Crawford's quote or the Breitbart article, but even assuming they somehow were, the quote is far from definitive, other statements in the article contradicted it, and facts within NBCU's knowledge would have given it significant reason to doubt the veracity of Crawford's statement, including that it appeared to be, at best, second hand information, and, more likely, Crawford's rank speculation. Indeed, when given the opportunity to confirm his receipt of a package to the other members of HPSCI at a July 29, 2020 HPSCI Business Meeting (the "Business Meeting"), Nunes refused to answer any questions, suggesting that he had not shared that information with other members of the Committee. *See* Permanent Select Committee on Intelligence Business Meeting (July 29, 2020), available at https://www.congress.gov/116/meeting/house/109721/documents/HMKP-116-IG00-Transcript-20200729.pdf.

Over the course of this litigation, NBCU has attempted to discover information pertaining to the truth of the Statement and also to test Nunes' theory of actual malice. To that end, NBCU has done everything to run these issues to ground:

- NBCU requested documents going to both of these issues directly from Plaintiff, but was unable to obtain any information in support due to his failure to preserve relevant documents. See Dkt. 65-4 at 27 ("[a]ny physical and electronic files from my congressional office would have been left with the House of Representatives upon my departure from Congress"). Indeed, Plaintiff acknowledges that he has not produced a single document concretely establishing how the Derkach package was delivered to the FBI or confirming that it was ever transmitted to the agency at all. Nunes Tr. 41:18-42:20. He also has no documents supporting that he communicated with his colleagues (including Crawford) about the disposition of the Derkach package, nor does he have

Hon. Sarah Netburn
February 20, 2024
Page 3

> a concrete memory of specific conversations with his colleagues about this topic. Nunes Tr. 56:23-57:20; 65:6-18; 236:25-239:6.
>
> - NBCU served subpoenas on all staffers identified by Plaintiff as having knowledge of the facts of this case including George Pappas, Derek Harvey, Nick Ciarlante, Jack Langer, Jillian Souza, and Jennifer Morrow. Due in part to Plaintiff's failure to instruct these individuals to preserve relevant documents, and Privilege objections asserted by HPSCI, no documents have been provided from these individuals that corroborate whether the Derkach package was turned over to the FBI, or whether any third parties were informed of the Derkach package's disposition.
>
> - NBCU served a subpoena on HPSCI directly. HPSCI objected to that subpoena wholesale on Privilege grounds and did not produce any documents in response.
>
> - NBCU served a subpoena on Representative Crawford that was thereafter referred to HPSCI. In response, HPSCI has refused to produce Representative Crawford for a deposition on Privilege grounds, and produced a single email communication between Jack Langer (Mr. Nunes' Communications Director) and a staffer for Rep. Crawford where Mr. Langer arranged for Representative Crawford to speak with Breitbart. When Langer was asked at his deposition what Representative Crawford was told about the Derkach package, HPSCI objected on Privilege grounds. Langer Tr. 160:4-21.
>
> - NBCU served a *Touhy* request on the FBI, U.S. Department of Justice, former Attorney General William Barr, and former Assistant Attorney General for the Criminal Division of the United States Department of Justice, Brian A. Benczkowski,[2] seeking documents and testimony pertaining to whether the Derkach package was turned over to the FBI. In response, the FBI has refused to produce a witness to testify regarding what happened, and instead produced a single, heavily redacted document that contradicts Plaintiff's allegations in numerous respects. During his deposition, Plaintiff acknowledged it contradicted his allegations. Nunes Tr. 168:5-172:25.

Put simply, NBCU has sought documents and information from all available sources and due either to a failure to preserve documents or Privilege assertions, it has been stymied at every turn.

Over the course of document and deposition discovery, HPSCI has asserted the Privilege over three broad categories of information. *First*, HPSCI has asserted the Privilege over documents and testimony relating to highly relevant information concerning the receipt of the Derkach package and what, if anything, was done with it.[3] For example, HPSCI has objected to

---

[2] Plaintiff alleges that he sent a December 11, 2019 letter to Messrs. Barr and Benczkowski notifying them about the receipt of the Derkach Package. *See* SAC ¶ 13.

