

**BINNALL LAW GROUP**
P: 703-888-1943 • F: 703-888-1930
717 King Street, Suite 200 • Alexandria, VA 22314

**Jason Greaves**
PARTNER
D: 571-467-0003
E: jason@binnall.com

February 27, 2024

<u>VIA ECF</u>
Hon. Sarah Netburn
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

     RE: *Devin G. Nunes v. NBCUniversal Media, LLC*, 1:22-cv-01633-PKC-SN

Magistrate Judge Netburn,

     Plaintiff Devin Nunes respectfully submits this letter-brief in accordance with Your Honor's January 26, 2024 Order (the "Order"), Dkt. 91, directing briefing to address any remaining concerns Defendant NBCUniversal Media, LLC ("NBCU") has about Plaintiff's preservation and production of documents in this matter. Defendant now seeks an adverse instruction and sanctions due to its allegations that Mr. Nunes did not properly preserve and produce evidence in this case.

> To secure spoliation sanctions based on the destruction or delayed production of evidence, a moving party must prove that (1) the party having control over the evidence had an obligation to preserve or timely produce it; (2) the party that destroyed or failed to produce the evidence in a timely manner had a "culpable state of mind"; and (3) the missing evidence is "relevant" to the moving party's claim or defense, "such that a reasonable trier of fact could find that it would support that claim or defense."

*GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 352–53 (S.D.N.Y. 2012), *aff'd,* No. 11 CV 1299 HB, 2012 WL 1849101 (S.D.N.Y. May 21, 2012) (citing *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 107 (2d Cir.2002) (other citations omitted). Defendant has not made a sufficient showing that these requirements have been met.

     As noted by Defendant's letter-brief, only a "single allegedly defamatory statement remains at issue in Plaintiff's case: that '[Nunes] has refused to hand [the Derkach package] over to the FBI.'" Dkt No. 98 at 1. Defendant suggests that there is "no question" that "highly

relevant" documents have been destroyed. *Id.* This is patently incorrect as demonstrated in the depositions taken during this case so far.

     During Mr. Pappas's deposition, Mr. Todd Tatelman representing the House of Representatives instructed Mr. Pappas not to answer questions relating to his work on HPSCI unless he had a basis of knowledge outside of that work. *See e.g.* Pappas Tr. 87–92. Mr. Langer, likewise, was instructed not to answer. *See e.g.* Langer Tr. 119, 152–53, 171, 214–15. Mr. Tatelman outlined the general position of HPSCI and the House of Representatives during Mr. Langer's deposition. *See* Langer Tr. 152:18–153:1 ("Mr. Tatelman: I think that the committee's position is going to be that anything related to the package itself is privileged. So receipt, the handling, et cetera, is all going to be covered by the privilege and I would instruct the witness not to answer."). Far from withholding anything, these witnesses possess information but are unable to answer due to an assertion of privilege. Defendant's counsel even admits that HPSCI may still possess the relevant records but has objected to production of any records, as well as the testimony by any HPSCI personnel. Dkt. No. 98 at n. 4. As noted, there is ongoing briefing regarding those privilege objections. *See generally,* Dkt. Nos. 96, 97, 99. This issue is still pending before this Court. This is critical because the records of HPSCI have been maintained. Only records from Mr. Nunes's personal office have been destroyed, due to his departure from office and standard House protocols regarding closure of an office.

     Defendant is correct that Plaintiff identified multiple individuals as those that may have knowledge relevant to this case; Defendant is incorrect in assuming that each of these individuals must have knowledge of the handling and disposition of the Derkach package. While Plaintiff identified Ms. Morrow, Ms. Souza, Mr. Langer, Mr. Pappas, Mr. Ciarlante, and Mr. Harvey as persons likely to have knowledge relevant to this case, Plaintiff did not specifically state that each of them had knowledge about the disposition and handling of the package. *See* Dkt. No. 98 at 3. Several of these witnesses undoubtedly possess such knowledge, and may have created documents to that effect, but those witnesses are or were HPSCI staffers and subject to the issue of Speech or Debate clause privilege asserted by the House of Representatives counsel.

