MATTHEW BERRY
GENERAL COUNSEL

TODD B. TATELMAN
DEPUTY GENERAL COUNSEL

BROOKS M. HANNER
ASSOCIATE GENERAL COUNSEL

**U.S. HOUSE OF REPRESENTATIVES
OFFICE OF GENERAL COUNSEL**
5140 O'NEILL HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6532
(202) 225-9700
FAX: (202) 226-1360

SALLY CLOUSE
ASSOCIATE GENERAL COUNSEL

BRADLEY CRAIGMYLE
ASSOCIATE GENERAL COUNSEL

RACHEL A. JANKOWSKI
ASSISTANT GENERAL COUNSEL

ANDY T. WANG
ASSISTANT GENERAL COUNSEL

March 29, 2024

**VIA ECF**

The Honorable Sarah Netburn
United States Magistrate Judge
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

   **Re:** *Devin G. Nunes v. NBCUniversal Media, LLC*, 1:22-cv-01633-PKC-SN

Dear Judge Netburn:

  The House Permanent Select Committee on Intelligence (HPSCI or Committee) respectfully submits this supplemental letter brief in response to the Court's questions. *See* ECF 104.

  **1.** As the Committee has previously noted (ECF 96 at 1), at all times relevant to this litigation, Mr. Langer served as a member of HPSCI's staff, holding various positions including Communications Director. *See* Deposition of Jacob Langer, Jan. 11, 2024 at 29:8-20. While it is also the case that Mr. Langer served on Representative Nunes's personal office staff, none of the information sought by the parties relates to work Mr. Langer performed outside of HPSCI. *See* ECF 99 at 4, n. 4. As far as HPSCI is aware, Mr. Langer is the only witness in this case that held such a dual role. The other Congressional witnesses NBCU has identified, Messrs. George Pappas, Nichols Ciarlante, and Derek Harvey, all worked only for HPSCI and did not have jobs with Representative Nunes's personal office. Thus, with respect to the testimony of these four witnesses and any Committee documents, the Speech or Debate Clause privilege before this Court properly belongs to and is exclusively controlled by HPSCI. Decisions about the invocation of the Committee's privilege are made by the current HPSCI Chairman.

  When analyzing and applying the Speech or Debate Clause, the Supreme Court and the lower federal courts have treated Congress itself, Congressional committees, and Members identically.[1] For example, this Court has held, under nearly identical circumstances, that the

---

[1] *See, e.g.*, *Tenney v. Brandhove*, 341 U.S. 367, 379 (1951) (holding "the individual [Member] defendants *and the legislative committee* were acting in a field where legislators traditionally have power to act" and were thus entitled to immunity) (emphasis added); *Jud. Watch, Inc. v. Schiff*, 998 F.3d 989, 991-93 (D.C. Cir. 2021) (affirming dismissal on Speech or Debate Clause grounds without distinguishing between HPSCI and then-Chairman Schiff, both of which were named defendants); *Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1085 (D.C. Cir. 2017) ("[A]s the Subcommittee points out, because it is Congress that holds Ferrer's documents, he

"subpoenas …which seek testimony from a House subcommittee staff member and documents currently held by the subcommittee—implicate the protections provided by the Speech or Debate Clause." *SEC v. Comm. on Ways and Means*, 161 F. Supp. 3d 199, 235 (S.D.N.Y. 2015).[2]  This conclusion logically follows given modern congressional practice, which, in addition to depending on aides and assistants, who act as Members' "alter egos," *see Gravel v. United States*, 408 U.S. 606, 616-17 (1972), also relies on Congressional committees.  For example, the House Rules establish various standing committees of jurisdiction, including HPSCI, a permanent select committee, and require that "[a]ll bills, resolutions, and other matters relating to subjects within the jurisdiction of the standing committees … shall be referred to" them.[3]  The House Rules also charge committees with various general and special oversight duties and empower them to use investigative methods necessary to discharge those duties.[4]  Given the way the House organizes itself and operates, challenges to Congressional activity frequently involve some type of committee action, whether it be conducting legislative fact finding as part of its oversight and investigative duties, holding business meetings, drafting and marking up legislative text, or referring bills to the floor for consideration by the full House.  *See, e.g., Eastland v. U.S. Serviceman's Fund*, 421 U.S. 491, 505 (1975) (analyzing a subcommittee's investigation).

Because Congress performs much of its core legislative work through committees, excluding them from the protections afforded by the Speech or Debate Clause would directly conflict with the Supreme Court's instruction to read the Clause "broadly to effectuate its purposes," *see id.* at 501, and would undermine legislative independence, the protection of which is a "central object" of the Clause.  *See McCarthy v. Pelosi*, 5 F.4th 34, 38 (D.C. Cir. 2021).  This is especially true here, because the activities at issue all relate to legislative acts performed by HPSCI staff members.  Specifically, the information sought relates directly to HPSCI's internal deliberations and communications regarding legislative and oversight activities, as well as certain official Committee proceedings.  These subjects are absolutely privileged under the Speech or Debate Clause, and HPSCI is entitled to assert and has properly asserted its privilege.

