

21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Elizabeth A. McNamara**
212.489.8230 tel
212.489.340 fax

lizmcnamara@dwt.com

April 5, 2024

**VIA ECF**

Hon. Sarah Netburn
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    ***Devin G. Nunes v. NBCUniversal Media, LLC*, l:22-cv-01633-PKC-SN**
                **Defendant's Letter Brief Regarding the Speech or Debate Clause Privilege**

Dear Magistrate Judge Netburn:

      Defendant NBCUniversal Media, LLC ("NBCU") respectfully submits this letter brief in response to the House Permanent Select Committee on Intelligence's ("HPSCI") supplemental letter brief further addressing its assertion of the Speech or Debate Clause Privilege (the "Privilege") to deposition testimony and in withholding relevant documents[1] in this case (the "HPSCI Supp. Letter") (Dkt 106) and Plaintiff's supplemental letter brief regarding the same (Dkt. 105) ("Plaintiff's Supp. Letter").

      NBCU maintains that HPSCI's sweeping assertions of the Privilege are overbroad and, if sustained, will effectively preclude it from mounting its defense in this action, for the reasons set forth in its prior submission to the Court. *See* Dkt. 99. Notwithstanding its arguments as to the scope of the Privilege, NBCU does not dispute certain basic legal principles concerning the Privilege as outlined by HPSCI. *First*, the Privilege is essentially absolute and cannot be waived absent an "explicit and unequivocal renunciation of the protection." *United States v. Helstoski*, 442 U.S. 477, 491 (1979). *Second*, as it pertains to HPSCI-related business, the Privilege belongs to HPSCI, not the individual congresspersons or their staff members. *See* HPSCI Supp. Letter at 1. *Third*, Plaintiff cannot waive the Privilege on behalf of HPSCI. *See id.* at 3.

      With these basic principles in mind, if this Court adopts the arguments advanced by HPSCI—particularly those in HPSCI's Supplemental Letter concerning the scope of the Privilege—NBCU's ability to mount a full and effective defense is eviscerated. Specifically, it

---

[1] In its earlier submission, NBCU mistakenly stated that HPSCI failed to produce *any* documents in response to the subpoena that NBCU served on it. *See* Dkt. 99 at 3. However, HPSCI correctly points out that it did produce a limited number of email communications where publicly available news articles and press releases were shared amongst members of HPSCI without commentary. HPSCI Supp. Letter at 4 n.8. None of these documents shed any light on Plaintiff's receipt or handling of the Derkach Package or the July 29, 2020 Business Meeting (the "Business Meeting").

DWT.COM

Hon. Sarah Netburn
April 5, 2024
Page 2

would mean that Plaintiff filed this libel lawsuit on the basis of privileged information that (if true) was not his to disclose, and HPSCI's assertion of the Privilege would effectively preclude NBCU from seeking *any* documents or testimony from the individuals Plaintiff has identified as having relevant information about this matter.[2] This would make Plaintiff's selective disclosure of *HPSCI's* privileged information, as set forth in the Second Amended Complaint ("SAC") and during discovery, unchallengeable, and his selective hearsay testimony from his deposition unverifiable.[3] As such, should HPSCI's broad and definitive assertions of the Privilege be upheld, principles of fundamental fairness and due process mandate dismissal of this action.

### A. Relevant Factual Background

There remains a single statement at issue in this case, which was made during the March 18, 2021 telecast of *The Rachel Maddow Show* ("TRMS"): "[Devin Nunes] has refused to hand [the Derkach package] over to the FBI" (the "Statement"). SAC ¶ 2 (Dkt. 40). In an effort to plead that the Statement was false and defamatory, Plaintiff made a number of factual allegations about the Derkach Package in his pleadings:

- On December 11, 2019, the Derkach Package was delivered to HPSCI but Plaintiff did not sign for the package or handle it. *Id*. ¶ 13

