

21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Elizabeth A. McNamara**
212-489-8230 tel
212-489-8340 fax

lizmcnamara@dwt.com

October 7, 2024

**VIA ECF**
Honorable P. Kevin Castel
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 11D
New York, New York 10007

      Re:     <u>Nunes v. NBCUniversal Media, LLC</u>, Case No. 22-cv-1633 (PKC)

Dear Judge Castel:

     We are counsel to Defendant NBCUniversal Media, LLC ("NBCU") in this action. Pursuant to Rule 3(A) of Your Honor's Individual Rules of Civil Practice and the operative Scheduling Order (Dkt. 123), we write to request a pre-motion conference and set forth the grounds for NBCU's intended motion for summary judgment on the defamation claim brought by Plaintiff Devin Nunes ("Plaintiff"). NBCU has conferred with counsel for Plaintiff and the Parties jointly propose that NBCU's motion for summary judgment should be due on November 21, 2024, Plaintiff's opposition on January 13, 2025, and NBCU's reply on February 12, 2025. The Court has set a Case Management Conference for October 8, 2024 at 12:00 p.m.

## Factual Background

     Plaintiff Devin Nunes is a former U.S. Congressman and Ranking Member of the House Permanent Select Committee on Intelligence, who resigned from Congress effective January 2022. This lawsuit arises out of a March 2021 segment of *The Rachel Maddow Show* on MSNBC (the "Segment") about a federal intelligence investigation into Russian efforts to interfere in the 2020 U.S. elections. In the Segment, Rachel Maddow discusses a declassified report authored by the Office of the Director of National Intelligence ("ODNI") which states, among other things, that Andriy Derkach, a Ukrainian member of Parliament and known Russian agent, and his associates "sought to use prominent US persons to launder their narratives to US officials and audiences. These Russian proxies met with and provided materials to Trump administration-linked US persons to advocate for formal investigations . . . and attempted to make contact with several senior US officials." Second Amended Complaint ("SAC") ¶ 3. The Segment reports that Plaintiff received a package from Mr. Derkach and did not share the package with the intelligence community or the FBI.

     On November 28, 2022, this Court granted NBCU's motion to dismiss the SAC with the exception of one statement, that Plaintiff "refused to hand [the Package from Derkach] over to the FBI, which is what you should do if you get something from somebody who is sanctioned by the U.S. as a Russian agent" (the "Statement"). (Dkt. 57 at 21, 22). Now that the factual record has

DWT.COM

Anchorage | Bellevue | Los Angeles | New York
Portland | San Francisco | Seattle | Washington, D.C.

Hon. P. Kevin Castel
October 7, 2024
Page 2

been developed, however, the evidence establishes that Plaintiff cannot meet his burden of demonstrating by clear and convincing evidence that NBCU published the challenged Statement with actual malice, that is, knowing it was false or with serious doubts as to its accuracy.

Fact discovery is complete in this case and the Parties will not be engaging in expert discovery.

### Legal and Factual Grounds for NBCU's Motion for Summary Judgment

To prevail on a libel claim under New York law, Plaintiff must show that NBCU published (1) a false and (2) defamatory statement of fact (3) about the plaintiff (4) without privilege or authorization to a third party, (5) with the requisite degree of fault that (6) caused damage. *See Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001). With the benefit of more than a year's worth of discovery, the undisputed record is clear that the Plaintiff cannot meet his burden to establish a viable defamation claim against NBCU. Specifically, as set forth below, Plaintiff cannot establish any genuine dispute as to whether NBCU published the Statement with actual malice—which it did not.

*First*, Plaintiff—who was a sitting member of Congress when he filed this lawsuit and is indisputably a public figure—cannot demonstrate that NBCU acted with actual malice in publishing the disputed Statement. To carry the "heavy burden" of establishing by clear and convincing evidence that NBCU acted with actual malice, *Contemporary Mission, Inc. v. New York Times Co.*, 842 F.2d 612, 621 (2nd Cir. 1988); *Dunlop–McCullen v. Rogers*, 2002 WL 1205029, at *7 (S.D.N.Y. Feb. 21, 2002), Plaintiff must establish that the Statement was made with "knowledge that the statements were false or with reckless disregard as to their falsity," *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (citation omitted). *See also St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (observing that a finding of actual malice requires "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–56 (1986) (standard must be applied on a summary judgment motion).

