

Jason Greaves
PARTNER

P: 703-888-1943 • F: 703-888-1930          D: 571-467-0003
717 King Street, Suite 200 • Alexandria, VA 22314          E: jason@binnall.com

October 23, 2024

<u>VIA ECF</u>
Hon. Sarah Netburn
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

RE: *Devin G. Nunes v. NBCUniversal Media, LLC*, 1:22-cv-01633-PKC-SN
Pre-Motion Discovery Conference

Dear Magistrate Judge Netburn,

Mr. Nunes respectfully submits this brief letter in response to discrete points made in the letter filed by Defendant NBCUniversal. Dkt. 130. Mr. Nunes believes that this short response will aid the Court in its review of the issues at hand.

*First,* in its opposition letter, Defendant casts aspersions on Mr. Nunes and his counsel in a manner of pure projection. Defendant claims that Mr. Nunes delayed raising these issues to the Court, despite Defendant's demand to hold an additional (and unnecessary) meet-and-confer, claiming the need to review the transcript. At that meeting, Nunes' counsel invited Defendant to explain how the transcript changed anything from the positions already staked out and clearly articulated at the deposition. Defense counsel made the same arguments it had before, and the parties remained at an impasse. It is simply incorrect to imply, as Defendant does, that Mr. Nunes is the one engaging in gamesmanship.

*Second,* Defendant mischaracterizes Ms. Maddow's testimony. Contrary to Defendant's claim, Ms. Maddow testified that she does in fact use her personal devices to communicate with colleagues regarding work. Dkt. 129-4 at 32:8–33:12. While it is true that she claimed almost all of her "substantive" or "editorial" communications would have been on NBC devices, not only is that answer qualified and reliant upon Ms. Maddow's understanding of what constitutes a "substantive" or "editorial" communication, but Plaintiff is not required to take Ms. Maddow at her word. Plaintiff was entitled to a proper search of Ms. Maddow's personal device, as contemplated by the proposed Rule 45 subpoena, to which Defendant vociferously objected and protested on the grounds that her device had been searched. Therefore, Ms. Maddow's sworn testimony to the contrary—and that she does not even look at her personal devices when she receives a litigation hold letter—is troubling to Mr. Nunes, who has been accused of bad faith in this litigation for purportedly

not doing enough to preserve and search for documents. Moreover, Ms. Maddow admitted that she may have communications about Mr. Nunes with other people on her personal device. *Id.* at 33:17–24. Any communications mentioning Mr. Nunes are potential evidence of actual malice, and this testimony directly contradicts her counsel's new claim that they watched her perform a search for documents mentioning Mr. Nunes via Zoom.

It is incredible for Defendant to now claim that Ms. Maddow "misspoke" and in the same breath suggest that re-deposing her is not a reasonable remedy given this admission that she apparently did not testify accurately. Ms. Maddow unequivocally denied that anyone looked at her personal devices relating to this litigation. *Id.* at 34:4–6. This is entirely different than the proposed understanding offered by counsel to the Court, without any factual support or verification by Ms. Maddow. Moreover, the proffer by counsel is only that Ms. Maddow searched her email and text messages, but it does not state that she searched any other form of messaging, including Signal or Whatsapp, which she admitted that she also uses. *Id.* at 35:6–8. This would still be an incomplete and improper search, and there is no indication that efforts were made to preserve anything on her personal device. At a minimum, Defendant's claim that Ms. Maddow "misspoke" renders a re-deposition necessary to ensure the record is clear and accurate for summary judgment, including ensuring that Ms. Maddow did not misspeak about anything else. This is particularly necessary as this alleged misstatement and search over Zoom was *never previously mentioned* by Defendant's counsel, at the numerous meetings and discussions about Ms. Maddow's devices and her testimony. It is an ad hoc addition to their argument that was not brought up in the meet-and-confer.

*Third*, regarding the questions about Ms. Maddow's knowledge of facts bearing on the purported truth of her reporting—Doc. 129-4 at 129:16–132:25—Defendant does not address the problem that the question does not implicate privileged information. As briefed, information is not privileged, only communications. *See In re Six Grand Jury Witnesses*, 979 F.2d 939, 944 (2d Cir. 1992) ("[T]he cloak of the privilege simply protects the communication from discovery, the underlying information contained in the communication is not shielded from discovery."). Defendant repeatedly and improperly instructed Ms. Maddow not to answer any question that may have called for *facts* learned from counsel— *e.g.,* Dkt. 130-1 *at* 131:19–132:1—and Mr. Nunes is entitled to a full response to these questions, unimpeded and uninfluenced by these instructions and speaking objections.

*Fourth,* Defendant—in another ad hoc argument—accuses Plaintiff of harassing Ms. Maddow at the deposition. The word harassment does not appear in the transcript, and with good reason. This deposition was a model of civility. *See generally id.* Indeed, at the conclusion, Mr. Nunes's counsel and Ms. Maddow exchanged pens in a friendly gesture. Even if the questions were harassing (which they were not), this is not a proper reason to instruct a witness not to answer. *See Ferring Pharms. Inc. v. Serenity Pharms., LLC*, 331

*Nunes v. NBCUniversal, LLC*
*10/23/2024*
*Page 3 of 3*

F.R.D. 75, 78 (S.D.N.Y. 2019) (finding there are only three reasons a witness may generally be instructed not to answer: "[1] when necessary to preserve a privilege, [2] to enforce a limitation ordered by the court, or [3] to present a motion under Rule 30(d)(3)." (citing Fed. R. Civ. P. 30(c)(2)).

Regardless, Defendant is incorrect that Ms. Maddow's personal views are not relevant to the question of actual malice, which they again did not even attempt to brief, simply claiming that her personal views are not relevant. Simply put, Defendant is seeking to obfuscate and retroactively justify their inexcusable conduct during a critical deposition that they caused to be pushed off until the absolute end of discovery. Now they are seeking to complain about potential delay their own delay and conduct may cause. The Court should order a conference to resolve these important issues.

Sincerely,

Jason Greaves

cc: Counsel of Record (by ECF)