UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

·······························································  x

DEVIN G. NUNES,                                :

     Plaintiff,          :  Case No.: 22-cv-1633-PKC-SN

         :

    - against -               :  Hon. P. Kevin Castel

         :  United States District Judge

         :

NBCUNIVERSAL MEDIA, LLC,              :  **ORAL ARGUMENT REQUESTED**

         :

     Defendant.          :

·······························································  x

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT NBCUNIVERSAL MEDIA, LLC'S <u>MOTION FOR SUMMARY JUDGMENT AND SANCTIONS</u>

Elizabeth A. McNamara
Jeremy A. Chase
Alexandra M. Settelmayer
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
Phone: (212) 489-8230
Fax:  (212) 489-8340
Email: lizmcnamara@dwt.com
    jeremychase@dwt.com
    alexandrasettelmayer@dwt.com

*Attorneys for Defendant*
*NBCUniversal Media, LLC*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .............................................................................................................................. 3

    I.    Plaintiff's Opposition Establishes That He Cannot Meet His Burden Of Proving That NBCU Acted With Actual Malice By Clear And Convincing Evidence ............................................................................................................ 3

        A.    The July 23, 2020 Politico Article Directly Informed NBCU's Reporting Of The Statement ...................................................................... 5

        B.    Contextual Source Material Informed The Statement And Gave NBCU Confidence In Its Reporting ........................................................... 8

        C.    NBCU Did Not Purposefully Avoid The Truth ...................................... 10

        D.    Plaintiff's Purported Circumstantial Evidence Of Actual Malice Falls Far Short Of The Clear and Convincing Evidence Standard ................... 13

    II.    NBCU Is Entitled to Sanctions ........................................................................... 16

CONCLUSION .......................................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Conde Nast Publ'ns, Inc.*,
    643 F. Supp. 1558 (S.D.N.Y. 1986) ..........................................................................................3

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ....................................................................................................................1

*Arapaio v. Zucker*,
    414 F. Supp. 3d 84 (D.D.C. 2019) ..........................................................................................14

*Berisha v. Lawson*,
    973 F.3d 1304 (11th Cir. 2020) ...............................................................................................16

*Berry-Mayes v. N.Y. Health and Hospitals Corp.*,
    2016 WL 8461191 (S.D.N.Y. Sept. 19, 2016) ........................................................................14

*Biro v. Conde Nast*,
    963 F. Supp. 2d 255 (S.D.N.Y. 2013) ..................................................................................4, 10

*Chaiken v. VV Publ'g Corp.*,
    119 F.3d 1018 (2d Cir. 1997) ...............................................................................................3, 5

*Contemp. Mission, Inc., v. N.Y. Times Co.*,
    842 F.2d 612 (2d. Cir. 1988) .....................................................................................................4

*Crawford–El v. Britton*,
    523 U.S. 574 (1998) ....................................................................................................................5

*Curtis Pub. Co. v. Butts*,
    388 U.S. 130 (1976) ......................................................................................................10, 11, 13

*DiBella v. Hopkins*,
    403 F.3d 102 (2d Cir. 2005) .....................................................................................................10

*Dongguk Univ. v. Yale Univ.*,
    734 F.3d 113 (2d Cir. 2013) .....................................................................................................12

*Edwards v. Nat'l Audubon Soc'y, Inc.*,
    556 F.2d 113 (2d Cir. 1977) .....................................................................................................12

*Genova v. Cnty. of Nassau*,
    2020 WL 813160 (E.D.N.Y. Feb. 19, 2020), *aff'd*, 851 F. App'x 241 (2d Cir. 2021) ............14

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974).................................................................................8, 10

*Goldwater v. Ginzburg*,
    414 F.2d 324 (2d Cir. 1969).............................................................................10

*Harte-Hanks v. Connaughton*,
    491 U.S. 657 (1989).............................................................................10, 11, 14

*Hartley v. Rubio*,
    785 F. Supp. 2d 165 (S.D.N.Y. 2011)..............................................................6

*Hice v. Lemon*,
    2021 WL 6053812 (E.D.N.Y. Nov. 17, 2021)...................................................19

*Houston Cmty. Coll. Sys. v. Wilson*,
    595 U.S. 468 (2022)...........................................................................................16

*Island Software & Comp. Serv., Inc. v. Microsoft Corp.*,
    413 F.3d 257 (2d Cir. 2005)...............................................................................5

*Jackson v. Paramount*,
    68 Cal. App. 4th 10 (Cal. Ct. App. 1998) ..........................................................9

*Kronisch v. U.S.*,
    150 F.3d 112 (2d Cir. 1998)..............................................................................17

*Masson v. New Yorker Magazine, Inc*,
    501 U.S. 496 (1991)...........................................................................................10

*McCollough v. Wyandanch Union Free Sch. Dist.*,
    187 F.3d 272 (2d Cir. 1999)...............................................................................5

*McFarlane v. Sheridan Square Press, Inc.*
    91 F.3d 1501 (D.C. Cir. 1996) ..........................................................................13

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) ...........................................................................5

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964)...........................................................................................12

*Nunes v. WP Company LLC d/b/a The Washington Post, et al.*,
    21-cv-506-CJN (D.D.C. 2021)..........................................................................19

*Ottoson v. SMBC Leasing & Fin., Inc*,
    268 F. Supp. 3d 570 (S.D.N.Y. 2017)..............................................................19

*Palin v. N.Y. Times Co.*,
   113 F.4th 245 (2d Cir. 2024) ..........................................................................4

*Palin v. N.Y. Times Co.*,
   940 F.3d 804 (2d Cir. 2019)............................................................................14

*Passlogix, Inc. v. 2FA Tech., LLC*,
   708 F. Supp. 2d 378 (S.D.N.Y. 2010)............................................................17

*Prince v. Intercept*,
   2023 WL 4492413 (S.D.N.Y. July 12, 2023) ................................................12

*Prince v. Intercept*,
   634 F. Supp. 3d 114 (S.D.N.Y. 2022)............................................................16

*Rosario v. City of New York*,
   2022 WL 2965953 (S.D.N.Y. July 27, 2022) ................................................19

*St. Amant v. Thompson*,
   390 U.S. 727 (1968)...................................................................................1, 10

*StoneX Grp., Inc. v. Shipman*,
   2024 WL 1509346 (S.D.N.Y. Feb. 5, 2024), *report and recommendation*
   *adopted*, 2024 WL 3356989 (S.D.N.Y. July 10, 2024) ................................17