[3] *See* Langer Tr. 119:7-12, 147:16-18, 149:4-11, 152:11-22, 153:2-10; 154:17-22, 155:1-6, 156:13-22, 159:1-7, 159:14-19, 160:4-17, 163:13-17, 164:20-22, 166:8-10, 169:18-22, 192:2-8, 203:16-21, 237:9-17, and 264:15-21.

Hon. Sarah Netburn
February 20, 2024
Page 4

testimony about the receipt of the package, the handling of the package, and the disposition of the package.[4]

*Second*, HPSCI invoked the Privilege over documents and testimony related to the unclassified transcript of the Business Meeting. The transcript of this Business Meeting was relied on by TRMS and is important to this case. Specifically, during this Business Meeting, Representative Sean Patrick Maloney publicly confronted Plaintiff about his receipt of and refusal to share or acknowledge receipt of the Derkach package to other members of HPSCI, suggesting that Plaintiff was not being forthcoming with other members of the committee about the Derkach package. Additionally, the Business Meeting addressed a July 13, 2020 letter authored by top Democratic congressional lawmakers, including then Chairman of the House Intelligence Committee Adam Schiff and the then Speaker of the House, Nancy Pelosi, to the FBI alerting the agency to a potential "concerted foreign interference campaign"—reportedly a reference to the Derkach package. Neither Plaintiff nor any of the other targets of Defendants' discovery efforts have produced any documents related to the Business Meeting either due to a failure to preserve or on Privilege grounds.

*Third*, and relatedly, HPSCI has invoked the Privilege in connection with Plaintiff's and his staff's communications with each other and other members of Congress and their staff concerning the Derkach package and the Business Meeting. These communications are of particular import, as they will allow NBCU to test Plaintiff's sole basis for claiming NBCU acted with actual malice, and should add further support to NBCU's actual malice defenses.

B.   Argument

In determining whether the Privilege applies, "the touchstone of the inquiry under the Speech or Debate Clause is whether or not the activity in relation to which the protection is claimed is in fact 'legislative.'" *Favors v. Cuomo*, 2013 WL 11319831, at *5 (E.D.N.Y. Feb. 8, 2013) (citing *Brewster v. U.S.*, 408 U.S. 501 (1972)). Contrary to HPSCI's contentions, the Privilege is not without constraints and there are clear limits as to what qualifies as legislative activity. *See Gravel v. U.S.*, 408 U.S. 606, 625 (1972) ("That Senators generally perform certain acts in their official capacity as Senators does not necessarily make all such acts legislative in nature. Members of Congress are constantly in touch with the Executive Branch of the Government and with administrative agencies—they may cajole, and exhort with respect to the administration of a federal statute—but such conduct, though generally done, is not protected legislative activity."); *Doe v. McMillan*, 412 U.S. 306, 313 (1973) ("[E]verything a Member of Congress may regularly do is not a legislative act within the protection of the Speech or Debate Clause.").

---

[4] HPSCI contends that it "did not object to questions or answers about the 'Derkach Package' that related to information Mr. Langer may have obtained from sources other than his work for HPSCI, such as his work for Representative Nunes' personal congressional office." *See* HPSCI Letter Brief at 4 n. 11. However, this concession is of no practical value to NBCU, as Mr. Nunes, Mr. Langer, Mr. Pappas, and presumably the other witnesses yet to be deposed have no knowledge about the Derkach package outside of their work for HPSCI.

HPSCI's attempt to invoke the Privilege as to testimony about the Derkach package is unpersuasive. HPSCI argues that, because the House of Representatives was generally considering legislation related to election interference during 2019 and 2020, any communications about the Derkach Package itself would have necessarily been legislative by nature. HPSCI Letter Br. at 4. However, this completely ignores the specific information sought by NBCU in this action. NBCU is not seeking testimony about how the Derkach package informed legislative efforts by Congress. Instead, NBCU is inquiring into the facts surrounding how the Derkach Package arrived at the House of Representatives and how it was subsequently handled by Plaintiff and his staff members. This conduct is administrative, rather than legislative, in nature. Moreover, HPSCI never ties the facts at the center of NBCU's questioning—*i.e.* testimony relating to the receipt and handling of the Derkach Package—directly to any contemplated or actual legislation. HPSCI cannot simply invoke tangentially related legislation to justify the Privilege.