     Of the two HPSCI witnesses that have testified so far, Mr. Langer and Mr. Pappas, they were instructed not to answer questions about the Derkach package due to their employment and work for HPSCI, as noted above. This issue does not bear on Mr. Nunes's preservation of documents in any way, as HPSCI documents were not part of Mr. Nunes's personal office materials that are not preserved. Therefore, Defendant's arguments focusing to any extent on these records is misplaced.

     Turning to the personal office, only two of the individuals identified, Ms. Morrow and Ms. Souza, were solely personal office staffers for Mr. Nunes's congressional office. Ms. Morrow testified that she maintained Mr. Nunes's calendars, the only relevant document to this matter other than Ms. Morrow's personal knowledge. Morrow Tr. 71:20–24 ("Q: So the

only thing that you were instructed to do was preserve Mr. Nunes's calendar when you left office -- or when he left office I should say. A. Yes. That's right."). Beyond the calendars, Ms. Morrow testified that she had no knowledge of who Andrii Derkach is and was unaware of the package. Morrow Tr. 128:20–23 ("Q. Do you know who Andrii Derkach is? A. No. I never heard that name until I got the subpoena."); *id.* at 129:12–21. Ms. Souza likewise possessed no information, nor have Defendant's suggested that she did.

This picture painted by Defendant, that Mr. Nunes destroyed relevant documents, is incorrect. Mr. Nunes's personal staff did not maintain documents beyond the calendars maintained by Ms. Morrow and the texts produced by Mr. Langer because they did not possess other relevant documents or communications. The bulk of the personal office did not even have the clearance to discuss the package issues, and the staff that did were not involved in its handling or disposition. These witnesses were identified for their access to the calendars and their ability to testify to other issues in this case, such as damages and credibility.

Defendant points to two specific instances to purportedly show that documents and communications were not preserved: (1) an email produced by Representative Crawford's office about an interview with Breitbart, and (2) text messages between Mr. Nunes and Mr. Langer. *See* Dkt. No. 98 at 5.

Defendant does not suggest, nor does Mr. Langer's testimony show, that there were any other exchanges such as the email with Representative Crawford's office. In addition, Defendants are in possession of this communication, making it an inapposite ground for a spoliation instruction, particularly as it does not even suggest that there may be additional documents that were not preserved. The second instance outlined by Defendants fare little better. These text messages were produced. Defendant seeks to characterize these messages as indicating that there are further communications that were not produced, yet the texts themselves contain all of the information that would likely be contained in the referenced emails, which are not even relevant to the single remaining issue before this Court. The texts from Mr. Langer include references to three requests for comments from the media about receipt of the Derkach package. Each of these requests is described with sufficient detail in the texts and in Mr. Langer's testimony to provide Defendant with the relevant information and demonstrate that these messages do not bear on the single narrow issue before this Court. Therefore, Defendant cannot establish that any purportedly missing documents are relevant or that they could support their defense.

In addition, when Mr. Nunes left Congress, there were no outstanding discovery or subpoenas from Defendant or anyone else relating to this action. Mr. Nunes's instructions to his staff were, therefore, sufficient to retain all relevant information as Defendant has not identified any specific documents that are relevant to their defenses that were not preserved. Not even after deposition of both Mr. Langer and Mr. Nunes, who testified that there was very little written communications in general, and none that they know of with

regard to the Derkach package, can Defendant demonstrate a likelihood that there are documents that were within the possession of personal office staff that would have been destroyed. Defendant, therefore, cannot establish a culpable state of mind.

Defendant is seeking to muddy the waters because discovery has made it clear that the package was indeed handed over to the FBI, and their agent, Ms. Rachel Maddow, openly lied about it on the air defaming Mr. Nunes. Now Defendant is seeking to find any way possible to cover up Ms. Maddow's defamatory lies about Mr. Nunes. Defendant has not established that any personal office documents were relevant to their defense such that a reasonable trier of fact could find that it would support that defense nor have they established that Mr. Nunes had a culpable state of mind for the alleged failure to produce any documents or records before the House of Representatives destroyed them in its normal course of business. Moreover, Defendant has not established that Mr. Nunes had an obligation to request that HPSCI maintain documents relating to the handling of the Derkach package.

For these reasons, Mr. Nunes respectfully requests this Court deny Defendant's request for sanctions and an adverse inference, and he thanks the Court for its consideration of this issue.

Sincerely,

Jason Greaves