Furthermore, the House Rules clearly establish that committee records, such as the documents at issue here, are "the property of the House" and are to be "kept separate and distinct

---

must contend with the cloak of protection afforded by the Constitution's separation of powers, including the Speech or Debate Clause … ."); *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416 (D.C. Cir. 1995) ("The privilege also permits Congress to conduct investigations and obtain information without interference from the courts … ."); *Meadows v. Pelosi*, No. 21-cv-03217, 2022 WL 16571232, at *4 (D.D.C. Oct. 31, 2022) ("Although the text of the Clause frames the immunity as belonging to 'Senators and Representatives,' the Court of Appeals has applied the immunity to individual Members of Congress *and congressional committees* alike." (citation omitted) (emphasis added)).

[2]  *See also, e.g.*, *Ferrer*, 856 F. 3d at 1086-87 (holding in a case where only a Senate Subcommittee was a party to the litigation, that Speech or Debate Clause prevented the Court from ordering the Subcommittee to return or destroy documents).

[3]  Rule X.1, Rules of the U.S. House of Representatives, 118th Cong. (2023) (House Rules), *available at* https://perma.cc/38S6-T4JV.

[4]  *See, e.g.*, House Rules X.2 (general oversight responsibilities), X.3(m) (special oversight functions for HPSCI), XI.2(m)(1)(B) (subpoena power).

from the congressional office records of the member serving as its chair."[5]  Thus, the only proper privilege holder in this instance is HPSCI itself.  At the time of the events in question, Representative Nunes served as HPSCI's Ranking Member, meaning even at that time he had no authority to either assert or waive Speech or Debate Clause privilege as to those records.  HPSCI records are controlled by the Committee's Chairman, who, as explained above, directs the invocation of the Speech or Debate Clause privilege on HPSCI's behalf.

    **2.**  No court has held that the protections of the Speech or Debate Clause can be waived.  In 1979, the Supreme Court in *United States v. Helstoski* expressly stated that it had no reason to decide that question.  *See* 442 U.S. 477, 490 (1979) ("[W]e perceive no reason to decide whether an individual Member may waive the Speech or Debate Clause's protection against being prosecuted for a legislative act.").  The Court then assumed that waiver was possible but ruled that the necessary conditions for such a waiver had not been satisfied in the case before it.  *See id.* at 491.  In that case, Representative Helstoski had testified before a federal grand jury on ten separate occasions and was ultimately indicted for accepting bribes from immigrants in exchange for introducing private bills suspending application of the immigration laws to them, thereby allowing those paying the bribes to remain in the country.  *See id.* at 479-80.  The Department of Justice argued that Representative Helstoski's extensive grand jury testimony constituted a waiver of his Speech or Debate immunity.  *See id.* at 490.  The Court rejected the Department's argument, noting that, even if such a waiver were possible, it could "be found only after explicit and unequivocal renunciation of the protection."  *Id.* at 491.  As the Court explained, "[t]he ordinary rules for determining the appropriate standard of waiver do not apply in this setting."  *Id.*

    Given the lack of precedent, it is HPSCI's position that the absolute privilege provided for by the Speech or Debate Clause cannot be waived.  But even assuming that Speech or Debate Clause privilege could be waived, any waiver would have to be explicit, unequivocal, and, most importantly, effectuated by the privilege holder—in this case, HPSCI.  No such waiver has been made in this case.  Moreover, even assuming that Representative Nunes may be able to waive any applicable Speech or Debate Clause privilege claims regarding information arising from his personal congressional office, his mere filing of litigation is not the type of "explicit and unequivocal renunciation of the protection" necessary to waive Speech or Debate privilege.  Additionally, Representative Nunes cannot waive HPSCI's privilege,[6] which, as established above, is the only privilege at issue because all the information sought—whether in the form of documents or testimony—is based on legislative acts performed by HPSCI staff.  *See* ECF 99 at 4, n. 4 (asserting that none of the witnesses who have been deposed or have yet to be deposed possess any "knowledge about the Derkach package outside of their work for HPSCI.").

    Here, as in *Helstoski*, there has been no "explicit and unequivocal renunciation of the protection" by HPSCI.  To the contrary, HPSCI has consistently asserted its privilege where applicable.  Thus, even if a waiver were possible (which it is not), there is no basis for finding that HPSCI's Speech or Debate Clause privilege has been waived here.  Furthermore, because

---

[5] House Rule XI.2(e)(2)(A).

[6] *See, e.g.*, *Perez v. Perry*, No. SA-11-CV-360-OLG-JES, 2014 WL 106927, at *1 (W.D. Tex. 2014); *A Helping Hand, LLC v. Baltimore Cnty., Md.*, 295 F. Supp. 2d 585, 590 (D. Md. 2003).