- Plaintiff sent a letter to then-Attorney General William Barr on the same date advising that Plaintiff had received a "package from foreign individuals" as part of "a foreign disinformation campaign" and requesting a meeting to discuss these concerns. *Id.*

- Plaintiff immediately turned the package over to the FBI. *Id.* Specifically, a "designated staff member in Plaintiff's office, following protocol and without the package ever being opened, sealed the package in an envelope and delivered it to the FBI." *Id.*

- "In early January 2020, Plaintiff and top Republican staff on the House Intelligence Committee briefed the FBI on their concerns about the package." *Id.*

- NBCU had reason to know that Plaintiff turned over the Package to the FBI because Representative Rick Crawford, who served with Plaintiff on HPSCI, had been "quoted in the press" affirming that this was the case. *Id.* at ¶ 16.

---

[2] This is only further underscored by HPSCI's refusal to provide a privilege log given the absolute nature of the Privilege. *See* HPSCI Supp. Letter at 4–5.

[3] For example, Plaintiff pleads and repeatedly testified that he turned the package over to the FBI (Nunes Tr. 21:2-16), but that he never even saw the package. *Id.* 31:11-16. Thus, Mr. Nunes admits that he was not responsible for turning over the package and has no firsthand knowledge of whether the package was, in fact, delivered to the FBI. The Privilege objection is preventing both Plaintiff and Defendants from obtaining admissible evidence or testimony from individuals who purportedly would have such knowledge. Moreover, the FBI produced a single, heavily redacted document in response to NBCU's *Touhy* requests, which contradicts Plaintiff's allegations in numerous respects (including when and how any package was received or turned over to the FBI). NBCU, however, has no ability to test those conflicts or get to the truth.

Through these pleadings and during the course of discovery, Plaintiff has selectively provided limited and self-serving information regarding the handling and disposition of the Derkach Package. For example, he has revealed, through his answers to interrogatories, that Nicholas Ciarlante was the "designated staff member" who was ultimately responsible for delivering the package to the FBI. Dkt. 65-8 at 3. Moreover, during Plaintiff's deposition, he provided testimony that the Derkach Package was turned over to the FBI (Nunes Tr. 50:2–52:25) and testimony on the substance of the FBI meeting concerning the Derkach Package, over HPSCI's objections. (*Id.* 78:23–79:22). Yet, at the same time, HPSCI has uniformly asserted the Privilege over documents and testimony concerning the receipt and handling of the Derkach Package. *See* Dkt. 99 at 3.

By contrast, Plaintiff assented to HPSCI's Privilege assertions when NBCU asked him whether any other HPSCI staff members were aware of the December 11, 2019 letter that he authored to Attorney General Barr. Nunes Tr. 25:23–27:3. He would not answer this question, despite putting the letter directly at issue in the SAC. *See* SAC ¶ 13. Similarly, NBCU has been uniformly stymied in determining who else was aware of the Package's receipt[4] —which directly bears on the issue of actual malice—or whether and how it was turned over to the FBI. *See e.g.,* Langer Tr. 153:12–154:4; 154:17–155:14; 158:18–160:21. Given HPSCI's broad Privilege assertions and Plaintiff's selective compliance with those objections, it has been nearly impossible for NBCU to test the allegations set forth in the SAC in any meaningful way, despite extensive efforts to obtain this discovery. Dkt. 99 at 3–4.

If HPSCI's formulation of the Privilege is in fact correct, Plaintiff predicated this action on privileged information that was ultimately not his to disclose. Indeed, Plaintiff admits that he did not waive his own Speech or Debate Privilege when he filed this action. Plaintiff's Supp. Letter at 1 ("To the extent that this was previously unclear, Mr. Nunes seeks to make it absolutely clear that he has not asserted any personal Speech or Debate clause immunity, nor has he suggested any selective waiver of his privilege."). Thus, the only conclusion to be drawn from this admission is that the filing of this lawsuit was a self-serving and selective *violation* of HPSCI's privilege.