Plaintiff cannot meet his burden, as there exists no evidence that anyone responsible for the publication of the Statement on *The Rachel Maddow Show* knew the Statement was false or had any doubts about the Statement's truth. Specifically, discovery has established that Rachel Maddow relied on a litany of sources for this reporting. These sources included, but were not limited to, (i) a July 23, 2020 Politico Article titled "Democrats: Packets sent to Trump allies are part of foreign plot to damage Biden," which explicitly reported that Plaintiff failed to turn the Derkach Package over to the FBI and which Nunes had never challenged or refuted, (ii) a July 13, 2020 letter from Democratic Congressional leadership alerting the FBI that Congress appeared to be a target of a foreign disinformation campaign (a notice that made no sense if it was understood that the FBI was, in fact, aware of this development), and (iii) a July 29, 2020 transcript from a business meeting of the U.S. House of Representatives Permanent Select Committee on Intelligence, where Plaintiff refused to acknowledge that he had even received the Derkach Package. Further, years of public reporting and official documents pertaining to Plaintiff, Russian interference in the 2016 and 2020 elections, and various other issues bolstered Defendant's confidence in the truth of the Statement. Despite all this, from the outset, Plaintiff has argued that

Hon. P. Kevin Castel
October 7, 2024
Page 3

Rachel Maddow knew (or should have known) that Plaintiff in fact turned the Derkach Package over to the FBI because Representative Crawford obliquely suggested that conclusion in a *Breitbart* article. However, discovery has revealed that no one responsible for the publication of the Statement was aware of the Breitbart article referenced in the SAC (SAC ¶ 16). Indeed, even if it had been known, Rep. Crawford has confirmed in discovery that his statement was nothing more than pure speculation and was not even made at Plaintiff's behest. In short, there is no evidence to support actual malice, let alone the clear and convincing evidence required.

*Second*, consistent with Magistrate Judge Netburn's May 8, 2024 Order (Dkt. 113), NBCU will renew its previous request for an adverse inference instruction and sanctions against Plaintiff in its summary judgment motion. NBCU has been prejudiced in its ability to establish its defenses as to truth or falsity on account of Plaintiff's abject failure to preserve and produce records relevant to this litigation, an issue that NBCU repeatedly raised over the course of fact discovery. *See* Dkt. 65 at 4, Dkt. 87 at 2, Dkt. 98. Notwithstanding that Plaintiff contemplated litigation against NBCU as early as April 5, 2021 (when he sent a claim letter) and filed this lawsuit on August 3, 2021, and despite being a seasoned litigant, Plaintiff failed to preserve any of his records before leaving Congress on January 1, 2022, leaving these records behind to be destroyed. On February 13, 2024, NBCU filed a letter to Magistrate Judge Netburn which detailed how discovery had revealed Plaintiff's wholesale failure to preserve relevant documents, pointing to specific testimony establishing that Plaintiff failed to issue written instructions to preserve documents in connection with this litigation and gaps in Plaintiff's production of documents. Dkt. 98. On that basis, NBCU requested an adverse inference instruction and sanctions against Plaintiff. *Id.* at 5–6. On May 8, 2024, Magistrate Judge Netburn issued an order denying NBCU's request "without prejudice until a full record is established." Dkt. 113 at 6. Judge Netburn held that "[t]o promote judicial efficiency, any renewed motion, if warranted, shall be made as part of any motion for summary judgment." *Id.*

Additional discovery has only bolstered NBCU's position that Plaintiff failed to take steps to ensure that relevant documents and communications were preserved in connection with this litigation, which has impacted Defendant's ability to defend against this case—specifically as to whether Plaintiff, in fact, turned over the Derkach Package to the FBI. Indeed, discovery has established that Plaintiff took no effort to preserve contemporaneous evidence from Congress pertaining to the disposition and handling of the Derkach Package. NBCU's requests for an adverse inference and sanctions is, therefore, warranted—in light of the fact that Plaintiff is a serial litigant who is familiar with his discovery obligations.[1] *See FTC v. Noland*, 2021 WL 3857413, at *10 (D. Ariz. Aug. 30, 2021) (granting adverse inference and sanctions where party failed "to take reasonable steps to preserve the Signal and ProtonMail messages . . . irrespective of whether the messages were lost because of intentional deletion, through the intentional use of an auto-delete function, or some combination thereof"); *Sjs Distrib. Sys. v. Sam's East, Inc.*, 2013 WL 5596010, at *4 (E.D.N.Y. Oct. 11, 2013) (plaintiff's failure to preserve was "particularly inexcusable"

---

[1] This is further underscored by the fact that Plaintiff faced a similar motion for sanctions for spoliation in *Nunes v. WP Company LLC d/b/a The Washington Post, et al.*, 21-cv-506-CJN for his failure to preserve relevant documents before leaving Congress. *Id.* at Dkt. 78. The court, however, did not rule on the this motion because it granted the Washington Post's Summary Judgment motion and dismissed the case. 2024 WL 3504066, at *9 (D.D.C. June 14, 2024).

Hon. P. Kevin Castel
October 7, 2024
Page 4

because plaintiff "had full knowledge of the possibility of future litigation") (quoting *Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 507 (S.D.N.Y. 2013)).

\* \* \*

     For these reasons, NBCU respectfully requests a pre-motion conference related to its intended summary judgment motion

                                    Respectfully Submitted,

                                    Davis Wright Tremaine LLP

                                    */s/ Elizabeth A. McNamara*

                                    Elizabeth A. McNamara

CC:    Counsel of Record (via ECF)