*Tavoulareas v. Piro*,
   817 F.2d 762 (D.C. Cir. 1987)........................................................................14

*Toussie v. County of Suffolk*,
   2007 WL 4565160 (E.D.N.Y. Dec. 21, 2007) ................................................17

*U.S. v. Rem*,
   38 F.3d 634 (2d. Cir. 1994)..............................................................................4

*Waring v. Fordham Univ.*,
   640 F. Supp. 42 (S.D.N.Y. 1986) ....................................................................6

*World Boxing Council v. Cosell*,
   715 F. Supp. 1259 (S.D.N.Y. 1989)..................................................................3

*Zubalake v. UBS Warburg, LLC*,
   220 F.R.D. 212 (S.D.N.Y. 2003) ....................................................................19

**Other Authorities**

Local Rule 56.1(b) .......................................................................................1, 5

Fed. R. Civ. P. 37(e) .......................................................................................20

iv

Defendant NBCUniversal Media, LLC ("NBCU") submits this Memorandum of Law in Reply to Plaintiff's Opposition to NBCU's Motion for Summary Judgment and Sanctions (the "Opposition" or "Opp") (Dkt. 149) and in further support of its Motion for Summary Judgment and for Sanctions (the "Motion" or "Mot.") (Dkt. 142).[1]

## PRELIMINARY STATEMENT

On this Motion, NBCU established that the one statement remaining at issue in this lawsuit—that Plaintiff "refused to hand [the Derkach Package] over to the FBI"—was published without any doubt (much less "serious doubt") as to its truth. Now, after nearly two years of discovery, Plaintiff does not offer a single piece of concrete evidence that NBCU published the Statement with actual malice.[2] On this undisputed record, summary judgment should be granted.

To oppose this motion, Plaintiff was required to present clear and convincing evidence from which a reasonable jury could find that those responsible for the Statement "*in fact* entertained serious doubts as to the truth." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (emphasis added); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–56 (1986) ("clear and convincing evidence" standard must be applied on a summary judgment motion). But Plaintiff's Opposition does not come close to meeting this standard. Indeed, as predicted in NBCU's moving papers (*see* Mot. at 23–30), Plaintiff largely rehashes the unsupported allegations contained in his Second Amended Complaint, arguing without any evidentiary support that NBCU was motivated by political animus, violated NBCU's News Group Policies, and that the Statement was inherently improbable, among other baseless and unsupported conjecture. Nor does his Opposition gain traction by again arguing that NBCU knew (or should have known) that the

---

[1] Capitalized and abbreviated terms have the same meaning as in the Motion. Plaintiff's Counterstatement to NBCU's Statement of Undisputed Material Fact (Dkt. 151) is referred to as "PCSUMF" herein.

[2] Indeed, as discussed at length below, Plaintiff does not raise any genuine dispute as to any of the facts set forth in NBCU's 56.1 Statement or offer an additional statement of material facts pursuant to Local Rule 56.1(b).

Statement was false because Rep. Crawford was reported as vaguely suggesting Plaintiff turned over the Derkach Package to the FBI prior to the publication of the *TRMS* Segment.  As discovery revealed, Rep. Crawford admitted he was only speculating when he spoke to the press as he had no personal knowledge concerning what Plaintiff did or did not do with the Package.  In the end, none of Plaintiff's scattershot theories or attacks on the credibility of otherwise undisputed evidence can satisfy the demanding actual malice standard.  Plaintiff's Opposition makes clear that he has insufficient evidence to prevail on his libel claim.

In sharp contrast, NBCU has established that Rachel Maddow and Cory Gnazzo were responsible for the publication and firmly believed the Statement was accurate based on a wealth of unchallenged information.  Dispositively, they relied on  a July 23, 2020 Politico Article, which reported that Derkach sent a packet of materials to Plaintiff and other high-ranking Republican officials as part of a disinformation plot to damage then-Vice President Biden.  That Article reported that "[o]ne person familiar with the matter said the information was not turned over the FBI," despite FBI Director Christopher Wray's admonition that such information is "something the FBI would want to know about."  McNamara Decl. Ex. 10 at NBCU0001375, NBCU0001378. In the eight months between when the July 23, 2020 Politico Article was published and when the *TRMS* Segment aired, Plaintiff never challenged or disputed Politico's reporting.  Maddow and Gnazzo's confidence in the Statement was bolstered by Plaintiff's refusal to answer questions about his receipt of the Derkach Package from his Democratic colleagues during a HPSCI business meeting, correspondence from Democratic leadership to the FBI suggesting that Plaintiff had not turned over the package to the agency, Plaintiff's publicly stated mistrust of the FBI, and his aide's prior reported efforts to gather similar disinformation from Russian operatives directly tied to Derkach.  In other words, the information available to Maddow and Gnazzo made the Statement

entirely credible and they were unaware of any contrary information calling the Statement into doubt. In the face of all this evidence, Plaintiff's only response is to try to contort the plain language of the July 23, 2020 Politico Article, despite its clear reporting that none of the identified recipients (including Plaintiff) turned the Derkach Package over to the FBI. Courts, however, reject such implausible interpretations of documentary evidence at summary judgment. For all these reasons, Plaintiff is precluded as a matter of law from establishing that NBCU acted with actual malice. NBCU is entitled to summary judgment.

Separately, this Court should award sanctions for Plaintiff's failure to preserve relevant documents in this litigation. In his Opposition, Plaintiff does not offer any justification for his blatant disregard of his preservation obligations, which were plainly aimed at depriving NBCU of relevant discovery. NBCU is entitled to sanctions including dismissal of this action, an adverse inference, and/or an award of attorney's fees against Plaintiff.

## ARGUMENT

### I. Plaintiff's Opposition Establishes That He Cannot Meet His Burden Of Proving That NBCU Acted With Actual Malice By Clear And Convincing Evidence

In its moving papers, NBCU established that it relied on various trustworthy sources in publishing the Statement, including the July 23, 2020 Politico Article and various other sources that lent credibility to that report, thus precluding a finding of actual malice. The law is clear that a publication's dependence on "wholly plausible factual representations of writers whom they have reason to believe are professional [and] reliable" precludes a finding of actual malice. *See Adler v. Conde Nast Publ'ns, Inc.*, 643 F. Supp. 1558, 1566 (S.D.N.Y. 1986); *Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1032 (2d Cir. 1997) (no actual malice where publisher "relies upon the integrity of a reputable author and has no serious reason to question the accuracy of the information provided by that author"); *World Boxing Council v. Cosell*, 715 F. Supp. 1259, 1265 (S.D.N.Y.