HPSCI also asserts that internal discussions and deliberations about how to handle the Derkach package would be protected under the Privilege. HPSCI Letter Br. at 4. This argument also fails, as it remains to be seen how HPSCI's members and staff's handling of the Derkach package had any bearing on any legislative acts. Ultimately, the Speech or Debate Clause "does not prohibit inquiry into illegal conduct simply because it has some nexus to legislative functions, or because it is merely 'related to,' as opposed to 'part of' the 'due functioning' of the 'legislative process.'" *Fields v. Off. of Eddie Bernice Johnson*, 459 F.3d 1, 10 (D.C. Cir. 2006) (citing *Brewster*, 408 U.S. at 514, 528). Additionally, as Plaintiff's counsel points out, the information sought centers on HPSCI's interactions with the FBI, an executive agency. Plaintiff's Letter Br. at 3. This alone undercuts HPSCI's assertion of the Privilege. *See, e.g.*, *Doe v. McMillan*, 412 U.S. 306, 313 (1973) ("Members of Congress may frequently be in touch with and seek to influence the Executive Branch of Government, but this conduct 'though generally done, is not protected legislative activity.'"). Accordingly, HPSCI's privilege assertions as to the Derkach package should not be sustained.

Further, HPSCI's Privilege assertions over the Business Meeting and associated communications about the Derkach package should likewise fail. As reflected in the publicly available transcript, the focus of the Business Meeting was the public July 13, 2020 letter sent to the FBI seeking a defensive counterintelligence briefing and the classified addendum thereto. Accordingly, the purpose of this meeting was congressional efforts to influence an executive agency and was therefore outside of the bounds of the Privilege. *See, e.g.*, *U.S. v. Johnson*, 383 U.S. 169, 172 (1966) (suggesting that the Clause did not cover a Member's "attempt to influence the Department of Justice"); *Chastain v. Sundquist,* 833 F.2d 311, 314–15 (D.C. Cir. 1987) (Congressman's letters to the Attorney General were "not shielded by the Clause" because they "did not seek information or otherwise attempt to aid a congressional investigation"). Relatedly, the information sought about Plaintiff's refusal to answer Representative Maloney's questions and related communications is unrelated to any legislative activity—indeed Plaintiff testified that Representative Maloney's questioning was patently improper for a Business Meeting (Nunes Tr. 143:14-146:2; 233:14-234:6)—and therefore (in his view) unrelated to any legislative activity.

Hon. Sarah Netburn
February 20, 2024
Page 6

Last, Representative Nunes' and his staff's communications to other Members and their staffs pertaining to the disposition of the package and the Business Meeting are part and parcel to questioning about the Business Meeting and disposition of the Derkach package. Cutting off questioning and discovery of these facts would severely prejudice Defendants in their ability to mount a fulsome defense here.

Last, Plaintiff's self-interested proposed half-measure of asking the Court to permit testimony *only* about the handling and disposition of the Derkach package, and not the Business Meeting or communications surrounding the package and Business Meeting would allow Plaintiff to use the Privilege as both a sword and shield, leaving multiple issues central to the case beyond the reach of discovery. Such a result would be unjust and would prejudice Defendants' defense of this case.

For all the reasons discussed above, NBCU maintains that HPSCI's Speech or Debate Clause objections should not be sustained. Plaintiff and former HPSCI staff members should be required to answer deposition questions related to the Derkach package and the Business Meeting. Moreover, the Privilege should not prevent HPSCI from producing relevant documents related to these topics.

We thank the Court for its consideration of this matter.

Respectfully submitted,

Elizabeth A. McNamara

cc:   Counsel of record (via ECF)