The Honorable Judge Netburn
March 29, 2024
Page 4

Speech or Debate Clause privilege is absolute and not "designed … to assure fair trials," *Helstoski*, 442 U.S. at 491, there need not be any consideration of fundamental fairness or other balancing of interests before sustaining the invocation of privilege.[7] *See United States v. Rayburn House Off. Bldg., Room 2113, Wash., D.C. 20515*, 497 F.3d 654, 662 (D.C. Cir. 2007) ("the non-disclosure privilege for written materials ... is … absolute, and thus admits of no balancing.").

**3.** Finally, with respect to any privilege log, the Speech or Debate Clause's clear applicability to the documents requested here—particularly considering the "narrow" inquiry permitted, *Eastland*, 421 U.S. at 506—provides no basis for (and no need) for a privilege log.[8] Indeed, counsel for HPSCI is aware of only a single instance since the ratification of the Constitution that a court has directed a congressional committee to log Speech or Debate privileged documents—and, in that instance, the district court's order was ultimately reversed for lack of jurisdiction.[9]

The production of a privilege log is inconsistent with the purposes that underlie the Clause, which include preventing litigation distractions that may "disrupt the legislative function," *Eastland*, 421 U.S. at 503, protecting HPSCI from "accountability before a possibly hostile judiciary," *id.* at 502, and insulating the Committee "not only from the consequences of litigation's results but also from the burden[s] of defending themselves." *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967).[10]

In addition to these constitutional impediments, privilege logs are not practical in this context. By its very nature, a privilege log requires the revelation of information absolutely protected by the Clause—such as the date the document was created, the names of the staff or Member(s) that authored, sent, and/or received a document, and a description of the document's contents. Moreover, it is frequently impossible to discern from the face of a particular document, or a brief description thereof, whether the document is legislative in nature. To make that kind of document-by-document determination, a court necessarily would need to consider substantial

---

[7] While the Court must sustain HPSCI's invocation of privilege for the reasons set forth above, the Committee voices no view on whether its invocation of privilege should have any impact on the ultimate disposition of this lawsuit.

[8] NBCU's assertion that "HPSCI objected to that subpoena wholesale on Privilege grounds and did not produce any documents in response," ECF 99 at 3, is false. On October 13, 2023, in addition to raising objections pursuant to Federal Rule of Civil Procedure 45(d)(2)(B), HPSCI produced 81 pages of non-privileged documents in response to NBCU's subpoena. In addition, HPSCI also provided links to other publicly available documents responsive to the subpoena.

[9] *See Benford v. Am. Broad. Cos., Inc.*, 98 F.R.D. 42 (D. Md. 1983), *rev'd for lack of jurisdiction In re Guthrie*, 733 F.2d 634, 636-37 (4th Cir. 1984).

[10] *See also Helstoski*, 442 U.S. at 491 (providing that purpose of the Clause is to preserve constitutional structure of separate, independent branches of government and noting "that any lesser standard would risk intrusion by the Executive and the Judiciary into the sphere of protected legislative activities."); *Comm. on Ways and Means*, 161 F. Supp. 3d at 235 ("Because a civil subpoena, has the potential to create [ ] a distraction and force[ ] Members to divert their time, energy, and attention from their legislative tasks to defend the litigation.") (internal quotation marks omitted) (citing *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 859 (D.C. Cir. 1988)).

in-and-of-itself privileged information, the disclosure of which would swallow the privilege and would be disruptive to the very independence of Congress that the Clause is intended to protect.

Given the absolute nature of the Speech or Debate Clause privilege, courts have confined themselves to determining, at most, whether specific categories of documents reflect "legislative activities," as defined by the Supreme Court, based on the subpoena language or the representations of Legislative Branch officials.[11]  Here, the documents requested relate to the same subjects and legislative acts as the testimony sought; specifically, HPSCI's actions with respect to the so-called "Derkach Package," as well as documents related to the July 2020 HPSCI business meeting.  Accordingly, the documents withheld on Speech or Debate grounds all relate to legislative acts to which the Speech or Debate privilege absolutely applies.  *See* ECF 96 at 3-5 (explaining application of the Clause to the subjects at issue).

For all the reasons explained above and in its prior letter briefs, HPSCI's Speech or Debate Clause objections should be sustained.  Former HPSCI staff members should not be required to answer deposition questions related to the Committee's legislative or oversight activities and HPSCI should not be required to produce a privilege log for documents properly withheld on Speech or Debate Clause grounds.

Respectfully submitted,

Matthew B. Berry (VA Bar No. 42600)
   *General Counsel*
*/s/ Todd B. Tatelman*
Todd B. Tatelman (VA Bar No. 66008)
   *Deputy General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, DC 20515
Telephone: (202) 225-9700
Todd.Tatelman@mail.house.gov

*Counsel for the Permanent Select Committee on Intelligence of the U.S. House of Representatives*

---

[11] *See, e.g.*, MINPECO, 844 F.2d at 859-63 (no log required); *cf. In re Hubbard*, 803 F.3d 1298, 1307-11 (11th Cir. 2015) (holding—in applying common law legislative privilege for state lawmakers—that lawmakers need not "specifically designate[] and describe[]" documents, nor provide "affidavit").