---

[4] Plaintiff's sole evidence to support his argument that NBCU should have known that the Statement was false is an ambiguous quote from Rep. Crawford that appeared in a Breitbart Article. While Plaintiff identified Crawford as an individual with whom he discussed the Derkach package in response to interrogatories, Dkt. 65-8 at 4, thereby putting such communications squarely at issue in this case, NBCU has been hamstrung in its ability to obtain information about any such communications—or any other relevant discussions amongst members of HPSCI. Nor has NBCU been able to discover Crawford's basis for the quotation in the Breitbart Article in light of HPSCI's Privilege objections (*see, e.g.*, Langer Deposition Tr. 160:4-21, Dkt. 96 at 3–4) and its refusal to produce Crawford for a deposition. Relatedly, NBCU has not been able to meaningfully obtain discovery about the Business Meeting—where Plaintiff refused to answer questions from Representative Sean Maloney about whether he had received the Derkach Package, suggesting that he had not shared that information with other members of HPSCI (including the Chair of the Committee). Due to HPSCI's Privilege objections on questioning related to the Business Meeting, NBCU has been precluded from discovery that is directly relevant to the issue of actual malice.

### B. This Case Cannot Be Fairly Litigated Should HPSCI'S Assertion of the Privilege Stand

In the event the Court sustains HPSCI's Privilege objections, fundamental fairness dictates that this case be dismissed. As a general maxim, "public policy prevents the maintenance of such a lawsuit which, were it tried, would 'inevitably lead to the disclosure' of confidential matters." *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 423 (2d Cir. 1989) (citing *Totten v. United* States, 92 U.S. 105, 107 (1875)). HPSCI's Privilege objections prevent NBCU from obtaining critical discovery that goes to the very core of the dispute at issue in this case: the facts and circumstances surrounding HPSCI's receipt, handling, and disposition of the Derkach Package, and ultimately, whether Plaintiff turned over the Derkach Package to the FBI.[5]

In assessing parallel situations, courts have consistently dismissed cases where a privilege makes it impossible for a defendant to establish its defense. For example, in *Trulock v. Lee*, the plaintiff, the head of the Office of Energy Intelligence at the Department of Energy ("DOE"), brought a defamation action arising out of the defendant DOE scientist's statements implying that the plaintiff was motivated by racial animus in investigating him for mishandling sensitive documents. 2003 WL 21267827, at *1 (4th Cir. 2003). After the court ordered the government to produce certain confidential documents, the government intervened as a defendant, asserting the state secrets privilege and arguing that the plaintiff's defamation action could not proceed because it would require the disclosure of confidential information. *Id.* at *2. The district court agreed and dismissed the case. The Fourth Circuit affirmed the dismissal because information "critical to the resolution" of the issues of truth and actual malice had been shielded from disclosure by operation of the privilege. *Id.* at *3.

Other cases from around the country and in this district are in accord with the *Trulock* case. *See*, *e.g.*, *Eckhaus v. Alfa-Laval, Inc.*, 764 F. Supp. 34, 38 (S.D.N.Y. 1991) (dismissing defamation action brought by attorney against client, where its prosecution would require plaintiff disclose confidential communications with client in violation of rules of professional responsibility); *Founding Church of Scientology v. Webster*, 802 F.2d 1448, 1457–59 (D.C. Cir. 1986) (dismissing corporate plaintiff's lawsuit as discovery sanction where plaintiff's founder refused to appear at noticed depositions); *Edmonds v. United States Dep't of Justice*, 323 F. Supp. 2d 65, 79 (D.D.C. 2004) (dismissing plaintiff's due process claim arising out of allegedly defamatory statements made by employer where employer's assertion of state secrets privilege precluded it from rebutting plaintiff's assertions); *Patterson ex rel. Patterson v. Federal Bureau of Investigation*, 893 F.2d 595, 604 (3d Cir. 1990) (dismissing action where plaintiff could not receive any meaningful discovery in light of the FBI's assertion of the state secrets privilege); *In re SCT Secs. Litig.*, 1988 WL 13263, at *1 (E.D. Pa. Feb. 18, 1988) (holding that a third-party plaintiff "has no absolute