3

1989) (no actual malice where author relied on articles that "appeared in respected publications, and were authored by reputable journalists, whose allegations were not so improbable that a prudent author would have questioned their accuracy").  Because the undisputed evidence establishes that in publishing the Statement Maddow and Gnazzo relied on a previously published article in a reputable publication by journalists they knew to be reliable, along with a wealth of information underscoring the credibility of the prior report, Plaintiff is precluded from establishing actual malice as a matter of law.

In response, Plaintiff has failed to put forth *any* evidence—much less clear and convincing evidence—from which a jury could find that NBCU published the Statement knowing it was false or with serious doubts.  To meet this "heavy burden," *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 278 (S.D.N.Y. 2013) (citation omitted), a plaintiff "opposing a fully supported motion," like here, "must offer 'concrete evidence from which a reasonable juror could return a verdict in his favor.'" *Contemp. Mission, Inc., v. N.Y. Times Co.*, 842 F.2d 612, 621 (2d. Cir. 1988) (citation omitted). "It is not enough for the plaintiff merely to assert 'that the jury might, and legally could, disbelieve the defendant's denial of legal malice.'"  *Id.* at 621–22*; see also Palin v. N.Y. Times Co.*, 113 F.4th 245, 277 (2d Cir. 2024) ("[B]ecause actual malice must be found by clear and convincing evidence, a negative inference based on a jury's disbelief of a witness's statement by itself is ordinarily insufficient proof.").

Instead of putting forth any evidence in support of actual malice, Plaintiff's Opposition attacks the credibility of testimony from Maddow and Gnazzo.  But such attacks have no place at summary judgment and as a matter of law cannot manufacture a factual dispute.  *See*, *e.g.*, PCSUMF ¶¶ 17, 18, 29, 31, 41, 42, 54, 55, 71, 72.  "On a motion for summary judgment, the court is not to weigh the evidence, or assess the credibility of witnesses."  *U.S. v. Rem*, 38 F.3d 634, 644

(2d. Cir. 1994). Indeed, "[b]road, conclusory attacks on the credibility of a witness, will not, by themselves, present questions of material fact" precluding summary judgment. *Island Software & Comp. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005); *see also Crawford–El v. Britton*, 523 U.S. 574, 600 (1998) (plaintiff "may not respond [to a motion for summary judgment] simply with general attacks upon the defendant's credibility"); *McCollough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 280 (2d Cir. 1999). Plaintiff cannot contest Maddow and Gnazzo's credibility absent specific controverting evidence. *See, e.g.*, *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016) ("[p]rofessions of good faith" by journalists need to be overcome by proof reporting was fabricated or unsupported) (quoting *St. Amant*, 390 U.S. at 732). Here, Plaintiff provides no evidence contradicting NBCU's record; nor did he even submit an additional statement of material facts pursuant to Local Rule 56.1(b). Accordingly, NBCU is entitled to summary judgment.

### A. The July 23, 2020 Politico Article Directly Informed NBCU's Reporting Of The Statement

The July 23, 2020 Politico Article reported that Plaintiff did not turn the Derkach Package over to the FBI. The law is clear that Maddow and Gnazzo's reliance on that reporting alone is sufficient to preclude any argument concerning actual malice. *See supra* § I; *Chaiken,* 119 F.3d at 1032. Plaintiff does not dispute that Maddow and Gnazzo reviewed and relied upon the July 23, 2020 Politico Article in reporting the Statement. PCSUMF ¶¶ 43–57. Nor does he dispute that they viewed Politico as a highly reputable publication with comparable reporting standards to NBCU (*id.* ¶ 56); or, that they viewed the journalists responsible for the July 23, 2020 Politico Article as well-respected and particularly well-sourced on matters related to Congress (*id.*); or, that Plaintiff never provided comment to or requested a correction from Politico, and never filed a defamation action over the July 23, 2020 Politico Article (*id.* ¶¶ 50–52), which would have been

consistent with his regular practice of filing lawsuits about reporting he disputes (*id.* ¶ 9).  Plaintiff cannot and does not challenge that the July 23, 2020 Politico Article was a reliable, trustworthy source for Maddow and Gnazzo to have relied on for the Statement, nor does Plaintiff cite any information that cast doubt on its accuracy.

Absent any evidence that Maddow or Gnazzo doubted the July 23, 2020 Politico Article, Plaintiff asks this Court to contort the Article's meaning.  He argues that the Article does not "single[] out" or specifically say that *Nunes* failed to turn over the Derkach package to the FBI, but instead identified "four different individuals" and did not specify which individual failed to turn over the package.  *See* PCSUMF ¶ 51; *see also* Opp. at 4.  But this argument runs head first into basic English language construction.  While it is true that the Article identifies "Rep. Devin Nunes (R-Calif.), Sens. Lindsey Graham (R-S.C.) and Chuck Grassley (R-Iowa), and then-White House Chief of Staff Mick Mulvaney" as having received packets of information from Derkach, 56.1 ¶ 46, in the next sentence the Article reports that "*the information* was not turned over to the FBI." *Id.* ¶ 47 (emphasis added).  In other words, *none* of the four named individuals who received the information (including Plaintiff) turned over the package of information from Derkach.  *Id.* ¶¶ 46–47.[3]  This Court should reject Plaintiff's tortured reading of Politico's reporting, *see*, *e.g.*, *Waring v. Fordham Univ.*, 640 F. Supp. 42, 45 (S.D.N.Y. 1986) (rejecting plaintiff's "implausible reading" of documentary evidence at summary judgment), which substantiated what Maddow and Gnazzo believed at the time of broadcast. [4]

Next, Plaintiff claims NBCU fabricated that he "refused" to turn the Derkach Package over

---

[3] Indeed, Plaintiff even acknowledges that at the very least the Politico Article "vaguely suggests" he and others did not turn over the package to the FBI.  Opp. at 14.