---

[5] In addressing the Court's question, "If the lawsuit does not constitute a waiver, what issues of fundamental fairness and due process should the Court consider," HPSCI addressed only whether *its invocation of the privilege* implicated issues of fundamental fairness and due process. This ignores the question raised by the Court. The Court asked the parties whether permitting this lawsuit to proceed in the face of HPSCI's far reaching assertion of the Privilege would raise insurmountable issues of fundamental fairness and due process.

right to both his silence and his lawsuit" and dismissing third-party complaint for plaintiff's refusal to disclose information relevant to his claims) (quotation and citation omitted).

In assessing whether critical discovery cannot be obtained, particularly in the context of absolute privileges, courts will consider several circumstances where dismissal is appropriate. "First, if the [withheld information is] critical to the resolution of core factual questions in the case, it should be dismissed. Second, a case should be dismissed if the plaintiff's ability to prove his case necessarily depends on or threatens the disclosure of privileged information. Third, summary judgment should be granted to the defendant if the invocation of the privilege deprives him of a valid defense." *Trulock*, 2003 WL 21267827, at *3. Each of these circumstances warranting dismissal is present here.

*First*, *a*s in *Trulock*, the "basic questions about truth, falsity, and [actual] malice cannot be answered without the privileged information" at issue here. 2003 WL 21267827, at *3. Accordingly, the discovery sought—the handling and disposition of the Derkach Package, internal deliberations about the Derkach Package, and the Business Meeting—is directly relevant to key issues central to this case. For this reason alone, the case should be dismissed.

*Second*, Plaintiff's filing of this lawsuit has selectively (and prejudicially) put privileged information at issue, but NBCU is unable to test these disclosures due to objections of HPSCI (*see supra*). Even Plaintiff expressly avers "there are pieces of information that [he] would like to obtain from certain witnesses and sources that would assist in proving this case, that he has not been able to obtain, or would not be able to obtain due to the [P]rivilege." Plaintiff's Supp. Letter at 3. Without any corroborating evidence, Plaintiff's case rests on self-serving hearsay and it strains credulity as to see how Plaintiff could possibly meet his burden of proving falsity by clear and convincing evidence without this *further* disclosure of privileged information.

*Third*, because the Privilege deprives NBCU of evidence critical to its defenses—including substantial truth and actual malice—dismissal is warranted. *See also Zuckerbraun v. Gen. Dynamics Corp.*, 935 F.2d 544, 547 (2d Cir. 1991) ("Where the court determines that the privilege will prevent the defendant from establishing a valid defense, a Rule 56 dismissal may be appropriate on the ground that plaintiff's evidence is legally insufficient on the whole case."); *Restis v. Am. Coalition Against Nuclear Iran, Inc.*, 2015 WL 1344479, at *5 (S.D.N.Y. Mar. 23, 2015) (noting in defamation case that "dismissal is proper if the court determines that the [State Secrets Privilege] so hampers the defendant in establishing a valid defense that the trier is likely to reach an erroneous conclusion."). Specifically, the Privilege has prevented NBCU from obtaining information about the Business Meeting and HPSCI members' knowledge of the Derkach Package, which is directly relevant to the issue of actual malice, as well as the handling and disposition of the Derkach Package, which bears on the issue of substantial truth.

For all these independent reasons, fundamental fairness dictates that this case cannot continue should the Court issue a decision sustaining HPSCI's Privilege claims. NBCU seeks either an immediate dismissal or a conference to discuss motion practice on this issue.

We thank the Court for its consideration of this matter.

Hon. Sarah Netburn
April 5, 2024
Page 6

                                        Respectfully submitted,

                                        */s/ Elizabeth A. McNamara*

                                        Elizabeth A. McNamara

cc:      Counsel of record (via ECF)