[4] Because Plaintiff's nonsensical construction of the July 23, 2020 Politico Article is at best a "different spin on otherwise uncontroverted facts," *Hartley v. Rubio*, 785 F. Supp. 2d 165, 170 n.1 (S.D.N.Y. 2011), there is no legitimate dispute of material fact here.

to the FBI, because the July 23, 2020 Politico Article did not use the word "refuse" when describing Plaintiff's failure to hand over the Derkach Package to the FBI. Opp. at 14. Plaintiff's argument fails for several independent reasons. *First*, Plaintiff argues that to "refuse" necessarily entails a violation of a legal "duty or obligation," citing to a Merriam Webster dictionary definition. *Id.* But the definition Plaintiff offers says nothing of the sort. Opp. at 14 (defining refuse as "to express oneself as unwilling to accept" or "to show or express unwillingness to comply with"). *Second*, even if one were to accept Plaintiff's definition of "refused," the Politico Article suggests that Plaintiff *did* fail to fulfill a duty or obligation. Politico reported FBI Director Wray's statement that the FBI called upon public officials, like Plaintiff, to contact the agency if they received foreign disinformation like the Derkach Package. *See* PCSUMF ¶ 49. As such, Politico's reporting conveyed that Plaintiff did not comply with the agency's calls for cooperation. *Third*, the undisputed record documents that, consistent with the plain language of the July 23, 2020 Politico Article, Maddow and Gnazzo actually understood that Plaintiff refused to turn the Derkach Package over to the FBI. Maddow testified that a public servant like Plaintiff should "have a patriotic instinct not only to hand the material to the FBI, but to raise the alarm" upon receiving such information from a foreign source. McNamara Decl. Ex. 4 at 95:19–96:9; *see also id.* at 72:18–23; 56.1 ¶ 154. And when questioned about the Article, Gnazzo explained that "if it's standard practice to turn something over and it's not turned over, I think that's refusal to turn it over." Greaves Decl. Ex. G, Tr. 108:14–21. Accordingly, Maddow and Gnazzo subjectively understood the July 23, 2020 Politico Article to report that Plaintiff was "unwilling[] . . . to comply" with a basic responsibility as a public servant to turn the Derkach Package over to the FBI. Opp. at 14. Indeed, the full Statement at issue expressly reflects Maddow's understanding that handing the package over to the FBI "is what you should do if you get something from

somebody that is sanctioned by the U.S. government as a Russian agent."  PCSUMF ¶ 146.

NBCU's reliance on the July 23, 2020 Politico Article alone precludes any finding of actual malice.  *See* Mot. at 20.  This Court can and should grant summary judgment in NBCU's favor solely on this basis.

### B.  Contextual Source Material Informed The Statement And Gave NBCU Confidence In Its Reporting

Just as with the July 23, 2020 Politico Article, Plaintiff does not genuinely dispute any of the facts concerning Maddow and Gnazzo's reliance on the wealth of reporting on national events—including prior coverage from *TRMS*—that together supported their confidence in the accuracy of the Statement and Politico's reporting, as discussed at length in NBCU's Motion.  Mot. at 20–23; PCSUMF ¶¶ 32–42, 58–135.  Instead, Plaintiff asks this Court to disregard *all* this evidence because it does not expressly say he "refused to hand [the Derkach Package] over to the FBI."  Opp. at 15.  But the extensive public reporting that forms the context for the Statement does not need to repeat the Statement verbatim; it is enough that it adds credibility to the Politico Article and the Statement.

Plaintiff's Opposition reveals a misunderstanding of the actual malice inquiry, which focuses on the speaker's *subjective* awareness of probable falsity.  *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 335 n.6 (1974).  While the July 23, 2020 Politico Article was a primary source for the statement that Nunes (along with the other identified individuals) did not turn the Derkach Package over to the FBI, the surrounding source material provided contextual evidence that when considered together bolstered the credibility of Politico's reporting, and gave Maddow and Gnazzo complete confidence in the Statement.  Plaintiff's error begins with his gross oversimplification of the *TRMS* Segment.  Plaintiff attempts to recast the *TRMS* Segment as a report dedicated to his handling of the Derkach Package (Opp. at 2–4), but in fact Plaintiff's handling of the Derkach

package was included as a representative example of the concerns raised by the ODNI Report. The Segment contextualized the ODNI Report's finding that Russian agent Derkach sought to launder disinformation through U.S. officials by drawing a connection to months-old, unchallenged reporting about Plaintiff's receipt of the Derkach Package and his failure to turn it over to the FBI as expected. As fully explained in NBCU's Motion, each of the related sources added to the credibility of the Politico reporting that Nunes failed to turn over the Derkach Package to the FBI. Mot. at 20–23. Indeed, if the Democratic leadership of Congress believed the FBI needed to be informed that a Russian agent was sending disinformation to members of Congress, if Plaintiff was willing to traffic in Russian disinformation, if he was not forthcoming about his interactions with foreign agents, if he publicly touted his mistrust and enmity toward the FBI, and if his closest aide was arranging secret Skype meetings with a Ukrainian prosecutor who was later sanctioned for acting in concert with Derkach for spreading Russian disinformation, it was entirely credible that Plaintiff would and did fail to turn over the Derkach package to the FBI.[5] Put differently, this tapestry of contextual facts lent greater credibility to the reporting in the July 23, 2020 Politico Article, and gave Maddow and Gnazzo full confidence in the truth of the Statement.

This is precisely the type of evidentiary record that leads courts across the country to grant motions for summary judgment on a failure to present clear and convincing evidence of actual malice. *See*, *e.g.*, *Jackson v. Paramount*, 68 Cal. App. 4th 10, 34 (Cal. Ct. App. 1998) (no actual malice where defendant reported about purported existence of a videotape depicting plaintiff

---

[5] Plaintiff's suggestion that NBCU's reliance on these sources is merely a "post hoc rationalization" (Opp. at 16) is belied by documentary evidence. For example, it is undisputed that Maddow's research notes for the TRMS Segment (the "Research Notes") explicitly refer to the July 29, 2020 Business Meeting, and quote Plaintiff's refusal to respond to Rep. Maloney's questioning about the Derkach package. *See* PCSUMF ¶ 69; *see also* McNamara Decl. Ex. 23. Furthermore, Maloney's statement from the March 17, 2021 *Deadline* Interview is also directly referenced in these Research Notes. *See* McNamara Decl. Ex. 23. Moreover, the documentary evidence incontrovertibly establishes that Maddow was aware of the July 13, 2020 Letter and July 23, 2020 Politico Article well before the TRMS Segment aired. *See* PCSUMF ¶¶ 40, 52; *see also* McNamara Decl. Exs. 19, 20. This, coupled with Maddow and Gnazzo's uncontested testimony, leaves no room for Plaintiff to challenge that these sources informed the Statement.

molesting a child because corroborating evidence showed that plaintiff "had been the subject of a lengthy criminal investigation by the district attorney's office . . . and had settled a lawsuit" involving allegations of sexual molestation).  The Court should do the same here.

### C.  NBCU Did Not Purposefully Avoid The Truth

Plaintiff devotes much of his Opposition to claiming that NBCU purposefully avoided the truth because, Plaintiff claims, it failed sufficiently investigate before publishing the Statement.[6] But failure to investigate is plainly insufficient to establish actual malice, and also does not equate to purposeful avoidance.  *St. Amant*, 390 U.S. at 732–33; *see also Gertz*, 418 U.S. at 331; *Biro*, 963 F. Supp. 2d at 285.  A court can only find a purposeful avoidance of the truth when a defendant is on notice of facts or evidence that it avoids *and* if consulted would give reason to subjectively doubt the truth of the challenged statement.  *See, e.g.*, *Harte-Hanks*, 491 U.S. at 692–93 (finding purposeful avoidance of the truth where defendant newspaper was given interview recordings with evidence of falsity but chose not to listen to them); *Butts*, 388 U.S. at 157–59 (finding purposeful avoidance of truth where newspaper published story accusing plaintiff of "fixing" football game, even though the story's author did not attempt to examine the source's notes of the conversation he overheard, and reporter did not view the tapes of the football game which would have proven the falsity of source's allegations).[7]  Here, Plaintiff satisfied neither prong of the purposeful

---

[6] In support of his argument, Plaintiff recycles three cases—*Harte-Hanks v. Connaughton*, 491 U.S. 657 (1989), *Curtis Pub. Co. v. Butts*, 388 U.S. 130 (1976), and *Goldwater v. Ginzburg*, 414 F.2d 324 (2d Cir. 1969)—which, as discussed below, are plainly inapposite.  Notably, Plaintiff fails meaningfully to engage with any of the case law cited by NBCU throughout its Motion.

[7] Plaintiff also cites *Goldwater*, 414 F.2d 324 in support of his purposeful avoidance point, but this was not a purposeful avoidance case—it involved authors publishing a hit piece on Senator Barry Goldwater with a preconceived narrative regardless of warnings that their newsgathering techniques lacked validity.  Notably, the Second Circuit has since described *Goldwater* as outdated (*see, e.g.*, *DiBella v. Hopkins*, 403 F.3d 102, 114 (2d Cir. 2005) ("*Goldwater . . . does not represent our most recent understanding of New York law on this issue."), and subsequent Supreme Court decisions have drawn into question its over-reliance on ill will and motive.  *See, e.g.*, *Masson v. New Yorker Magazine, Inc*, 501 U.S. 496, 510 (1991).

avoidance test.

Importantly, there is no evidence that NBCU was put on notice of *any* facts or evidence that contradicted the truth of their reporting. *Butts*, 388 U.S. at 156–58. Plaintiff chiefly suggests that NBCU should have reached out to Rep. Crawford based on his quotation in the July 30, 2020 Politico Article. Plaintiff's entire "avoidance of the truth" theory, however, falls apart given the testimony Rep. Crawford provided under oath in this action. At the heart of *Harte-Hanks* and *Butts* was a showing that the defendant possessed (or had ready access to) information that would have established the falsity of the challenged statements but instead chose to ignore it. *Harte-Hanks*, 491 U.S. at 691–92; *Butts*, 388 U.S. at 157. Here, the evidence shows the exact opposite. Discovery indisputably established that Rep. Crawford had no knowledge whatsoever concerning what Plaintiff actually did with the Derkach Package. PCSUMF ¶¶ 171–78. Even if Maddow and Gnazzo *had* reached out to Rep. Crawford, they would have been no closer to the truth.[8]

Nor did Rep. Crawford's quote in the July 30, 2020 Politico Article put Maddow and Gnazzo on notice that the Statement was inaccurate (Opp. at 13).[9] Even assuming that Maddow or Gnazzo read the July 30, 2020 Politico Article—and their undisputed testimony establishes that they did not—Rep. Crawford's quote did not as a matter of law create a reason to doubt the accuracy of the Statement. As fully explained in NBCU's Motion—and not rebutted by Plaintiff— Rep. Crawford's vague, second-hand statement did not establish that Plaintiff in fact turned the

---

[8] Plaintiff also disingenuously suggests that NBCU should have contacted HPSCI staffers or other members from the committee. But he conveniently omits that his own spokesman Jack Langer—who implemented Plaintiff's policy of not responding to the "mainstream media" (PCSUMF ¶ 159)—simultaneously served as Communications Director for the minority on HPSCI. McNamara Decl. Ex. 9 at 29:4–30:20. Thus, contacting HPSCI would have been equally fruitless.

[9] Notably, Plaintiff has abandoned his original theory of actual malice based on the Breitbart Article. (Dkt. 57 at 19). And Plaintiff acknowledges Gnazzo's responsibility but disputes that Maddow was "ultimately responsible" for the editorial content on *TRMS* (*see* PCSUMF ¶14). This is a distinction without a difference since it is uncontroverted that Maddow wrote the Statement (*see* PCSUMF ¶ 15) and that Gnazzo oversaw the production of the *TRMS* Segment and reviewed it before it aired, together with Maddow (*see* PCSUMF ¶ 16).

package over to the FBI.  Mot. at 24–26; PCSUMF ¶ 170–78 (Rep. Crawford admits he was just speculating).  Notably, as not disputed by Plaintiff, when even a direct denial from the Plaintiff does not establish actual malice, clearly a vague denial from a second-hand source is insufficient to establish actual malice.  *See Edwards v. Nat'l Audubon Soc'y, Inc.*, 556 F.2d 113, 121 (2d Cir. 1977).  In other words, even if Maddow or Gnazzo were aware of Rep. Crawford's quote in the July 30, 2020 Politico Article, this second-hand and admittedly speculative statement is not the type of evidence that would trigger a need to investigate further.[10]  Accordingly, Rep. Crawford's vague and admittedly unfounded statement in the July 30 Politico Article—even if read by Maddow and Gnazzo—could not establish actual malice.

Last, Plaintiff's assertion that NBCU purposefully avoided the truth or otherwise acted with actual malice because it failed to "fact-check" the Statement is flatly incorrect.  As Maddow attested "[t]here are multiple layers of review on *TRMS* to ensure that its content is accurate." McNamara Decl. Ex. 2, ¶ 12.  Specifically, "[w]however writes the script of a given segment and oversees its production is ultimately responsible for its accuracy."  *Id.*  While *TRMS* labels the final proofread for minor factual inaccuracies immediately before air as a "fact check," this is only part of the process to ensure accuracy.  *See* Mot. at 13.  As Maddow explained, "by the time the 'fact-check' occurs, the substance of the script has already been thoroughly reviewed by the senior staff members."  McNamara Decl. Ex. 2, ¶ 12; *see also id.*  Ex. 3, ¶ 12.

In the end, Plaintiff's argument falls apart in full view of the evidence.  Plaintiff has not

---

[10] Recognizing the undisputed evidence shows that both Gnazzo and Maddow were unaware of the July 30 Politico Article, PCSUMF ¶ 184, Plaintiff attempts to bootstrap the knowledge of Steve Benen—the editor of the MaddowBlog—to Gnazzo and Maddow.  But the state of mind required for actual malice must be "brought home to the persons in the [defendant's] organization having responsibility for the publication of the [statement]."  *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964); *Prince v. Intercept*, 2023 WL 4492413, at *6 (S.D.N.Y. July 12, 2023) (same); *see also Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 123-24 (2d Cir. 2013) (same).  Benen incontrovertibly played no role in writing or producing the *TRMS* Segment or Statement beyond his circulation of a pitch email.  *See* PCSUMF ¶ 186.  Thus, Plaintiff's sweeping assertion that "Defendant's employees" were aware of the July 30, 2020 Politico Article cannot carry the day.  Opp. at 13.

identified any "witnesses who had access to the same facts" that could and would independently

confirm that he turned over the Derkach Package to the FBI.  Opp. at 10 (citing *Butts*, 388 U.S. at

156–58).  Nor has Plaintiff identified any evidence in NBCU's possession that disproved the

reporting of the July 23, 2020 Politico Article.  Plaintiff's purposeful avoidance theory finds no

support in the evidentiary record and should be ignored.[11]

### D.  Plaintiff's Purported Circumstantial Evidence Of Actual Malice Falls Far Short Of The Clear and Convincing Evidence Standard

In a last ditch effort to survive summary judgment, Plaintiff haphazardly attempts to cobble

together circumstantial evidence of actual malice.  Whether considered individually or

collectively, these arguments fail.

*First,* Plaintiff argues that NBCU acted out of a preconceived political agenda.  *See* Opp.

at 17.  Plaintiff points to meeting notes discussing the production of the Segment, where Maddow

observes, referring to the July 23, 2020 Politico Article, "I feel like the Grassley and Johnson thing

. . . it is the denial.  Whereas with Nunes, Maloney has the receipt.  With Nunes it is an easier hit."

Greaves Ex. K at NBCU0001720.  Plaintiff zeroes in on the word "hit" to suggest without any

support that there was a politically motivated plot against him.  But the evidence shows otherwise.

As Gnazzo explained in his deposition, "easier hit" merely meant that Nunes' receipt of the

Derkach Package was a clearer story to convey to viewers than Grassley and Johnson, who had

each denied on the record receiving any information from Derkach.  Nunes had issued no such

denial and his receipt of the Derkach Package had been confirmed by Rep. Maloney during the

March 17, 2021 *Deadline* Interview.[12]  Plaintiff also points to "a sampling of [ten] transcripts"

---

[11] Plaintiff's reliance on *McFarlane v. Sheridan Square Press, Inc.* to suggest that NBCU was required to have investigated further is inappropriate because, as discussed above in Section I.A., NBCU had no "reason to doubt the veracity of its source."  91 F.3d 1501, 1510 (D.C. Cir. 1996).  *See supra* §§ I-II; Mot. at 24.

[12] Plaintiff also suggests that an email not authored by Maddow or Gnazzo shows bias since it refers to Mitch McConnell as "Moscow Mitch."  Opp. at 17, Greaves Ex. J (describing the contents of the "A-Block" as including

from *TRMS* allegedly containing critical coverage of Nunes without identifying a single actual example.[13]  However, even if Plaintiff were correct, "a media defendant's 'adversarial stance' may be 'fully consistent with professional, investigative reporting' and is not 'indicative of actual malice.'"  *Arapaio v. Zucker*, 414 F. Supp. 3d 84, 92 (D.D.C. 2019).  Indeed, Plaintiff served as Chairman and then Ranking Member of HPSCI—one of the most prominent positions in Congress—during one of the most tumultuous periods in HPSCI's history, including its presiding over an impeachment investigation.  It is no wonder that *TRMS* covered Plaintiff and HPSCI during this time period.

Plaintiff also incorrectly suggests that he was unable to fully question Maddow about her political beliefs.  Initially, as Magistrate Judge Netburn articulated in her order, the law is clear that differences in political opinion cannot provide a sufficient basis for finding actual malice. *See* Dkt. 137 at 5; *see also Harte-Hanks*, 491 U.S. at 665 ("[A defendant's] motive in publishing a story…cannot provide a sufficient basis for finding actual malice"); *see also Tavoulareas v. Piro*, 817 F.2d 762, 795 (D.C. Cir. 1987).[14]  Further, as Magistrate Judge Netburn acknowledged, Plaintiff had ample opportunity to elicit extensive testimony from Maddow about her political views.  *See* Dkt. 137 at 5.  And with this fully developed record, Plaintiff does not offer any actual evidence to controvert Maddow and Gnazzo's clear testimony that they did not harbor any bias, spite, or ill-will towards Plaintiff.  *See Berry-Mayes v. N.Y. Health and Hospitals Corp.*, 2016 WL

---

"Russia trailing ends including Moscow Mitch, Devin Nunes, Caputo").  But this reference has nothing to do with the Statement.

[13] In referring to these transcripts, Plaintiff provides no specific pin citations.  "[I]n those instances where [Plaintiff] cites to entire exhibits, without greater specificity, the Court need not consider them." *Genova v. Cnty. of Nassau*, 2020 WL 813160, at *9 n.1 (E.D.N.Y. Feb. 19, 2020) ("[I]t is not the role of the Court to search the summary judgment record for evidence supporting a nonmovant's opposition."), *aff'd*, 851 F. App'x 241 (2d Cir. 2021).

[14] Plaintiff cites to *Palin v. N.Y. Times Co.*, 940 F.3d 804 (2d Cir. 2019), Opp. at 18. But, there the Second Circuit held that "political opposition alone does not constitute actual malice."  There, the Second Circuit found actual evidence in the record specifically relevant to the challenged statement that supported bias.  *Palin*, 940 F.3d at 814. Here, by contrast, Plaintiff relies on allegations of "sheer political bias" (*id.*) without any evidentiary support.

8461191, at *3 (S.D.N.Y. Sept. 19, 2016) (Castel, J.) ("An opposing party's facts 'must be material and of a substantial nature, not fanciful, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions.'") (citing *Contemporary Mission Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 n.14 (2d Cir. 1981)).

*Second,* Plaintiff baldly claims that *TRMS* published the Statement to bolster its ratings in the face of Maddow and Gnazzo's unequivocal testimony that they did *not* publish the Statement because of ratings. 56.1 ¶ 204. The only evidence Plaintiff cites in support of his theory is that (1) *TRMS* is a primetime show (Greaves Ex. G, 14:11–17), (2) Maddow testified that ratings are typically important in broadcast television (Greaves Ex. F, 151:13–22), and (3) Gnazzo's generalized testimony on the preferred format to tell a story to an audience (Greaves Ex. G, 107:9–171:3). But this shows only that *TRMS* is a cable television program, not that they spoke knowing the Statement was false or with serious doubts as to its truth.

*Third,* Plaintiff incorrectly suggests that NBCU violated their Newsroom policies and that this amounts to actual malice. *See* Opp. at 19. Initially, the evidence actually establishes Maddow and Gnazzo complied with NBCU's guidelines. The provision Plaintiff points to addresses original reporting, not the re-reporting of the months-old Politico Article at issue in the TRMS segment. *See* Greaves Decl. Ex. O at NBC000006. Maddow merely repeated the substance of the July 23, 2020 Politico Article to contextualize the ODNI Report's conclusion that Russian agents, such as Derkach, were laundering disinformation to U.S. officials. And even if there was a violation—and there was not—the guidelines make clear that "an authorized member of senior management" can approve any deviation from the policies. *Id*. Gnazzo was indisputably vested with the authority to approve of *TRMS* relying upon the July 23, 2020 Politico Article, and he did so. *See* PCSUMF ¶ 4. But in any event, deviation from internal newsroom guidelines—which are

15

best practices and not rigid rules—is not probative of actual malice. *See Prince v. Intercept*, 634 F. Supp. 3d 114, 139–40 (S.D.N.Y. 2022) (that reporters "failed to include information regarding their anonymous sources in violation of The Intercept's policies and procedures" was "unavailing").

*Finally*, Plaintiff says it was "inherently improbable" for NBCU to believe at the time of broadcast that he, as a sitting Congressman and Ranking Member of HPSCI, would deviate from ethical requirements. Opp. at 20. Plaintiff's theory flips the First Amendment on its head and suggests that it is inherently implausible that any Congressman might do something unethical. *See Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 478 (2022) ("In this country, we expect elected representatives to shoulder a degree of criticism about their public service from their constituents and their peers."). Given the wealth of undisputed information adding credibility to the Politico's report that Plaintiff failed to turn over the Derkach Package to the FBI, there was nothing remotely inherently improbable about the Statement. Nor can either the July 23, 2020 Politico Article or the *TRMS* Segment be reasonably read to accuse Plaintiff of criminal conduct and "obstruction of justice." Opp. at 20.

Ultimately, Plaintiff's purported circumstantial evidence—even when considered in aggregate—cannot establish that NBCU acted with actual malice. *See, e.g., Berisha v. Lawson*, 973 F.3d 1304, 1313, 1316 (11th Cir. 2020) (dismissal was mandated where none of plaintiff's claims of actual malice "can reasonably be viewed to undermine his reliance on a variety of sources"). Summary judgment is required here.

## II.    NBCU Is Entitled to Sanctions

Plaintiff's Opposition to NBCU's sanctions motion makes unsupported, inaccurate, and ineffective excuses to evade responsibility for his undeniable spoliation of relevant evidence.

Initially, Plaintiff suggests that his preservation obligations only began once discovery was

ongoing in this case. Opp. at 24–25. That is not the law. Plaintiff was required to preserve relevant evidence as soon as he contemplated filing this lawsuit. *See Kronisch v. U.S.*, 150 F.3d 112, 126 (2d Cir. 1998) (duty to preserve arises when "a party should have known that the evidence may be relevant to future litigation"); *see also StoneX Grp., Inc. v. Shipman*, 2024 WL 1509346, at *9 (S.D.N.Y. Feb. 5, 2024), *report and recommendation adopted*, 2024 WL 3356989 (S.D.N.Y. July 10, 2024). Plaintiff should have issued a litigation hold to his employees in both his personal office and at HPSCI upon sending the Demand Letter on April 5, 2021, and at the very latest on August 3, 2021 when he filed his Complaint. *See Toussie v. County of Suffolk*, 2007 WL 4565160, at *7 (E.D.N.Y. Dec. 21, 2007). Plaintiff's preservation obligations extended to any material that was reasonably likely to be requested during discovery. *See Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 409 (S.D.N.Y. 2010). Plaintiff failed to comply with this basic requirement.

Plaintiff purports to have had a "standing instruction" to preserve documents related to "all outstanding litigation." Opp. at 25. Setting aside that oral litigation holds are insufficient as a matter of law (Mot. at 35–36), it is clear that any "standing instruction" issued by Plaintiff was inadequate. Langer's email exchange with Sara Robertson underscores this. Plaintiff incorrectly suggests that this document does not appear to be relevant "[o]n its face or in its contents." Opp. at 25. But Plaintiff's pleadings plainly undercut this explanation. Langer's email explicitly discussed the Breitbart Article, which was addressed extensively in Plaintiff's claim letter and original Complaint. *See* McNamara Decl. Ex. 46 at 2; Compl. (Dkt. 1) ¶ 14; *see also* SAC ¶ 16. It is clear Langer failed to identify this email not because of its contents, but because of Plaintiff's abject failure to provide guidance about what documents needed to be preserved. And this is only one example of spoliation of relevant documents. NBCU cannot know what else was destroyed.

Plaintiff tries to wash his hands of this issue by suggesting that staff members from his

personal office did not possess any relevant documents. He argues that his staff members in his personal office did not "have the clearance to discuss the package issues" and therefore would not have any relevant documents. Opp. at 28. But the handling of the Derkach Package was not a classified matter. *See* 56.1 ¶ 66. Indeed, Plaintiff testified that the meeting with the FBI about the Derkach Package was held in his personal office (Greaves Ex. E, 67:12–25) and further stated that this meeting would have been held elsewhere if it concerned classified information (*id.* at 68:9– 14). It is simply not credible to suggest that his personal staffers did not have access to relevant communications because of a classification issue. In any event, Plaintiff failed to issue a litigation hold to *any* of the staff members on HPSCI who he identified as having information relevant to this lawsuit under his purview as Ranking Member of the Committee. *See* Mot. at 31.

Plaintiff misleadingly argues that the crux of this issue is that there were simply very few relevant documents and he produced a great volume of materials anyway. This is false. Initially, Plaintiff's claim that he produced 1,005 documents in this litigation is a gross misrepresentation.[15] Plaintiff failed to produce a single text message or email concerning the Derkach Package. And critically, none of the documents he produced concretely evidences that he turned the Derkach Package over to the FBI.[16] Further, third-party discovery confirmed that relevant communications regarding the Derkach Package were spoliated. Mot. at 31–32. In any event, NBCU "must not be held to too strict a standard of proof regarding the likely contents of the destroyed or unavailable evidence, because doing so would allow parties who have destroyed evidence to profit from that

---

[15] Plaintiff produced nothing more than a roster of his staffers from 2017 to 2021; 58 payroll certifications from the U.S. House of Representatives from 2017 to 2021; the House Ethics Manual; the Barr Letter; the publicly available transcript of the HPSCI Meeting; the ODNI Report; a House Resolution removing Rep. Swalwell from HPSCI; the Breitbart Article; the Demand Letter; his schedule from December 11, 2019; his Financial Disclosure Reports from the U.S. House of Representatives from 2016 to 2020; his 2019 and 2020 tax returns; his employment agreement with Trump Media & Technology Group Corp.; his schedule from 2020; and 91 filings from his other litigations.

[16] Notably absent is any declaration from Plaintiff addressing spoliation of relevant materials or clarifying what exactly happened with the Derkach Package given the discrepancy between the Barr Letter and the FBI 302. *See* Mot. at 33.

destruction." *Ottoson v. SMBC Leasing & Fin., Inc*, 268 F. Supp. 3d 570, 580 (S.D.N.Y. 2017).

This Court should not countenance Plaintiff's wholly unsupported assertions that he did not intend to deprive NBCU of relevant evidence.  Opp. at 31–32.  In support, Plaintiff recycles the same baseless arguments.  As explained above, the duty to retain documents does not begin on the commencement of discovery and a general oral directive to employees is clearly insufficient.  And Plaintiff's departure from Congress is not a credible excuse for why these records were destroyed, as this litigation was commenced well before he resigned from the House of Representatives.[17]  Plaintiff purports to be aware of his preservation obligations (McNamara Decl. Ex. 6 at 287:14–21) and stands in a unique position as a serial litigant.  He cannot credibly claim ignorance of his preservation obligations when he has filed no less than ten separate lawsuits.[18]  Opp. at 33.  Further to this point, this is not the first instance in which Plaintiff has been faced with charges of spoliating evidence.[19]  Mot. 35–36.  Finally, Plaintiff has no answer for his counsel's failure to inform HPSCI staffer Derek Harvey of NBCU's subpoena—an employee who had direct contact with Russian operatives like Derkach.  Mot. at 32.  In sum, the direct and circumstantial evidence establishes that Plaintiff acted with intent to deprive NBCU of relevant evidence.  Sanctions, including dismissal of this action, an adverse inference,[20] and/or an award of attorney's

---

[17] Contrary to Plaintiff's assertion, *Ottoson*, is directly applicable here because Plaintiff failed "to take any *reasonable* steps to preserve" relevant records upon leaving Congress.  268 F. Supp. 3d at 582–83 (emphasis added).  The same is true of *Hice v. Lemon*, 2021 WL 6053812 (E.D.N.Y. Nov. 17, 2021).

[18] For this reason, Plaintiff's attempt to compare this case to *Rosario v. City of New York*, 2022 WL 2965953 (S.D.N.Y. July 27, 2022) is entirely unpersuasive.

[19] The docket in *Nunes v. WP Company LLC d/b/a The Washington Post, et al.*, 21-cv-506-CJN (D.D.C. 2021) shows that Plaintiff was sanctioned *after* summary judgment was entered against him in that action.  *See id.* at Dkt. 94 (defendants' request that the "Court extend its deadline for The Post to 'file a declaration detailing the reasonable attorney's fees and costs expended in litigating the issues discussed' in the Order from September 13, 2024").  The September 13, 2024 Order referenced in this filing is sealed.  *See id.* at Dkt. 93.

[20] "In this circuit, a culpable state of mind includes ordinary negligence." *Zubalake v. UBS Warburg, LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003).  At a minimum, NBCU is entitled to an adverse interest and award of attorneys' fees.

fees against Plaintiff are warranted.[21]

## **CONCLUSION**

For the foregoing reasons, NBCU respectfully requests this Court grant summary judgment in its favor and dismiss the remaining claim against it with prejudice.  NBCU also respectfully requests that the Court enter an order pursuant to Rule 37(e) of the Federal Rules of Civil Procedure (i) dismissing Plaintiff's claims as a sanction for his spoliation; or, in the alternative, (ii) entering an adverse inference order presuming the spoliated information was unfavorable to Plaintiff; (iii) award NBCU its costs and reasonable attorneys' fees incurred in their efforts to obtain Plaintiff's spoliated evidence and in connection with this motion; and (iv) any other relief the Court deems just and proper.

Dated: February 12, 2025
    New York, New York

<div style="margin-left:50%">

Respectfully submitted,

By: _Elizabeth A M_____

Elizabeth A. McNamara
Jeremy A. Chase
Alexandra M. Settelmayer
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas 21st Floor
New York, NY  10020-1104
Phone: (212) 489-8230
Fax:    (212) 489-8340
Email: lizmcnamara@dwt.com
    jeremychase@dwt.com
    alexandrasettelmayer@dwt.com

*Attorneys for Defendant NBCUniversal Media, LLC*

</div>

---

[21] Plaintiff attempts to muddy the waters by casting doubt about NBCU's conduct during discovery.  This is a red herring.  Discovery was reopened for the limited purpose of confirming that no relevant communications existed on Maddow's phone based on a discrepancy between Maddow's deposition testimony and counsel's representations that they had overseen searches on her phone.  *See* Dkt. 137 at 2.  Plaintiff conveniently leaves out that a subsequent search of Maddow's text messages, Signal, and WhatsApp conversations (all of which had been preserved) confirmed, once again, that there were no responsive communications.  Plaintiff was not deprived of relevant discovery from NBCU.